# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

---

Nos. 23-1900, 23-2043

---

RONALD KOONS et al.,
*Plaintiffs-Appellees,*

v.

MATTHEW J. PLATKIN et al.,
*Defendants-Appellants*

---

AARON SIEGEL et al.,
*Plaintiffs-Appellees / Cross-Appellants,*

v.

MATTHEW J. PLATKIN et al.,
*Defendants-Appellants / Cross-Appellees*

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(Nos. 22-cv-7463, 22-cv-7464 (RMB))

---

**JOINT APPENDIX**

**VOLUME IV**

**JA950 – JA1195**

---

MATTHEW J. PLATKIN
  *Attorney General of New Jersey*

JEREMY M. FEIGENBAUM
  *Solicitor General*

ANGELA CAI
  *Deputy Solicitor General*

JEAN REILLY
  *Assistant Attorney General*

DAVID CHEN
VIVIANA HANLEY
SAMUEL RUBINSTEIN
  *Deputy Attorneys General*

Office of the New Jersey Attorney General
R.J. Hughes Justice Complex
25 Market Street, P.O. Box 080
Trenton, NJ 08625-0080
(609) 414-5954
angela.cai@njoag.gov

*Attorneys for Defendants-Appellants*
*New Jersey Attorney General*
*Matthew J. Platkin and Superintendent of*
*New Jersey State Police Colonel*
*Patrick Callahan*

# JOINT APPENDIX
## TABLE OF CONTENTS

**VOLUME I**                                                    **JA Page**

Defendants' Notice of Appeal (ECF 126)[1] ..................................... JA1

*Siegel* Plaintiffs' Notice of Cross-Appeal (ECF 128)...................................... JA4

Order Granting In Part And Denying In Part Plaintiffs' Motions for
    Preliminary Injunction (ECF 125)............................................ JA6

Opinion Granting In Part And Denying In Part Plaintiffs' Motions for
    Preliminary Injunction (ECF 124)............................................ JA10

**VOLUME II**

*Koons* District Court docket sheet .................................................... JA245

*Koons* Complaint (ECF 1) ............................................................. JA264

*Siegel* Complaint (Case No. 22-cv-7463, ECF 1)............................................. JA286

Defendants' Expedited Motion to Consolidate (Case No. 22-cv-7463,
    ECF 7)............................................................................ JA345

*Siegel* Plaintiffs' Motion for Temporary Restraining Order And For A
    Preliminary Injunction (Case No. 22-cv-7463, ECF 8)............................ JA349

    Declaration of Aaron Siegel (Ex. 2) ........................................ JA352

    Declaration of Jason Cook (Ex. 3)............................................ JA360

    Declaration of Joseph DeLuca (Ex. 4)........................................ JA368

    Declaration of Nicole Cuozzo (Ex. 5) ...................................... JA374

    Declaration of Timothy Varga (Ex. 6)....................................... JA377

---

[1] ECF numbers are to the *Koons* docket (Case No. 1:22-cv-07464) unless otherwise indicated.

Declaration of Christopher Stamos (Ex. 7) ................................................. JA382

Declaration of Kim Henry (Ex. 8) ............................................................ JA385

Declaration of Scott Bach (Ex. 9) ............................................................ JA388

Declaration of Daniel Schmutter (Ex. 10) .............................................. JA391

*Koons* Plaintiffs' Motion for Order to Show Cause, Motion for
   Temporary Restraining Order, Motion for Preliminary Injunction
   (ECF 8) ............................................................................................ JA438

Declaration of Ronald Koons (ECF 10) .................................................. JA441

Declaration of Nicholas Gaudio (ECF 11) .............................................. JA446

Declaration of Jeffrey Muller (ECF 12) .................................................. JA455

*Koons* Show Cause Order (ECF 13) ........................................................ JA462

## <u>VOLUME III</u>

Opinion on *Koons* Plaintiffs' Motion for Temporary Restraining Order
   (ECF 34) .......................................................................................... JA465

Order re: *Koons* Plaintiffs' Motion for Temporary Restraining Order
   (ECF 35) .......................................................................................... JA525

Transcript of *Koons* TRO Motion Hearing (ECF 37) ............................ JA527

Legislators' Motion to Intervene (ECF 47) ............................................ JA625

Proposed Intervention Pleading (Ex. A) ................................................ JA628

L. 2022, c. 131 (Ex. B) .......................................................................... JA655

Summary of legislative history of A4769 (Ex. C) .................................. JA682

A4769 – as introduced (Ex. D) .............................................................. JA687

Report of the Assembly Judiciary Committee (Ex. E) ............................ JA720

Report of the Assembly Appropriations Committee (Ex. F) .................... JA727

Report of the Assembly Oversight Committee (Ex. G) ............................ JA737

Report of the Senate Budget and Appropriations Committee (Ex. H) ....... JA745

*Siegel* Consolidation Order (ECF 50) .............................................................. JA753

Opinion on *Siegel* Plaintiffs' Motion for Temporary Restraining Order
    (ECF 51) .................................................................................................... JA759

Order re: *Siegel* Plaintiffs' Motion for Temporary Restraining Order
    (ECF 52) .................................................................................................... JA805

Order granting Legislators' Motion to Intervene (ECF 53) ............................. JA807

*Siegel* Plaintiffs' Letter seeking clarification of TRO Order (ECF 54) ............ JA810

Transcript of Siegel TRO Motion Hearing (ECF 56) ....................................... JA812

Supplemental Declaration of Aaron Siegel (ECF 64) ...................................... JA897

Supplemental Declaration of Jason Cook (ECF 65) ......................................... JA900

Supplemental Declaration of Joseph DeLuca (ECF 66) ................................... JA903

Supplemental Declaration of Timothy Varga (ECF 67) ................................... JA904

Declaration of Ria Jairam (ECF 68) ................................................................ JA907

*Koons* Amended Complaint (ECF 69) ............................................................. JA910

Declaration of Gil Tal (ECF 70) ...................................................................... JA933

Supplemental Declaration of Nicholas Gaudio (ECF 71) ................................ JA943

Stipulation & Order dismissing county prosecutors as defendants
    (ECF 73) .................................................................................................... JA947

## VOLUME IV

Certification of Joseph R. Klett (ECF 76) ....................................................... JA950

    1722 NJ Law "… against Carrying of Guns … by Persons not
        Qualified" (Ex. A) .............................................................................. JA958

    1751 Supplement to 1722 NJ Law "… against Carrying of Guns …
        by Persons not Qualified" (Ex. B) ...................................................... JA964

1769 NJ Law "… for the more effectual Preservation of Deer …" (Ex. C) ................................................................................. JA974

1771 NJ Law "… to prevent trespassing with Guns" (Ex. D) .................... JA980

NJ State Constitution of 1776 (Ex. E) ......................................... JA986

1771 NJ Law "… to prevent trespassing with Guns" (Ex. F) ................... JA997

1753 Pennsylvania Gazette extract (Ex. G) .................................. JA1005

1846 NJ Law Revision "… to prevent trespassing with Guns" (original enrolled law) (Ex. H) ............................................. JA1008

1846 NJ Law Revision "… to prevent trespassing with Guns" (as printed in Revised Statutes of 1846) (Ex. I) .................................. JA1026

1852 NJ Supplement (Ex. J) ................................................. JA1032

First 1859 NJ Supplement (Ex. K) ............................................ JA1036

Second 1859 NJ Supplement (Ex. L) .......................................... JA1039

1866 NJ Supplement (Ex. M) ................................................. JA1043

1867 NJ Supplement (Ex. N) ................................................. JA1048

1873 NJ Supplement (Ex. O) ................................................. JA1051

1846 NJ Law relative to "Carrying guns, where prohibited" (as printed in Revised Statutes of 1877) (Ex. P) ............................... JA1054

1846 NJ Law referred to as "An act to Prevent Trespassing with Guns" (as included in 1880 synopsis of laws) (Ex. Q) ....................... JA1060

1895 NJ Law "to prevent trespassing with guns" (Ex. R) ........................ JA1067

1911 NJ Supplement (Ex. S) ................................................. JA1075

1928 Repeal of 1846 NJ Law (Ex. T) ......................................... JA1081

N.J. Stat. Ann. § 2A:63-1 (Ex. U) ........................................... JA1096

Certification of Sarah Adelman (ECF 77) ....................................... JA1099

Certification of George Fedorczyk (ECF 78) ...................................................... JA1107

Certification of Bonny Fraser (ECF 79) ............................................................. JA1114

Certification of Steven Gorelick (ECF 80) ......................................................... JA1122

Certification of Robin Madden (ECF 81) ........................................................... JA1127

Certification of Judith A. Nason (ECF 82) ......................................................... JA1132

Certification of David L. Rebuck (ECF 83) ........................................................ JA1137

Declaration of Hendrik Hartog (ECF 84) .......................................................... JA1143

    Resume of Hendrik Hartog (Ex. A) ............................................................. JA1153

    1722 NJ Statute: "An Act to prevent killing of deer out of season, and against carrying of guns and hunting by persons not qualified." (Ex. B) ....................................................................... JA1163

    1769 NJ Statute: "An Act for the more effectual preservation of deer in this Colony." (Ex. C) .................................................................. JA1167

    1771 NJ Statute: "An Act for the preservation of deer and other game, and to prevent trespassing with guns." (Ex. D) ........................ JA1172

    1846 NJ Statute: "An Act for the preservation of deer and other game, and to prevent trespassing with guns." (Ex. E).......................... JA1180

    Lucius Elmer's 1868 Digest of the Laws of New Jersey 362 (4th ed., Newark, 1868) (Ex. F) ........................................................................ JA1186

    1895 NJ Public Law, ch. § 148 (Ex. G.).................................................... JA1194

**VOLUME V**

Declaration of Brennan Gardner Rivas (ECF 85)............................................. JA1196

    Curriculum Vitae of Brennan Gardner Rivas (Ex. A) ................................ JA1219

    2 Edw. 3, c. 3 (1328) (Eng.) (Ex. B)........................................................ JA1223

    25 Edw. 3, st. 5, c. 2, § 13 (1350) (Eng.) (Ex. C).................................... JA1224

    1786 Va. Laws 33, ch. 21 (Ex. D) ........................................................... JA1227

1835 Mass. Acts 750 (Ex. E) .................................................................... JA1228

Francois Xavier Martin, A Collection of Statutes of the Parliament
of England in Force in the State of North Carolina, 60-61
(Newbern 1792) (Ex. F)........................................................................ JA1232

1821 Me. Laws 285, ch. 76, § 1 (Ex. G) .................................................... JA1235

1813 La. Acts 172, § 1 (Ex. H).................................................................... JA1242

Revised Statutes of the State of Arkansas, Adopted at the October
Session of the General Assembly of Said State, A.D. 1837
(Ex. I) .................................................................................................... JA1247

1870 Tex. Gen. Laws 63, ch. 46, § 1 (Ex. J) ............................................. JA1249

1871 Tex. Gen. Laws 25, ch. 34 § 1 (Ex. K) ............................................. JA1252

Penal Code of the State of Texas, (1879), Title X, Offenses Against
the Public Peace, Chapter 4, Unlawfully Carrying Arms (Ex. L)........ JA1255

Ch. 22, 1869 Tenn. Pub. Acts 23 (36th Assembly, 1st Sess.) §2
(Ex. M)................................................................................................... JA1257

Act No. 285, 1870 Ga. Laws 421 (Ex. N) .................................................. JA1260

Revised Statutes of the State of Missouri (1879), ch.24, §1274
(Ex. O) .................................................................................................. JA1263

1890 Okla. Stat. 495-96 (Ex. P).................................................................. JA1266

Annotated Code of the General Statute Laws of the State of
Mississippi (1892), "Crimes and Misdemeanors," §1030 (Ex. Q) ...... JA1269

Laws of Vermont, Special Session (1891), No. 85, §2 (Ex. R) ................. JA1272

1870 La. Acts 159-60, § 73 (Ex. S) ........................................................... JA1275

George Washington Paschal, A Digest of the Laws of Texas, 3rd ed.
(1873) II: 1317-1318 (Ex. T)................................................................ JA1293

John Prentiss Poe, The Maryland Code: Public Local Laws,
Adopted by the General Assembly of Maryland March 14, 1888
(Vol. 2, 1888), 1457 (Ex. U) ................................................................ JA1296

1886 Md. Laws 315, ch. 189 §1 (Ex. V) ..................................................... JA1298

1877 Va. Acts 305, Offenses Against The Peace, § 21 (Ex. W) ............... JA1299

Oscar F. Greene, Revised Ordinances of the City of Boulder (1899),
    157 (Ex. X) ...................................................................................... JA1303

"An Ordinance," San Antonio Express (San Antonio, Texas),
    December 23, 1870 (Ex. Y) .............................................................. JA1304

Declaration of Patrick J. Charles (ECF 86) ..................................................... JA1305

Curriculum Vitae of Patrick J. Charles (Ex. 1) ........................................... JA1319

2 Edw. 3, c. 3 (1328) (Eng.) (Ex. 2) ........................................................... JA1326

Royal Proclamation as to the Wearing of Arms in the City, and at
    Westminster; and as to Playing at Games in the Palace at
    Westminster, Memorials of London and Life 268-69
    (H.T. Riley ed., 1868) (Ex. 3) ............................................................ JA1327

John Carpenter, Liber Albus: The White Book of the City of
    London at 335 (Henry Thomas Riley ed., 1861) (Ex. 4) .................... JA1330

4 Hen 4, c. 29 (1403) (Eng.) (Ex. 5) ........................................................... JA1332

An Act to Prevent Routs, Riots, and Tumultuous Assemblies, and
    the Evil Consequences Thereof, September Session, Chapter
    VIII (Mass. 1786) (Ex. 6) ................................................................. JA1333

An Act for the More Speedy and Effectual Suppression of Tumults
    and Insurrections in the Commonwealth, January Session,
    Chapter IX (Mass. 1787) (Ex. 7) ....................................................... JA1335

An Act to Prevent Routs, Riots, and Tumultuous Assemblies
    (N.J. 1797) (Ex. 8) ............................................................................ JA1339

An Act to Prevent Hunting with Fire-Arms in the City of New-
    York, and the Liberties Thereof (NY 1763) (Ex. 9) ........................... JA1341

An Act Against Riots and Rioters (Pa. 1705) (Ex. 10) ............................. JA1342

William Rawle, A View of the Constitution of the United States 126
    (2d ed., 1829) (Ex. 11) ...................................................................... JA1343

3 Calendar of Close Rolls, Richard II, 1385-1389, at 399-400 (May 16, 1388, Westminster) (H.C. Maxwell-Lyte ed., 1914) (Ex. 12) ....... JA1345

1 Calendar of Close Rolls, Richard II, 1377-1381, at 34 (December 1, 1377, Westminster) (H.C. Maxwell-Lyte ed., 1914) (Ex. 13) ......... JA1347

1647 Md. Laws 216 (Ex. 14) ................................................................... JA1348

1650 Md. Laws 273 (Ex. 15) .................................................................. JA1349

Chapter XVII: Carrying Concealed Weapons—Firing Guns, Pistols, Fire Crackers, Etc., May 22, 1890, reprinted in General Ordinances of the Town of Columbia, In Boone County, Missouri 34, 35 (Lewis M. Switzler ed., 1890) (Ex. 16) .................... JA1350

1877 Mo. Laws 158, 166 (Ex. 17) ............................................................ JA1352

Ordinance No. 577: An Ordinance Defining What Shall constitute Misdemeanors or Offenses Against the City of Webb City, and Providing Penalties Therefor, May 15, 1905, reprinted in Revised Ordinances of the City of Webb City, Missouri, 1905, at 99-100 (1905) (Ex. 18) ..................................................................... JA1354

An Ordinance in Relation to Carrying Deadly Weapons, July 17, 1894, The Revised Ordinances of the City of Huntsville, Missouri of 1894, at 58-59 (1894) (Ex. 19) ......................................... JA1356

1874 Mo. Laws 43 (Ex. 20) ...................................................................... JA1361

1875 Mo. Laws 50 (Ex. 21) ...................................................................... JA1362

1883 Mo. Laws 76 (Ex. 22) ...................................................................... JA1364

State v. Reando (Mo. 1878) (Ex. 23) ........................................................ JA1365

Ordinance No. 76: An Ordinance Prohibiting Deadly Weapons, July 1, 1887, reprinted in Stockton Review and Rooks County Record (KS), July 1, 1887 (Ex. 24) ...................................................... JA1366

Public Statutes of the State of Tennessee Since the Year 1858, at 108 (James H. Shankland ed., 1871) (Ex. 25) ...................................... JA1368

1870 Tex. Gen. Laws 63 (Ex. 26) ............................................................. JA1369

1870 Ga. Laws 421 (Ex. 27) ....................................................................... JA1370

1889 Ariz. Sess. Laws 16 (Ex. 28) ............................................................. JA1371

1890 Okla. Stat. 495 (Ex. 29) ..................................................................... JA1373

A Digest of the Laws and Ordinances for the Government of the
City of Harrisburg, Pennsylvania in Force January 1, A.D. 1906,
at 557-58 (1906) (Ex. 30) ................................................................... JA1375

The Revised Ordinances of Provo City, Utah 96 (1893) (Ex. 31) ............. JA1377

The Revised Ordinances of Payson City, Utah 84 (1893) (Ex. 32) ........... JA1378

The Revised Ordinances of Tooele City, Utah 87 (1893) (Ex. 33)............. JA1379

An Ordinance to Prohibit Intoxication, Breach of Peace, Carrying
Deadly Weapons, the Use of Obscene Language, the Discharge
of Fire-Arms, and to Close Places of Amusement on Sunday in
the City of Wallace, Kansas, Jan. 31, 1889, reprinted in Wallace
County Register (KS), Feb. 9, 1889, at 2 (Ex. 34) .............................. JA1381

Ordinance No. 97: Ordinance Related to Carrying Deadly Weapons,
May 17, 1882, reprinted in Burlington Democrat (KS), May 26,
1882, at 2 (Ex. 35) .............................................................................. JA1383

Miscellaneous Ordinance, Jun. 24, 1871, reprinted in Abilene
Weekly Chronicle (KS), Jun. 29, 1871, at 3 (Ex. 36) ......................... JA1385

Declaration of Peter Kochenburger (ECF 87) .................................................. JA1387

Curriculum Vitae of Peter Kochenburger (Ex. A)...................................... JA1401

Declaration of Angela Cai and Exhibits Volume I (ECF 88).......................... JA1418

P.L. 2022 ch. 131, A4769/S3124, An Act concerning the sale and
possession of firearms and supplementing and amending
various parts of the statutory law (Ex. 1) ............................................ JA1431

Compilation of Order, D.E. 41, *Christian v. Nigrelli*, No. 22-2987
(2d Cir. Dec. 12, 2022); Order, D.E. 75, *Antonyuk v. Hochul*,
No. 22-2908 (2d Cir. Dec. 7, 2022); Order, D.E. 53, *Hardaway
v. Nigrelli*, No. 22-2933 (2d Cir. Dec. 7, 2022) (Ex. 2) ...................... JA1470

Transcript of Preliminary Injunction Hearing, Corbett v. Hochul, 1:22-cv-5867-LGS (S.D.N.Y. Nov. 29, 2022) (Ex. 3) ......................... JA1473

63 Proceedings and Acts of the Maryland General Assembly 338, § 5 (June 15-July 3, 1773) (Ex. 4) ....................................... JA1504

1870 Tex. Gen. Laws 63 (Ex. 5) ................................................... JA1505

1786 Va. Laws 25 (Ex. 6) ............................................................ JA1508

Gen. Digest of the Ordinances & Res. of the Corp. of New Orleans 371 (1831) (Ex. 7) ................................................................ JA1509

1869-70 Tenn. Pub. Acts 23 (Ex. 8) ........................................... JA1510

Art. 320, Tex. Act of April 12, 1871 (Ex. 9) ............................. JA1513

Mo. Rev. Stat. 1879, at 224 (§ 1274) (Ex. 10) .......................... JA1515

1859 Conn. Acts 62, ch. 82, § 5 (Ex. 11) .................................. JA1517

1867 Kans. Sess. Laws 25 (Ex. 12) ........................................... JA1521

1771 N.J. Laws 344, §1 (Ex. 13) ............................................... JA1523

1865 La. Extra Acts 14, No. 10 § 1 (Ex. 14) ............................. JA1531

1876 Iowa Acts 142, ch. 148, § 1 (Ex. 15) ................................ JA1537

1929 Iowa Acts 90, § 30 (Ex. 16) ............................................. JA1540

1919 Me. Laws 193 (Ex. 17) ...................................................... JA1543

Ark. Rev. Stat. § 13, p. 280 (1838) (Ex. 18) .............................. JA1548

1839 Ala. Acts no. 77, § 1 (Ex. 19) ........................................... JA1550

1821 Tenn. Acts ch. 13, § 1 (Ex. 20) ........................................ JA1553

Ian Ayres & Spurthi Jonnalagadda, Guests with Guns: Public Support for "No Carry" Defaults on Private Land, 48 J. L. Medicine & Ethics 183, Table A4 (2020) (Ex. 21) .............................. JA1556

1873 Ga. Code 818, § 4528 (Ex. 22) ......................................... JA1591

Fourth Annual Report of the Board of Commissioners of the Central
Park 106 (1861) (Ex. 23) ...................................................................... JA1593

Acts of Assembly Relating to Fairmount Park 18 (1870) (Ex. 24)............ JA1594

Michael John Sullivan, The Revised Ordinance of the City of St.
Louis, Together with the Constitution of the United States,
Constitution of the State of Missouri, the Scheme for the
Separation of the Governments of the City and County of St.
Louis, the Charter of the City, and a Digest of the Laws
Applicable to the City 635 (1881), § 3 (Ex. 25)................................... JA1595

Egbert Jamieson and Francis Adams, The Municipal Code of
Chicago, Comprising the Laws of Illinois Relating to the City of
Chicago and the Ordinances of the City Council, Codified and
Revised 391 (1881). Art XLIII, § 1690 (Ex. 26).................................. JA1596

Annual Reports of the City Officers and City Boards of the City of
Saint Paul 689 (1889) (Ex. 27) ............................................................. JA1599

W.W. Thompson, A Digest of the Acts of Assembly Relating To,
and the General Ordinances of the City of Pittsburgh, From
1804 to Jan. 1, 1897 at 496 (2d Ed. 1897) (Ex. 28) ............................. JA1601

Excerpt from William Blackstone, Commentaries on the Laws of
England, 3d. (10th ed. 1787) (Ex. 29) .................................................. JA1603

Excerpt from William Griffith, A Treatise on the Jurisdiction and
Proceedings of Justices of the Peace in Civil Suits in New
Jersey (1813) (Ex. 30) .......................................................................... JA1612

Excerpt from John Locke, Second Treatise of Government (1690)
(Ex. 31) ................................................................................................. JA1625

1715 Md. Laws, ch. 26 § 7, as supplemented by 1766 Md. Laws
ch. 6, at 90 (Ex. 32) ............................................................................. JA1630

1721 Pa. Act ch. 426 § 3, printed in Mitchell & Flanders, The
Statutes at Large of Pa. 1682 to 1801, vol.2, at 255 (Ex. 33) .............. JA1634

1763 N.Y. Law ch. 1233 §1, printed in Laws of N.Y., 1691 to 1771,
vol. 2, at 442 (Ex. 34) .......................................................................... JA1639

1867 Tex. Act Vol, 20, p. 90, at art. 6510, printed in Paschal, A
Digest of the Laws of Tex. Ann., vol. 2, at 1321 (Ex. 35) ................... JA1643

1893 Ore. Act S.B. 15, § 1, at 79 (Ex. 36).................................................. JA1647

La. R.S. 821, § 1809, printed in R.H. Marr, Ann. Rev. Stat. La., vol.
1, at 600 (1915) (Ex. 37)........................................................................ JA1658

1870 Tenn. Acts. ch. 13 (Ex. 38)................................................................. JA1664

1996 La. Sess. Law. Serv. 1st Ex. Sess. Act 4 (S.B.2), R.S.
40.1379.3(O) (Ex. 39)............................................................................ JA1668

Bill 3730, 1996 S.C. Assemb., Rev. to § 23-31-210(M)(10) (Ex. 40)....... JA1674

29Excerpt from 1564 Stat. King Henry III (Ex. 41)................................... JA1687

Wingate, An Exact Abridgement of All Statutes In Force & Use
From The Beginning Of Magna Carta Until 1641 (1666), at 591
at § 9 (Ex. 42) ...................................................................................... JA1690

1776 Del. Const. art. 28 (Ex. 43)................................................................ JA1693

Excerpts from Benjamin Vaugahn Abbott, Judge and Jury: A
Popular Explanation of Leading Topics in the Law of the Land
(1880) (Ex. 44) ...................................................................................... JA1696

1874 Mo. Laws at 43, s. 1 (Ex. 45)............................................................. JA1712

The Norman Transcript, (Norman, Okla. Terr), Vol. 2, No. 5, Ed. 1
(Nov. 22, 1890) (Ex. 46)........................................................................ JA1715

The Missouri Republican, (St. Louis, Mo.) (Nov. 20, 1872) (Ex. 47)....... JA1717

The Moniteau Journal (California, Mo.) (Oct. 3, 1872) (Ex. 48).............. JA1718

## VOLUME VI

Collected Venue Policies, NJ (Ex. 49) ...................................................... JA1719

Excerpts from R. Rosenzweig & E. Blackmar, *The Park And The
People: A History Of Central Park* (Cornell Univ. Press 1992)
(Ex. 50) ................................................................................................. JA1790

Declaration of Angela Cai and Exhibits Volume II (ECF 89).......................... JA1818

    1789 Mass. Acts ch.28, at 438 (Ex. 51)....................................................... JA1831

    1895 Mich. No. 436 Sec. 44, at 596 (Ex. 52) ............................................. JA1834

    1905 Minn. 620, Sec. 53 (Ex. 53)................................................................ JA1843

    1917 Wisc. Ch. 668, at 1243 Sec. 29.57(4) (Ex. 54)................................... JA1872

    1921 N.C. Public Laws & Res. ch. 6 § 3, at 54 (Ex. 55)............................ JA1929

    1937 N.J. Rev. Stat. 32:14-13.1(8) (Ex. 56)............................................... JA1932

    1875 Laws & Ord. Governing Village of Hyde Park at 310, § 6 (Ex. 57)........................................................................................................... JA1935

    1883 Rev. Ord. of the City of Danville, ch.19 § 4, at 83 (Ex. 58) ............. JA1941

    Tower Grove Park of the City of St. Louis 117 (1883) (Ex. 59)................ JA1945

    Rev. Ordinances of Salt Lake City 248, ch. 27 § 6 (1888) (Ex. 60) .......... JA1949

    Laws & Ordinances for the Gov't of the Mun. Corp. of the City of Williamsport, Pa. 141 (1891) (Ex. 61) ................................................. JA1953

    Park Ordinances, Springfield, Mass. (1891) (Ex. 62) ................................ JA1964

    Compiled Ordinances of the City of Grand Rapids 163, § 432 (1907) (enacted 1891, amended 1892 & 1897) (Ex. 63)...................... JA1965

    3rd Ann. Rep. of the Park Comm'rs of the City of Lynn 23 (1891) (Ex. 64) .............................................................................................. JA1970

    Laws & Ordinances of the City of Peoria, Illinois 667 (1892) (Ex. 65)........................................................................................................... JA1973

    Mun. Code of the City of Spokane, Wash. 123 (1903) (enacted 1892) (Ex. 66)........................................................................................ JA1977

    Charter of the City of Wilmington, Rules and Regulations of the Board of Park Commissioners, Part VII, § 7 (1893) (Ex. 67)............. JA1982

    Rev. Ordinances of the City of Canton, Ill. 240 (1895) (Ex. 68).............. JA1984

Gen. Ordinances of the City of Indianapolis 648, § 1971 (1904)
        (enacted 1896) (Ex. 69) ........................................................ JA1989

Digest of the Acts of Assembly Relating to & the Gen. Ordinances
        of the City of Pittsburgh 496 (1897) (enacted 1893) (Ex. 70) ............ JA1995

Digest of the Laws & Ordinances for the Gov't of the Mun. Corp. of
        the City of Reading, PA 240 (1897) (Ex. 71)....................................... JA2001

Rev. Ordinances of the City of Boulder, CO 157 (1899) (Ex. 72)............. JA2002

General Municipal Ordinances of the City of Oakland, Cal.,
        Addendum at 15 (1909) (Ex. 73)........................................................ JA2003

The Code of City of Birmingham, Alabama 662 (1917) (Ex. 74) ............. JA2004

Firearms Regulations in the National Parks, 1897-1936 (NPS 2008)
        (Ex. 75) ................................................................................................ JA2008

Sen Yuan Wu, N.J. Pop. 1790 to 2010, Div. Labor Market &
        Demographic Rsch. (Dec. 2010) (Ex. 76)............................................ JA2083

2021 Population Density: N.J. Counties, U.S. Census Bureau, Pop.
        Div. (Apr. 2022), prepared by N.J. Dept. Labor & Workforce
        Dev't (Ex. 77) ...................................................................................... JA2086

1874 Mo. Laws 43 (§ 1) (Ex. 78) ................................................................ JA2087

1883 Mo. Laws 76 (§ 1) (Ex. 79) ................................................................ JA2090

1889 Ariz. Sess. Laws 17 (§ 3) (Ex. 80).................................................... JA2093

1890 Okla. Sess. Laws 496 (§ 7) (Ex. 81).................................................. JA2096

1903 Mont. Laws. 49-50 (§ 3) (Ex. 82)....................................................... JA2099

M. Kevane & W. Sundstrom, Development of Public Libraries in
        the U.S., 1870-1930, Information & Culture, Vol 49, no. 2
        (2014) (Ex. 83) .................................................................................... JA2103

## VOLUME VII

Pop. of Mass. by Counties & Minor Civil Divs., Census Bulletin
        (Nov. 8, 1990) (Ex. 84).......................................................................... JA2132

1746 N.J. Laws ch. 102 (Ex. 85) ...................................................... JA2139

1797 N.J. Laws (R.S. 572), at 367 (Ex. 86)................................... JA2144

1874 N.J. Laws (P.L. 1871, p.109) (Ex. 87)................................... JA2149

G. Fenich, A Chronology of (Legal) Gaming in the U.S., Gaming
    Rsch & Rev. J, vol.3, Iss.2 (1996) (Ex. 88)........................... JA2151

Report & Recommendations of the Governor's Advisory
    Commission on Gambling, Jun. 30, 1998 (Ex. 89) ............... JA2165

Port Authority of NY & NJ, Dec. 2021 Traffic Report, Aviation
    Dep't, https://www.panynj.gov/airports/en/statistics-general-
    info/Monthly_Airport_Activities.html (Ex. 90).................. JA2447

Caroline Norris, A History of Madness: Four Venerable Virginia
    Lunatic Asylums, Virginia Magazine of History & Biography,
    Vol. 125, Issue 2 (2017) (Ex. 91) ......................................... JA2450

1776 N.C. Sess. Laws 168 (Ex. 92)............................................... JA2478

1800 Ga. Laws 428 (Ex. 93)........................................................ JA2479

1837 Md. Acts 108 (Ex. 94) ......................................................... JA2481

1868 Oh. Supp. Rev. Stat 13 (Ex. 95) ......................................... JA2484

1872 Wisc. Rev. Stat 1960 (Ex. 96) ............................................. JA2486

1872 Conn. Acts 108 (Ex. 97) ...................................................... JA2489

1872 Or. Acts 26 (Ex. 98)............................................................. JA2491

1873 S.C. Rev. Stat. 404 (Ex. 99)................................................. JA2493

1887 W.Va. Code, ch. 148, § 7 (Ex. 100) .................................... JA2495

Declaration of Angela Cai and Exhibits Volume III (ECF 90) ........................ JA2499

1881 Kan. Sess. Laws 92, § 23 (Ex. 101).................................... JA2512

1875 Ark. Acts 156 (Ex. 102)....................................................... JA2514

1847 Va. Laws 129 (Ex. 103)....................................................... JA2516

1868 W. Va. Code 153 (Ex. 104) ............................................................... JA2523

1872 Portland Ord. No. 1108 (Ex. 105) ..................................................... JA2526

1813 Ky. Acts 10 (Ex. 106) ......................................................................... JA2528

1813 La. Acts 172 (Ex. 107)........................................................................ JA2532

1819 Ind. Acts 39 (Ex. 108)........................................................................ JA2536

1838 Va. Acts 76 (Ex. 109) ........................................................................ JA2538

1859 Ohio Acts 56 (Ex. 110)...................................................................... JA2541

1861 Ga. Laws 859 (Ex. 111) ..................................................................... JA2544

1835 Mass. Rev. Stat., ch. 134, § 16 (Ex. 112) ........................................ JA2546

1838 Terr. of Wis. Stat. § 16 (Ex. 113) ..................................................... JA2548

Me. Rev. Stat., ch. 169, § 16 (1840) (Ex. 114).......................................... JA2550

Mich. Rev. Stat., ch. 162, § 16 (1846) (Ex. 115)....................................... JA2552

Excerpts from M. Dalton, The Country Justice (1690) (Ex. 116).............. JA2554

Terr. of Minn. Rev. Stat., ch. 112, § 18 (Ex. 117)..................................... JA2560

1854 Ore. Stat. ch. 16, § 17 (Ex. 118) ....................................................... JA2562

1857 D.C. Rev. Code ch. 141, § 16 (Ex. 119)............................................. JA2564

1860 Pa. Laws p. 432, § 6; § 8 (Ex. 120) ................................................... JA2566

1844 Miss. Law p. 182, Art. 16, § 1, in Anderson Hutchinson, Code
    of Mississippi, from 1798 to 1848, 182 (1848) (Ex. 121)................... JA2568

1856-1857 N.C. Sess. Laws 34, Pub. Laws, An Act Entitled
    "Revenue," ch. 34, § 23, pt. 4 (Ex. 122)............................................. JA2570

1866 Ga. Laws p. 27-28, Title VI, No. 41 (Ex. 123)................................. JA2572

Rev. Code of Alabama, p. 169, ch. 3, § 10 (1867) (Ex. 124).................... JA2575

1867 Miss. Laws 327-28, An Act To Tax Guns And Pistols in The County Of Washington, ch. 249, § 1 (Ex. 125)....................................JA2577

George W. Hess, Revised Ordinances of the City of Evanston, 131-132 (1893) (Ex. 126) ...........................................................JA2580

1895 Neb. Laws 210, Laws of Nebraska Relating to the City of Lincoln, Art. XVI, § 6 (Ex. 127) ...........................................JA2582

1902-04 Va. Acts 155-157, An Act to Raise Revenue for Support of the Government and Public Free Schools, sched. B, § 6, Tangible Personal Property, Eighteenth (Ex. 128)..............................JA2584

Orville Park, Park's Annotated Code of the State of Georgia 1914, Penal Code, Article 3, Carrying pistols without license, § 348(a)-(d) (Ex. 129)..............................................................JA2587

Ohio Law, p. 633, §§ 24-25 (1884) (Ex. 130)...........................................JA2590

Mass. Law, p. 479-484, ch. 22, §§ 1-10 (1776) (Ex. 131) .........................JA2592

1777 Pa. Laws 110-113 (Ex. 132) ...............................................................JA2598

Va. Act of May 5, 1777, ch. 3 (Ex. 133) .....................................................JA2604

Excerpt from Bernard Schwartz, The Bill of Rights: A Documentary History, Vol, 2, at 662 (1971) (Ex. 134) ......................JA2608

Excerpt from Debates & Proc. in the Convention of the Commonwealth of Mass. Held in the Year 1788 (1856) (Ex. 135)................................................................................................JA2616

Charles C. Branas, SeungHoon Han, and Douglas J. Wiebe, Alcohol Use and Firearm Violence, 38 Epidemiologic Rev. 32, 40-43 (2016) (Ex. 136) .................................................................................JA2618

Jonathan Jay, Alcohol Outlets and Firearm Violence: a Place-Based Case–Control Study Using Satellite Imagery and Machine Learning, Inj. Prev. 61, 64 (2019) (Ex. 137)........................................JA2632

Pamela J. Trangenstein et al., Outlet Type, Access to Alcohol, and Violent Crime, 42 Alcohol Clin. Exp. Re. 2234, 2241 (2018) (Ex. 138) ...............................................................................................JA2638

Matthew Miller et al., 'Road rage' in Arizona: Armed and Dangerous, 34 Accident Analysis and Prevention, 807, 811 (2002) (Ex. 139) ................................................................ JA2650

Arlin J. Benjamin Jr., Sven Kepes, & Brad. J. Bushman, Effects of Weapons on Aggressive Thoughts, Angry Feelings, Hostile Appraisals, and Aggressive Behavior: A Meta-Analytic Review of the Weapons Effect Literature, 22 Personality & Social Psych. R. 347, 359 (2018) (Ex. 140) .................................... JA2658

David Hemenway, Chloe Shawah, & Elizabeth Lites, Defensive gun use: What can we learn from news reports?, 9 Injury Epidemiology 19, 27 (2022) (Ex. 141)................................. JA2689

David Hemenway, Deborah Azrael, & Matthew Miller, Whose guns are stolen? The epidemiology of Gun theft victims, 4 Injury Epidemiology 11, 14 (2017) (Ex. 142)................................. JA2699

## VOLUME VIII

John J. Donohue et al., More guns, more unintended consequences: the effects of right-to-carry on criminal behavior and policing in U.S. cities, Nat'l Bureau of Econ. Research, Working Paper Series, Working Paper 30190, at 29, http://www.nber.org/papers/w30190 (Ex. 143).................................... JA2704

D. Hemenway & S.J. Solnick, The epidemiology of self-defense gun use: Evidence from the National Crime Victimization Surveys 2007–2011, 79 Preventative Medicine 22, 27 (2015) (Ex. 144) ............................................................................ JA2740

John J. Donohue, Abhay Aneja, & Kyle D. Weber, Right-to-Carry Laws and Violent Crime: A Comprehensive Assessment Using Panel Data and a State-Level Synthetic Control Analysis, 16 J. Empirical L. Studies 198, 240 (April 2019) (Ex. 145)......................... JA2746

Michael Siegel et al., Easiness of Legal Access to Concealed Firearm Permits and Homicide Rates in the United States, 107 AJPH Research 1923, 1929 (2017) (Ex. 146) ...................................... JA2796

1875 Wyoming Terr. Acts ch.52, §1 (Ex. 147) ......................................... JA2803

Code of City of Lynchburg, Va. Ch. XIX, § 20 (1887) (Ex. 148) ............. JA2806

1869 N.M. Gen Laws ch.32, at 313 (Ex. 149).............................................. JA2809

A. Holgersson & U. Bjornstig, Mass-casualty attacks on public
    transportation, J Transp. Security 7:1–16 (2014) (Ex. 150)................ JA2812

1795 Mass Gen Law ch.26, § 2 (Ex. 151) ................................................... JA2828

1686 N.J. Laws, ch. 9, in The Grants, Concessions, and Original
    Constitution of the Province of New Jersey, at 289–90 (2d ed.
    1881) (Ex. 152)................................................................................... JA2830

Second Supplemental Declaration of Jason Cook (ECF 98)............................ JA2834

Supplemental Declaration of Nicole Cuozzo (ECF 99) ................................... JA2837

Declaration of Ronald D'Angelo (ECF 100).................................................... JA2839

David Jensen Affidavit (ECF 103) ................................................................... JA2841

1777 N.J. Laws 26-36, ch. XX (Ex. 1) ....................................................... JA2843

1780 N.J. Laws 39-54, ch. XIII (Ex. 2) ...................................................... JA2855

1798 N.J. Laws 609-28, ch. DCCCXXII (Ex. 3)......................................... JA2872

1806 N.J. Laws 771-83, ch. CLVI (Ex. 4).................................................. JA2893

1829 N.J. Laws 109-33, An Act for the punishment of crimes (Ex.
    5) ...................................................................................................... JA2907

Act of May 28, 1746, ch. X, Acts and Laws of Massachusetts Bay
    207-08 (Ex. 6)...................................................................................... JA2933

19 Colonial Records of the State of Georgia: Part I, Statutes,
    Colonial and Revolutionary 137-40 (Ex. 7) ......................................... JA2935

Digest of the Laws of Georgia 157-58 (1800) (Ex. 8) .............................. JA2940

1812 Del. Laws 522-24, ch. CXCV (Ex. 9) ............................................... JA2943

1818 Vermont Acts & Resolves 22-65, ch. II (Ex. 10) ............................. JA2947

1823 N.H. Laws 72-75, ch. XXXIV (Ex. 11)............................................. JA2992

1885 N.J. Laws 52, ch. XLIV (Ex. 12)...................................................... JA2997

1799 N.J. Laws 561-63, ch. DCCCVI (Ex. 13).......................................... JA2999

1811 N.J. Laws 300 (Ex. 14) ..................................................................... JA3003

Public Laws of South Carolina 275-76 (1790) (Ex. 15)............................ JA3005

Acts and Laws of the State of Connecticut 36-37 (1784) (Ex. 16) ........... JA3008

Manual of the Laws of North Carolina 234-36 (1814) (Ex. 17) ............... JA3011

Digest of the Laws of Georgia 428 (1800) (Ex. 18)................................... JA3015

Public Laws of Rhode-Island and Providence Plantations 568
(1798) (Ex. 19) ................................................................................. JA3017

1812 Del. Laws 522-24, ch. CXCV (Ex. 20) ............................................ JA3019

5 Laws of the Colony of New York 11-13, ch. 1410 (1894) (Ex. 21) ....... JA3023

## <u>VOLUME IX</u>

Letter from Defendants (ECF 104)................................................................. JA3027

Letter from Defendants (ECF 105)................................................................. JA3029

Supplemental Certification of Director Rebuck (Ex. 1)............................ JA3031

Letter from Defendants (ECF 107)................................................................. JA3034

Letter from *Siegel* Plaintiffs Regarding Standing (ECF 114).......................... JA3035

Declaration of Kenneth Armellino (Ex. 1) ................................................ JA3038

Declaration of Daniel L. Schmutter (Ex. 2)................................................ JA3048

Third Supplemental Declaration of Jason Cook (ECF 115)............................. JA3091

*Siegel* Plaintiffs' Emergency Motion for Leave to File Supplemental
Papers Containing Newly Obtained Information on Issues of
Standing (ECF 116) ..................................................................................... JA3093

Transcript of Hearing on Motion for a Preliminary Injunction (ECF
118) ............................................................................................................. JA3095

Letter from Defendants enclosing electronic copies of exhibits submitted to the court at motion hearing (ECF 119) .................................. JA3263

Timothy Cunningham, 1 A New and Complete Law Dictionary (1771) (Tab 1) ...................................................................................... JA3265

Samuel Johnson, Dictionary of the English Language (1773) (Tab 2) ................................................................................................ JA3270

T. Sheridan, A Complete Dictionary of the English Language (1797) (Tab 3) ...................................................................................... JA3277

N. Bailey, Dictionarium Britannicum (1736) (Tab 4) ................................ JA3282

S. Colt, Revolving gun, patented Feb. 25, 1836 (from Rutgers University Libraries) (Tab 5) ................................................................. JA3286

James Robinson Planché, 1 A Cyclopædia of Costume or Dictionary of Dress (1876) (Tab 6) ...................................................... JA3289

Order administratively terminating actions pending appeal (ECF 130) ........... JA3297

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br><br> *Plaintiffs,* <br><br> v. | No. 22-CV-7463 (RMB) (AMD) |

1

WILLIAM REYNOLDS in his official
capacity as the Prosecutor of Atlantic
County, New Jersey; GRACE C.
MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,

*Defendants.*

## CERTIFICATION OF JOSEPH R. KLETT

1. I have been employed by the New Jersey Division of Archives and
   Records Management [a.k.a. New Jersey State Archives, or NJSA] in
   various capacities for nearly forty (40) years, from 1983 to the present.

2. Under N.J.S. 47:3-16, et seq., the NJSA is responsibe for ensuring the
   preservation of, and providing access to, the State of New Jersey's official
   records of enduring historical and evidentiary value. NJSA is designated
   and recognized as the State of New Jersey's public and government
   records authority.

3. During my time as Collection Manager from 1989 to 2000, I developed
   NJSA's organizational system for cataloging New Jersey state
   government records and personally arranged and described much of
   NJSA's accessioned holdings. From 2000 to 2012 I served as operational
   chief of NJSA.

4. Since 2012, I have served as Executive Director of NJSA. I am registered
   as the official certifier of records held by NJSA for domestic and

2

JA951

international purposes and act as the Custodian of Records for NJSA under the New Jersey Open Public Records Act (OPRA).

5.  I am also a member of the State Records Committee and coordinator of the federally mandated New Jersey State Historical Records Advisory Board.

6.  I have served in various capacities in New Jersey's historical and genealogical organizations and have authored or edited many scholarly publications relating to New Jersey history and government documents.

7.  The Colony of New Jersey's 1722 law entitled "An Act to prevent Killing of Deer out of Season, and against Carrying of Guns and Hunting by Persons not qualified," in its fourth section, provided as follows: "if any Person or Persons shall presume, at any Time after the Publication hereof, to carry any Gun, or Hunt on the Improved or Inclosed Lands in any Plantation, other than his own, unless he have Lisence [license] or Permission from the owner of such Lands or Plantation, and shall be thereof Convicted, either upon the View of any Justice of the Peace within this Province, or by the Oath or Affirmation of any one or more Witnesses, before any Justice of the Peace, he shall, for every such Offence [offense] forfeit the Sum of Fifteen Shillings, with Costs attending such Conviction." It was not uncommon for laws in the colonial period—just as it is not uncommon for laws enacted since statehood, and federal laws— to address more than one subject or social issue. The fact that the 1722 act includes the words "Carrying of Guns and Hunting by Persons not qualified" as a separate part of its official title indicates that the legislation's prohibition of trespassing with a gun on private property had status in the law independent of the game-preservation provisions of this legislation. A true, correct, and official copy of this enrolled law as published in William and Andrew Bradford's 1732 New Jersey law compendium, an original printing of which is held by NJSA, is attached hereto as Exhibit A.

8.  The 1722 law was amended in 1751 by "A Supplementary Act to the Act entitled, An Act to prevent the killing of Deer out of Season and against carrying of Guns, and hunting by persons not qualified." The 1751 legislation increased the penalties for entering private property with a gun

3

without the permission of the property owner. The seventh section of this law set the bond at conviction at £10 with three months of good behavior, and judgment at £5. Refusal to enter into recognizance required imprisonment of the convicted offender. A true, correct, and official copy of this enrolled law as published in Samuel Nevill's 1752 New Jersey law compendium, an original printing of which is held by NJSA, is attached hereto as Exhibit B.

9. On 6 December 1769, the Colony of New Jersey enacted "An Act for the more effectual Preservation of Deer in this Colony." While this legislation carried forward deer-conservation and anti-poaching measures first codified in the 1722 law, it did not amend or repeal the broader section of the 1722 law relative to trespass onto private property with a gun. Thus the general provision in 1722 devised to constrain "Carrying of Guns" onto private property remained in force. A true, correct, and official copy of the 1769 enrolled law, on file in NJSA's holdings from the Office of the Secretary of State (legal successor of the Provincial Secretary, with whom the document was originally filed), is attached hereto as Exhibit C.

10. On 21 December 1771, the Colony of New Jersey enacted "An Act for the Preservation of Deer, and other Game, and to prevent trespassing with Guns." This law revised the general provision of the 1722 law relative to carrying a gun onto private property. It provided as follows: "if any Person or Persons shall presume, at any Time after the Publication hereof, to carry any Gun on any Lands not his own, and for which the Owner pays Taxes, or is in his lawful Possession, unless he hath License or Permission, in Writing, from the Owner or Owners, or legal Possessor; every such Person so offending, and convicted thereof either upon the View of any Justice of the Peace, within this Colony, or by the Oath or Affirmation of one or more Witnesses, before any Justice of the Peace of either of the Counties, Cities, or Towns Corporate, of this Colony, in which the Offender or Offenders may be taken or reside; he, she or they, shall, for every such Offence, forfeit and pay to the Owner of the Soil, or his Tenant in Possession, the Sum of *Forty Shillings,* with Costs of Suit; which Forfeiture shall and may be sued for, and recovered, by the Owner of the Soil, or Tenant in Possession, before any Justice of the Peace in this Colony, for the Use of such Owner, or Tenant in Possession."

4

11. With the prohibition of trespassing with guns updated in the 1771 legislation (as compared to the 1769 law, which lacked similar language), the 1722 law could now be repealed. The final section of the 1771 legislation does this, providing: "That all former Laws made in this colony for the Preservation of Deer, and other Game, and to prevent trespassing with Guns, and regulating the Size of Traps, shall be, and they are hereby repealed." Inclusion of the repeal section in 1771 is further evidence that the 1722 provision against trespass with guns remained in effect through 1769. A true, correct, and official copy of the 1771 enrolled law, on file in NJSA's holdings from the Office of the Secretary of State (legal successor of the Provincial Secretary, with whom the document was originally filed), is attached hereto as Exhibit D.

12. The 1771 law cited above was carried forward and recodified by the New Jersey State Constitution of 1776, which contains the following language in its Section 21: "That all the Laws of this Province, contained in the Edition lately published by Mr. Allinson, shall be and remain in full Force, until altered by the Legislature ..." The 1771 "Act for the Preservation of Deer, and other Game, and to prevent trespassing with Guns" is contained in the aforesaid 1776 New Jersey law compendium published by Samuel Allinson, on pages 343-347 therein. A true, correct, and official copy of the 1776 New Jersey State Constitution, on file in NJSA's holdings from the Office of the Secretary of State, is attached hereto as Exhibit E. A true, correct, and official copy of the 1771 enrolled law as published in Allinson's 1776 New Jersey law compendium, an original printing of which is held by NJSA, is attached hereto as Exhibit F.

13. The laws of the Royal Colony of New Jersey were diligently searched by myself and other NJSA staff for the period from 1703 to 1776, in connection with the concept of trespass. My staff and I located no legislation during that period relating to trespass in a broad sense. The concept of trespass was well and broadly understood by New Jersey legal authorities during the colonial period as it was rooted in English Common Law. While there were laws prohibiting trespass in certain locations, the 1722 and 1771 laws cited above were the only ones found that refer to trespassing in a broader sense throughout the colony. In both instances,

5

JA954

the relevant provision relates specifically to carrying guns onto privately owned land without permission.

14. A historical reference indicates that adjudication of the prohibition of trespassing with guns under the 1722 law and 1751 supplement could be and was applied regardless of any intent on the part of the offender to poach deer or other game. An account reported in *The Pennsylvania Gazette* [newspaper] on 27 March 1753 describes the statutory provision without any reference to poaching in relation to the apprehension of a man who suffered penalty under the New Jersey law: "any Person seeing another carry a Gun over any inclosed Land, not his own, by Information against him, obliges him to pay Five Pounds, and be bound over to his Good Behaviour, one Half to the Informer, and in case of Failure, to be dealt with at the Justices' Discretion." New Jersey did not have its own newspapers until 1778. Prior to then, news from New Jersey was published in the New York and Philadelphia newspapers. Newspaper articles relating to New Jersey were extracted for publication in a series of 16 volumes covering the colonial period, 1704-1782, at the direction of the State of New Jersey and under the auspices of a committee comprising historians and state government officials, including the Adjutant General. A copy of the 1753 newspaper extract cited above, as published in 1897, an original printing of which is held by NJSA, is attached hereto as Exhibit G.

15. The 1771 law explicitly prohibiting trespassing with guns was revised, with the same statutory title, in the 1846 revision of statutes. The language and intent of the provision regarding trespass with guns were unchanged in their essence, with occasional wording changes only to modernize the legislation. For example, "Council" was changed to "Senate" [the legislative upper house having been renamed by the State Constitution of 1844], "Colony" was changed to "state," and the fine was changed from "Forty Shillings" to "five dollars." This act was published in the State's revised statutes of 1846 (printed 1847) as Title II, Chapter 3, with the section on trespassing with guns given the section heading "Carrying guns, where prohibited." A true, correct, and official copy of this law enrolled law, on file in NJSA's holdings from the Office of the Secretary of State, is attached hereto as Exhibit H. A true, correct, and official copy

6

of the legislation as published in the revised statutes of 1846, an original printing of which is held by NJSA, is attached hereto as Exhibit I.

16. The 1846 law was supplemented by acts in 1852, 1859 (twice), 1866, 1867, and 1873. These supplements amended the game-related aspects of the law, but did not alter or supersede the general provision of the 1846 statute with regard to trespassing with guns. Copies of these laws as published by the State, original printings of which are held by NJSA, are attached hereto as Exhibits J, K, L, M, N, and O.

17. The 1846 legislation, with its provisions relative to trespassing with guns, was carried forward in the statutory revision of 1877. This section of the revised statutes was published with the section heading "Carrying guns, where prohibited." A true, correct, and official copy of this legislation as published by the State, an original printing of which is held by NJSA, is attached hereto as Exhibit P.

18. Historical reference corroborates that the 1846 law was in effect in 1880. A "Synopsis of Such Laws of the State of New Jersey as Concern A Rural Community" published that year by the West Ewing Improvement Association summarized "An Act to Prevent Trespassing with Guns" as follows: "If any person or persons shall carry any gun on any land not his own, and for which the owner pays taxes, or is in his lawful possession, unless he hath license or permission in writing from the owner or owners or legal possessor, every such person so offending, and convicted thereof … he shall, for every such offence, forfeit and pay to the owner of the soil, or his tenant in possession, the sum of five dollars, with costs of suit." A copy of the relevant pages of this publication is attached hereto as Exhibit Q.

19. On 14 March 1895, the State of New Jersey enacted legislation on trespassing with guns as a separate law in the form of "An Act to prevent trespassing with guns." A true, correct, and official copy of this law enrolled law, on file in NJSA's holdings from the Office of the Secretary of State, is attached hereto as Exhibit R.

JA956

20. The 1895 law cited above was amended 15 April 1911. A true, correct, and official copy of this law enrolled law, on file in NJSA's holdings from the Office of the Secretary of State, is attached hereto as Exhibit S.

21. The 1846 law cited above was repealed 3 April 1928 with the prohibition of trespassing with guns having been codified separately in the 1895 statute. A true, correct, and official copy of the 1928 enrolled law, on file in NJSA's holdings from the Office of the Secretary of State, is attached hereto as Exhibit T.

22. The 1895 law and its 1911 amendment are in effect currently as New Jersey Statutes, Title 2A, "Administration of Civil and Criminal Justice," Chapter 63, "Trespass Upon Lands," Section 1. The language and legislative history of this statute can be traced back over 300 years to legislation first enacted in 1722. A copy of *N.J.S.* 2A:63–1 as published is attached hereto as Exhibit U.

23. The operative 1771, 1846, and 1895 laws cited above and their respective revisions made no exceptions for different uses of private land, be it residential, commercial, or agricultural.

24. The operative 1771 and 1846 laws cited above and their respective revisions applied to all instances of carrying guns on another's property without the permission of the property owner, regardless of whether the carrier of guns had any intent to hunt or not.

25. Finally, by 1928, New Jersey had prohibited and fined the act of bringing a gun onto another's private property without the express consent of the property owner for over two centuries, without interruption in the law.

The foregoing statements are true to the best of my knowledge, information, and belief. I am aware that, if any of the statements are willfully false, I may be subject to punishment.

Joseph R. Klett

Dated: _8 Feb. 2023_

8

JA957

EXHIBIT A

1722 Law "… against Carrying of Guns … by Persons not Qualified"

[Bradford printing]



# THE
# ACTS

### Of the GENERAL ASSEMBLY

### Of the PROVINCE of

## *NEW-JERSEY,*

From the Time of the Surrender of the Government of the said Province, to the Fourth Year of the Reign of KING *GEORGE* the Second.

*Collected and Published by Order of the said* ASSEMBLY.

With a TABLE of the Principal Matters therein contained.

*PHILADELPHIA:* Printed and Sold by *William* and *Andrew Bradford,* Printers to the King's Most Excellent Majesty, for the Province of *New-Jersey,* MDCCXXXII.

I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA959



*Martin P. Grey*

W004566

*from his friend*

*M. Stratton*

*1874*

# THE
# ACTS

Of the GENERAL ASSEMBLY

Of the PROVINCE of

# *NEW-JERSEY*,

From the Time of the Surrender of the Government of the said Province, to the Fourth Year of the Reign of KING *GEORGE* the Second.

*Collected and Published by Order of the said* ASSEMBLY.

With a T A B L E of the Principal Matters therein contained.

*PHILADELPHIA*: Printed and Sold by *William* and *Andrew Bradford*, Printers to the King's Most Excellent Majesty, for the Province of *New-Jersey*, M D C C X X X I I.

1732.

JA960

Case 1:22-cv-07464-RMB-AMD   Document 76-1   Filed 02/13/23   Page 4 of 6 PageID: 1084

# C H A P.  LXXXVI.

*An ACT to prevent the Killing of Deer out of Season, and against Carrying of Guns and Hunting by Persons not Qualified.*

*Any Person killing Deer in the Time by this Act disallowed, to forfeit 30s. &c.*

**Sect. 1.** BE it Enacted by the Governor, Council and General Assembly, and it is hereby Enacted by the Authority of the same, That if any Person or Persons, after the Publication hereof, shall kill or Destroy any wild Buck, Doe or Fawn, or any other Sort of Deer whatsoever, at any Time in the Months of *January, February, March, April, May* or *June,* every such Person shall, for every such Offence, forfeit and pay the Sum of *Thirty Shillings,* for every such Buck, Doe or Fawn, or other Deer, so killed or destroyed as aforesaid, contrary to the true Intent and Meaning of this Act; one half thereof *to the Poor of the Township or Precinct* where the Offence is committed, and the other half to him who shall Inform or Sue for the same before any Justice of the Peace of this Province, who is hereby impowered and Authorized to hear and determine the same, and to convict the Offender by the Oath or Affirmation of one or more Witness. Provided, That such Conviction be made within two Months after such Offence committed.

*Sale of green Skins to amount to a Conviction, &c.*

2. And for the better Convicting of Offenders against this Act, *Be it Enacted by the Authority aforesaid,* That every Person in whose Custody shall be found, or who shall expose to Sale, any green Deer Skins, fresh Venison or Deers Flesh, at any Time in any of the Months of *January, February, March, April, May* or *June* afore-mentioned, and shall be convicted thereof, as aforesaid, shall be deemed Guilty of the said Offence.

*Not to extend to hinder killing them in Corn Fields, or by Indians.*

3. *Provided always,* That nothing contained in this Act shall be deemed or construed to hinder any Person from killing any kind of Deer, within his Field where Corn is growing, at any Time in the Month of *January,* nor to extend to any Free Native Indians carrying Guns, Hunt-ing,

Case 1:22-cv-07464-RMB-AMD   Document 76-1   Filed 02/13/23   Page 5 of 6 PageID: 1085

ing, killing or having in their Custody any Skins or Deers Flesh for their own Use, any Thing in this Act to the contrary notwithstanding.

4. And whereas divers Abuses have been committed, and great Damages and Inconveniences arisen by Persons carrying of Guns and presuming to Hunt on other Peoples Land; for Remedy whereof for the future, *Be it Enacted by the Authority aforesaid,* That if any Person or Persons shall presume, at any Time after the Publication hereof, to carry any Gun, or Hunt on the Improved or Inclosed Lands in any Plantation, and on other than his own, unless he have Licence or Permission from the owner of such Lands or Plantation, and shall be thereof Convicted, either upon the View of any Justice of the Peace within this Province, or by the Oath or Affirmation of any one or more Witnesses, before any Justice of the Peace, he shall, for every such Offence, forfeit the Sum of *Fifteen Shillings,* with Costs attending such Conviction. And if any Person whatsoever, who is not Owner of one Hundred Acres of Land, or otherwise Qualified, in the same Manner as Persons are or ought to be, for Electing of Representatives to serve in General Assembly, shall at any Time, after the Publication hereof, carry any Gun, or Hunt in the Woods or Uninclosed Lands, without Licence or Permission obtained from the Owner or Owners of such Lands, and shall be. thereof Convicted, in manner aforesaid, such Offender shall forfeit and pay the Sum of *Ten Shillings,* with Costs as aforesaid, for every such Offence. All which Penalties and Forfeitures shall go one Moiety to the Informer, and the other to the Poor of the Township or Precinct where the Offence is committed; but if convicted upon View of a Justice of the Peace, the whole Forfeiture shall be to the Use of the Poor. And if the Offender refuse to pay the same, with Costs, as aforesaid, shall be levyed on by Distress and Sale of the Offenders Goods, by Warrant under the Hand and Seal of the Justice before whom such Offender shall be Convicted, returning the Over-plus, if any be, the Charge of Distraining being first deducted. And for want of Effects whereon to make such Distress, every Person so Offending contrary to the true *Intent and Meaning of this* Act, shall be committed to Prison, when the Forfeiture is *Thirty Shillings,* for the Space of Fifteen Days, and when the Forfeiture is *Fifteen Shillings,* for the Space of Eight Days, and when the Forfeiture is *Ten Shillings,* for the Space of Five Days, without Bail or Mainprize.

*No Persons to carry a Gun or Hunt on Land inclosed, but by assent of Owners &c.*

*Nor on Lands Uninclosed, unless free holders, &c.*

*Forfeitures how to be applied, and how to be levied, &c,*

Q 2   5. *And*

JA962

**124**        *Anno Regni Octavo* Georgii *Regis.*

*Want of Effects to be committed to Goal.*

5. *And be it Enacted by the Authority aforesaid,* That every Justice of the Peace, before whom any Person or Persons is convicted of having committed any of the Offences in and by this Act prohibited, is hereby directed and required to Issue his Warrants for the bringing such Offender before him, and in Case of the want of Effects whereon to make Distress, to make out his *Mittimus* to commit such Offender to the Goal of the County in which such Conviction is made; and the Sheriff, Under-Sheriff or Goal-keeper is hereby directed and required to keep the said Offender in close Goal, according to the *Direction of this Act* and Tenor of such *Mittimus* to such Sheriff, Under-Sheriff or Goaler directed. And every Justice of the Peace

*Sheriff refusing, &c. to receive the party, to forfeit 6 l. &c.*

neglecting or refusing to Issue such Warrant, or make such *Mittimus,* and every Sheriff or Under-Sheriff or Goal-Keeper who shall not receive such Offender and him keep in close Goal, according to the true Intent and Meaning of this Act, shall, for every such Neglect or Refusal, or undue discharge of his Office in the Premises, forfeit the Sum of *Six Pounds,* to be recovered in any Court of Record within this Province, in which there shall be no Essoyn or Protection, the one half to such Person as shall Sue for and Prosecute the same to Effect, the other half to the Kings Majesty His Heirs and Successors, for and towards the Support of the Government of this Province.

*Not to extend to Negros, &c. but they are to be whipped if convicted, &c.*

6. *And Be it further Enacted by the Authority aforesaid,* That this Act nor any part thereof shall be construed to extend to Negro, Indian or Mullato Slaves, so as to commit them to Prison, during the Time in this Act limitted, in Case they should be Guilty of any of the Offences in this Act prohibited, but that, and in such Case, such Indian, Negro or Mulatto Slave killing and destroying any Deer as aforesaid, or Carrying or Hunting with any Gun, without License from his Master, shall, at the publick Whipping-post, on the bare Back, be Whipt, not exceeding Twenty Lashes for every such Offence, for which Whipping the Master shall pay to the Whipper the Sum of *Three Shillings,* and pay no greater or other Cost whatsoever, any Thing in this Act to the contrary hereof in any wise notwithstanding.

*These Five fore-going Acts were Published* May 5. 1722.

ACTS

JA963

EXHIBIT B

1751 Supplement to 1722 Law

[Nevill printing]

JA964



# THE

# ACTS

## Of the GENERAL ASSEMBLY

### Of the PROVINCE of

# NEW-JERSEY,

*From the Time of the Surrender of the Government in the Second Year of the Reign of Queen* ANNE, *to this present Time, being the Twenty Fifth Year of the Reign of King* GEORGE *the Second.*

Collected and published by Order of the GENERAL ASSEMBLY of the said Province.

*With Proper Tables; and an Alphabetical Index containing all the Principal Matters in the Body of the Book.*

By SAMUEL NEVILL Esq.; Second Justice of the Supreme Court of Judicature of the said Province.

Printed by WILLIAM BRADFORD, Printer to the Kings Most Excellent Majesty for the Province of *New-Jersey,* MDCCLII.



I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA965

# THE

# ACTS

## Of the GENERAL ASSEMBLY

## Of the PROVINCE of

# NEW-JERSEY,

*From the Time of the Surrender of the Government in the Second Year of the Reign of Queen* ANNE, *to this present Time, being the Twenty Fifth Year of the Reign of King* GEORGE *the Second.*

Collected and published by Order of the GENERAL ASSEMBLY of the said Province.

*With Proper Tables; and an Alphabetical Index containing all the Principal Matters in the Body of the Book.*

---

## By SAMUEL NEVILL Esq.;

Second Justice of the Supreme Court of Judicature of the said Province.

---

Printed by WILLIAM BRADFORD, Printer to the Kings Most Excellent Majesty for the Province of *New-Jersey,*
MDCCLII.

JA966

shall be recovered, as other Debts under *Five-Pounds*, by a Law of this Province ; and where the same exceed *Five Pounds*, they may be sued for and may be recovered in any Court of Record in this Province where the same is Cognizable, by Bill, Plaint or Information, wherein no Essoin, Protection or Wager of Law, nor more than one Imparlance shall be allowed ; all which said Fines and Penalties shall be recovered by any Person who will sue for the same, one half to his own Use, the other Half to the Use of the Poor.

8. P R O V I D E D A L W A Y S, That nothing in this Act shall be construed to prevent the Transporting any unbranded Flour to the Provinces of *New-York* or *Pennsylvania*, or to subject the same to be inspected ; any Thing in this Act to contrary notwithstanding.

*Nothing herein to prevent Four going to New-York or Pennsylvania.*

9. P R O V I D E D A L W A Y S, That this Act, nor nothing therein contained, shall be in Force till the first of *March* next, and to continue in Force from thence for two Years thereafter, and to the End of the then next Session of General Assembly.

*Limitation of the Act.*

# CHAP. CXIV.

*A Supplementary Act to the Act entitled,* An Act to prevent the killing of Deer out of Season, and against carrying of Guns, and hunting by Persons not quallified. *See chap.* 35.

*Preamble.*

*Sect.* 1. W H E R E A S there was an Act of General Assembly of this Colony, passed in the eighth Year of the Reign of King GEORGE the first, entitled, *An Act to prevent the killing of Deer out of Season, and against carrying of Guns, and hunting by Persons not qualified*, which said Act hath not fully prevented many Mischiefs and Inconveniencies that have often happened by Persons setting of Steel Traps to

*See Chap. 35.*

# Of George II.

to catch Deer, whereby not only other Mens Cattle have been hurt, but People have been in Danger thereof. To prevent the like for the Future,

2. BE IT ENACTED by the Governor, Council and General Assembly, and it is hereby E N- A C T E D by the Authority of the same, That if any Person or Persons, after the Publication of this Act, shall set a Steel Trap or Traps in any Brook, Pond, Water or in any other Place whatsoever, unless he or they can make it appear, by sufficient Proof in Circumstance, that the same were set for Wolves, Panthers or other Beasts of Prey, such Person or Persons shall forfeit such Trap or Traps: And it shall and may be lawful for any Person or Persons to search for such Trap or Traps on any un-inclosed Lands, and when found, to take and seize the same, and in three Days Time to carry the same to one of the nearest Justices of the Peace of that County where such Trap or Traps where found, which said Justice shall keep, or order the same to be safely kept, for the space of Twenty Days; and at the Expiration of that Time, if no Owner or Claimer appears, the said Justice is hereby impowered and required, by his Warrant under his Hand and Seal, to order any Constable of said County to sell said Trap or Traps at publick Vendue; and out of the Money arising by such Sale, the said Justices and Constables Fees shall be first paid, the Remainder of the said Money the said Constable shall divide into two equal Parts, and one half thereof he shall pay to the Overseers of the Poor of such Township or Precinct where the said Trap or Traps were found, by them to be applied to the Use of the Poor of the said Township or Precinct, and the other Half thereof to the Person or Persons that seized the same, and carried them to the said Justices as aforesaid;

*Forfeiture upon setting Steel Trap for Deers*

3. AND BE IT FURTHER ENACTED by the Authority aforesaid, That if any Claimer of said Trap or Traps, appears before the said Justice within the Time aforesaid, then the said Justice shall set a convenient Time to hear the said Claimer or Claimers, and send the said Person or Persons that seized the same, word thereof in writing forthwith; and if upon hearing, the said Claimer or Claimers shall not fully prove, either by a sufficient Witness or Witnesses, or good Circumstance to the Satisfaction of the said Justice that the said Trap or Traps, were set for Wolves, Bears, Panthers, or other Beasts of prey, and

*The Justices Duty upon a Claimer appearing.*

X 5                                baited

baited with dead Carcales Flesh, live Sheep or Swine, to entice such Beasts to said Trap or Traps, then the said Justice shall give Judgment against such Claimer or Claimers, and order said Trap or Traps to be sold as aforesaid; and the Money arising by such sale, to be applied as abovesaid: But if the said Claimer or Claimers, shall make it appear, by Witnesses or good Circumstance as abovesaid, to the Satisfaction of the said justice, that said Trap or Traps, at the Time of such seizure, were set for Beasts of Prey as aforesaid, and baited as aforesaid, then the said Justice shall give Jugdment for the Claimer or Claimers, and order said Trap or Traps to be delivered to him or them again.

**4. AND BE IT FURTHER ENACTED** by the Authority aforesaid, That if any Person or Persons shall lend his or their Trap or Traps to any Indian, or other Person or Persons whatsoever, and the same shall be found set for Deer as aforesaid, the said Trap or Traps shall and may be seized, forfeited and disposed of in manner aforesaid, though the Property of such Trap or Traps shall appear in an Indian or Indians, or any other Person or Persons whatsoever, who were the Lender or Lenders thereof; any Law, Usage or Custom to the contrary in any wise notwithstanding.

*Any Trap set for Deer to be forfeited.*

**5. AND BE IT FURTHER ENACTED** by the Authority aforesaid, That if any Person or Persons whatsoever, shall after the first Day of *December* next, have in his or their Custody any Steel Trap or Traps, that shall be sufficient for catching of Wolves or Deer, and the present Owners Name not stampt at large in fair Letters, on the striking Plates or Jaws of such Trap or Traps, then it shall and may be lawful for such Trap or Traps, to be seized and disposed of in the manner aforesaid, though the same were not found to be set for Deer as aforesaid; any Law, Usage or Custom to the contrary in any wise notwithstanding.

*Owner of the Trap to have his Name stampt, on it after the first Day of December next or the same to be forfeited.*

**6. AND BE IT FURTHER ENACTED** by the Authority aforesaid, That if any Person or Persons, shall suspect that any other Person or Persons, hath set a steel Trap or Traps for catching of Deer, though such Trap or Traps shall not be found and seized as aforesaid, then it shall and may be lawful for such Person or Persons so suspecting, to make his or their complaint, to any
Justice

*Any Person suspecting Traps to be set for Deer, to apply to a Justice who is to send for the Party suspected.*

# Of George II.

45I

Juſtice of the Peace of ſuch County where ſuch ſuſpected Perſon or Perſons dwells, who is hereby required and impowered, if ſuch ſuſpected Perſons are not Houſeholders, to iſſue his Warrant to any Conſtable of ſaid County, commanding him to bring ſuch ſuſpected Perſon before him the ſaid Juſtice; and if ſuch ſuſpected Perſon or Perſons are Houſeholders then the ſaid juſtice is hereby required to grant a Summons directed to the ſaid Conſtable, ordering him to Summons ſuch ſuſpected Perſon or Perſons to appear before him, within Six Days after the Service of ſuch Summons; And if the ſaid Complainer or Complainers, ſhall make it ſufficiently appear to the ſaid Juſtice upon Trval, by the Oath of one or more Witneſſes, that ſuch ſuſpected Perſon or Perſons hath ſet ſuch a Steel Trap or Traps, where Deer are likely to come; Then the Proof ſhall lie upon ſuch ſuſpected Perſon or Perſons, that ſaid Trap or Traps were ſet for Beaſts of prey as aforeſaid, and baited as aforeſaid, otherwiſe the ſaid Juſtice ſhall give Judgment againſt ſuch ſuſpected Perſon or Perſons, that he or they ſhall forfeit and pay the Sum of *Forty Shillings*, with full Coſts of Suit, for every ſuch Offence: But if the ſaid ſuſpected Perſon or Perſons ſhall make it appear, that ſaid Trap or Traps were ſet for Beaſts of prey as aforeſaid, then the ſaid Juſtice ſhall give Judgment againſt the ſaid Complainer or Complainers, and that he or they do pay the Defendant or Defendants their Coſts of Suit.

7. AND BE IT FURTHER ENACTED by the Authority aforeſaid, That if any Perſon or Perſons, ſhall preſume to carry a Gun or Guns, or hunt or watch for Deer, or any other Game, or let in any Dog or Dogs to drive Deer, or any other Game, in any Perſon or Perſons Land, without leave firſt had and obtained (if not of his own Family) in writing under the hand of the Owner or Owners thereof, or ſuch Perſon or Perſons who hath the Poſſeſſion or Care of ſuch Land, not exceeding one Day, before ſuch Perſon or Perſons ſo offending, ſhall upon complaint made thereof by any Perſon or Perſons whatſoever, to any Juſtice of the Peace of the County where ſuch Offence is committed; the ſaid Juſtice is hereby required to iſſue out his Warrant againſt ſuch Offender or Offenders, to bring him or them before him; and if he or they are convicted of ſuch Offence or Offences before the ſaid Juſtice, by the Oath or Affirmation of one or more Witneſſes, then he is hereby required and com-

*[side note]* Any Perſon carrying Guns or hunting or watching for Deer, &c. or that ſets in any Dog, to drive Deer, &c. on Land not his own without the Owners leave in writing dated not above one Day before, or the leave of the Perſon in Poſſeſſion, liable to be bound over and fixed.

commanded, to bind such Offender or Offenders, in their own Recognizance, in the Sum of *Ten Pounds*, to his or their good Behaviour for three Months; and also give Judgment, that he or they shall pay the Sum of *Five Pounds*, and the Costs of such Conviction, and binding him or them, to his or their good Behaviour: And if the said Person or Persons so convicted, shall delay or refuse to enter into the said Recognizance, and pay the Sum and Costs aforesaid, then the said Justice is hereby required and commanded to commit the said Offender or Offenders to the Gaol of said County, until he or they shall comply to enter into said Recognizance, and pay the Sum and Costs aforesaid, and also the Gaolers Fees; and the Sheriff of the said County, or his Gaoler, is hereby required and commanded to take such Offender or Offenders into his Custody, and him or them safely keep in close Gaol until such Offender or Offenders shall comply as aforesaid.

*The fine*

*Persons setting Traps not within their own enclosure to forfeit 5l.*

8. AND BE IT FURTHER ENACTED by the Authority aforesaid, That if any Person sets a Trap or Traps on Lands not within his own Enclosure, he or they so offending, shall forfeit *Five Pounds*, to recovered by the Owner of the Lands where the same is set; and if he neglects his Prosecution for the Space of one Month after Discovery, then any other Person may prosecute, and the Person setting such Trap or Traps, shall also forfeit double Damage to any Person who shall be injured thereby.

*Time fixed when Deer shall not be killed.*

9 AND BE IT FURTHER ENACTED by the Authority aforesaid, That if any Person or Persons shall kill any wild Doe, Buck, or Fawn, at any other Time or Season, except only between the *first* Day of *July* and the *Tenth* Day of *December*, he or they so Offending, shall forfeit and pay the Sum of *Forty Shillings*, for Offending against this Act, in the Months of *December* and *January*, and the Sum of *Ten Shillings*, over and above the *Thirty Shillings* forfeit, mentioned in the aforesaid Act, entitled, *An Act to prevent the Killing of Deer out of Season, &c.* for every other of the said Months.

*See Chap 35.*

*Penalty on Persons setting Guns or planting sharp stakes to kill r.*

10. AND BE IT ENACTED by the Authority aforesaid, That if any Person or Persons whatsoever, after the Publication of this Act, shall presume to set any Gun or Guns, or plant sharp stakes, in Order to kill Deer, or any other wild Beasts, on his own, or the Lands of

# Of GEORGE II.

of any other Person whatsoever, he or she so offending, shall forfeit for every such Offence, the Sum of *Five Pounds*, to be recovered by any Person or Persons whatsoever, who shall sue for the same, and applied in Manner aforesaid, besides double Damages to any Person who shall be injured thereby.

11. AND BE IT ENACTED by the Authority aforesaid, That all the Penalties and Forfeitures mentioned in this Act, not hereby especially directed and applied, shall be recovered and applied according to the Directions and Appointment of the before recited Act.

*Penalties of this Act not applied to be recovered according to the Former Act.*

12. AND BE IT FURTHER ENACTED by the Authority aforesaid, That if any Person or Persons whatsoever, whether the accused or accuser, Plaintiff or Defendant, shall in any of the Cases aforesaid, think themselves aggrieved by any of the Judgments given by the said Justices, then it shall and may be lawful for such Person or Persons, to appeal to the next Court of Quarter Sessions, held for such County, where such Judgment shall be given; which said Court is hereby impowered to hear and determine, all and every such Appeal or Appeals.

*Parties aggrieved may appeal to the next Court of Quarter Sessions.*

13. AND for the better and more effectual putting this and the before recited Act in Execution, BE IT FURTHER ENACTED by the Authority aforesaid, That the Constable of each and every respective Township, Precinct and District in this Colony, having any Knowledge of any of the Offences committed against this and the said recited Act, shall, and is hereby required to present every such Offence to some Justice of the Peace of such County where such Offences shall be committed, or to the Justices of the Court of Quarter Session for the same County, together with the Name or Names of all such Offenders, and the said Justice or Justices of the Sessions as aforesaid, are hereby required to hear and determine the same, and to convict the Offenders in the Penalties and Forfeitures mentioned in this and the before recited Act, so that such Conviction shall be within four Months next after such Offence is committed; any Thing in the said recited Act, to the contrary in any wise notwithstanding.

*Constables required to present every Offence against this and a former Act.*

*Together with the Name or Names of all Offenders.*

*See Chap. 35.*

Y 5

PRO-

JA972

## 454     The Twenty Fifth

Nothing herein to alter the former Act except what is hereby altered or supplied.

14. P R O V I D E D that nothing herein contained, shall be deemed or taken to disannul, alter or make void the said Act, but that every Clause, Article and Sentence contained therein, except what is hereby altered or supplied, shall remain in full Force and Virtue.

Continuance of this Act.

15. P R O V I D E D A L W A Y S, That this Act shall be and continue in Force for the Space of three Years from the Publication thereof, and thence to the End of the then next Session of General Assembly, and no longer.

## The *E N D.*



EXHIBIT C

1769 Law "… for the more effectual

Preservation of Deer …"

[original enrolled law]



An Act for the more
effectual Preservation of Deer
on this Colony.

(N° 11)

November 30. 1769. This Bill
being twice read the Counsel
And Further having been read
and Compared, the same is pass'd.
Ch. Smith,
Clk
Ch. Smith

I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

Joseph R. Klett

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives
JA975



An Act, for the more Effectual Preservation of Deer in this Colony.

(N⁰ 11)

November 30. 1771. The Bill Assigned on the Council — And Assent having been read and Compared. We have it pro tris.

Rich⁴ Smith Clk



*An Act for the more effectual preservation of Deer in this Colony*

1. Be it Enacted, by the Governor, Council, and General Assembly, and it is hereby Enacted by the Authority of the same, That if any Person or Persons shall presume, at any time after the publication hereof, to carry any Gun, or Hunt or Watch for Deer, or set in any Dog or Dogs to drive Deer or any other Game on any Lands not his own, (and for which the Owners pay Taxes) or is in his Lawful Possession unless he have licence or permission in Writing from the Owner or Owners or legal Possessor, Such person or persons so offending and convicted thereof, either upon the View of any Justice of the Peace within this Colony, or by the Oath or Affirmation of one or more Witness or Witnesses before any Justice of the Peace of either of the Counties, Cities or Towns Corporate of this Colony, in which the Offender or Offenders may be taken or reside, he shall for every Offence forfeit and pay to the Owner of the Soil, or his Tenant in possession the Sum of Forty Shillings, with costs of Suit, provided that nothing herein contained shall be construed to extend to prevent any Person carrying a Gun upon the Kings High Ways in this Colony.

2. And be it Further Enacted by the Authority aforesaid, that if the Person or Persons offending against this Act be Non Residents of this Colony, he or they shall forfeit and pay for every such Offence, Five Pounds, and shall forfeit his or their Gun or Guns to any Person or Persons who shall inform and prosecute the same to effect before any Justice of the Peace in any County of this Colony wherein the Offender or Offenders may be taken or apprehended.——

3. And be it Enacted by the Authority aforesaid, That if any Person or Persons, shall kill, destroy, hunt or take any Doe, Buck, Fawn, or any sort of Deer Whatsoever, at any other time or season, except only between the First day of September, and the first day of January yearly and every year, he, she, or they so offending shall forfeit and pay the Sum of Forty Shillings for each and every Offence, to be sued for, recovered and applied as aforesaid.

4. And for the better and more effectual Convicting of Offenders against this Act, Be it Enacted by the Authority aforesaid, that any and every Person or Persons, in whose Custody shall be found, or who shall expose to Sale any Green Deer Skins or Fresh Venison, killed—— at any time after the first day of January, and before the first day of September aforesaid, and shall be thereof Convicted by the Oath or Affirmation of one or more credible Witnesses, shall be deemed Guilty of Offending against this Act, and be Subjected to the Penalties of killing Deer out of Season;——

5. And Whereas the practice of Shooting at Deer with Shots, is not only prejudicial to the Skins, but also in too many Instances only Occasions Wounds, which do not Bleed, and with which the Deer escape and pine away and dye, Therefore ———————————— Be it Enacted, that from and after the first day of September next, no person or persons whatsoever shall presume to Shoot at any Deer with Shot of any kind whatever, but with a single Slugg, Bullet or Ball only, And that if any Person or Persons shall presume to Shoot at, wound or kill any Deer, with any other Shot, than a single Ball, Slugg, or Bullet, the Person or Persons so offending shall forfeit and pay for every such Offence the Sum of Twenty Shillings, to be received and applied as is herein before directed, for hunting on Lands not his Own.——

6. And Whereas great numbers of Idle and disorderly Persons make a practice of Hunting for Deer on the Waste and unimproved Lands in this Colony, whereby their Families are neglected, and the public is prejudiced by the loss of their Labour, Be it Therefore Enacted by the Authority aforesaid, That from and after the first day of September next, no person or persons whatsoever (except such persons as are by the Laws of this Colony *qualified*

Qualified to Vote for Representatives in General Assembly, and their Sons being of the Age of Eighteen years or upwards; and Living with their Parents or being Freeholders, shall on any pretence whatever, Hunt or Kill any Deer, on the Waste and unimproved Land in this Colony; and if any person or persons not Qualified as aforesaid, shall presume to Hunt Deer as aforesaid, he or they so offending shall forfeit and pay for every such Offence the Sum of Twenty Shillings, to be recovered by Action of Debt, with costs, by any Person who shall Sue for the same, to be applied, one half to the Prosecutor, and the other half to the use of the Poor of the Township or Precinct where the Fact was committed.

7. And be it Enacted by the Authority aforesaid That if any person or persons within this Colony shall set any Trap of Steel or Iron, larger than what is usually and commonly set for Foxes or Musk Ratts, or which Trap when set shall exceed the weight of Five Pounds, such person setting such Trap shall pay the Sum of Five Pounds, and forfeit the Trap; or, in default of payment for Twenty Four Hours after Conviction shall suffer Three Months Imprisonment, and shall also be liable to make good all Damages any person shall sustain by setting such Trap, And the Owner of such Trap, or person to whom it was lent shall be esteemed the setter thereof, unless it shall be proved, on Oath or Affirmation, what other person set the same, or that such Trap was lost by said Owner or Person to whom it was lent, and absolutely out of his power. And if the setter of the Trap be a Slave, he shall (unless the Master or Mistress shall pay the Fine) in lieu of such Fine, be publickly Whipt with Thirty Lashes, and committed till the Cost is paid: And that the said Traps shall be broken and entirely destroyed, in the View and Presence of the Justice of the Peace before whom they are brought, and shall be delivered to the Overseer of the Poor to be by him Sold for the use of the poor And if any Person or Persons shall have possession of, or there shall be found in his or their House, any Iron or Steel Trap or Traps, the weight whereof shall exceed Five pounds, or shall have in his possession any other Device for taking of Deer, such person or persons shall be subjected to the same penalty as if he or they were convicted of setting such Trap or Traps or other Device for taking of Deer. ———

8. And be it Further Enacted by the Authority aforesaid, that every Smith, or other Artificer, who shall hereafter make, or mend, any Steel or Iron Traps, of greater weight than Five pounds he shall forfeit and pay the Sum of Forty Shillings: and the person carrying the said Trap to the Artificer aforesaid shall forfeit and pay the Sum of Twenty Shillings, And every person who shall bring into this Colony any new or repaired Traps, above the weight aforesaid shall forfeit and pay the Sum of Forty Shillings, And if the person who shall carry the same to the Smith or Artificer, shall be so poor as that he shall not be able to pay the Forfeiture aforesaid, he shall be committed to the Common Goal, until he shall prove who is Owner of said Trap, or delivered the same to him; and in such case, the forfeiture aforesaid shall be levied on the Goods, or in failure of Goods, on the Body of the Owner of said Traps, or the person who delivered the same to the Pauper, and the Trap shall be forfeited, Worked up, and entirely destroyed.

9. And Whereas a most dangerous method of setting Guns has too much prevailed in this Province Be it Enacted by the Authority aforesaid, That if any person or persons within this colony shall presume to set any loaded Gun in such manner as that the same shall be intended to go off, or discharge itself, or be discharged by any string, Rope, or other Contrivance, such Person or Persons shall forfeit and pay the Sum of Six pounds, and on non payment thereof, shall be committed to the Common Goal of the County for Six Months.

10. And be it Further Enacted by the Authority aforesaid that the Fines and Forfeitures in this Act expressed, and not particularly provided for, shall be paid, One half to the Prosecutor, and the other half



Half to and for the use of the Poor of the Town, Precinct or District where the Offence is committed, And that the Execution of this Act and every part thereof shall be within the Cognizance and Jurisdiction of any One Magistrate or Justice of the Peace.

11. And be it Enacted by the Authority aforesaid, That nothing in this Law shall be construed to extend to restrain the Owners of Parks, or of Tame Deer, from killing, hunting, or Driving their own Deer.

12. And Be it also Enacted by the Authority aforesaid, That if any Justice of the Peace or other Officer within this Province, coming to the knowledge of any Offence against this Act, and shall not prosecute the same to Effect within Two Months after such knowledge, shall forfeit and pay the Sum or Sums to which the Offenders against this Act would have been liable, and the Justices at every Sessions shall give the Substance of this Law in Charge to the Grand Jury, who shall make particular enquiry thereof, and preseent all such Persons offending against this Act, against whom no Actions have been brought and recoveries had for the Penalties in this Act contained, And on Conviction for any of the Offences herein mentioned, to set and Impose the Fines and Penalties herein mentioned, with Costs of Suit.

13. And Be it Enacted by the Authority aforesaid, That if any Person or Persons whatsoever either the Accused or Accuser, Plaintiff or Defendant, shall think themselves aggrieved by any of the Judgments given by the said Justices or other Magistrates for any Suit commenced by Virtue of this Act, then it shall and may be lawful for such Person or Persons to Appeal (on giving sufficient Security for the Forfeitures and Costs) to the next Court of General Quarter Sessions held for such County where such Judgment shall be given, which Court is hereby impowered to hear and determine all and every such Appeal or Appeals.

14. And Be it Enacted by the Authority aforesaid, That if any Person or Persons within this Colony, shall after the publication of this Act, Watch with a Gun on any Uninclosed Land within Two hundred Yards of any Road or path in the Night time, Wether the said Road is laid out by Law or not or shall Stand or Station him or themselves upon, or within Two hundred Yards of any Road as aforesaid for Shooting at Deer driven by Dogs, He or they so Offending shall on Conviction forfeit and pay the Sum of Five pounds for every such Offence, to be recovered by Action of Debt, or presentment of the Grand Jury as aforesaid and pay all Damages.

15. Provided Allways, That the Fifth, Seventh and Eighth Sections of this Law shall not be construed to extend or any Ways affect the Counties of Essex, Bergen, Morris or Sussex, provided also that the Sixth Section of this Act shall not be construed to affect any Native Indian.

16. And be it Enacted, by the Authority aforesaid, That all the Laws now in Force for the Preservation of Deer, and regulating the size of Traps, Shall be, and they are hereby repealed.

...ncil Chamber November 30th 1769.
... Bill reingrossed with the Amendments
...is House, having been read and con:
...ed, Resolved that the same do pass.
        By Order of the House
            Nail[...] Speaker

Burlington December 6th 1769. I assent to this
Bill enacting the same & order it to be enrolled.
            W[m] Franklin

November 30th 1769. This Bill Reingrossed with the
Amendments made thereto by the Council, having
been read and compared
Resolved That the same do pass,
            By Order of the House
                Cortland Skinner
                    Speaker

JA979

EXHIBIT D

1771 Law "… to prevent trespassing with Guns"

[original enrolled law]



Burlington December 28th 1771 I assent to this Bill enacting the same and order it to be enrolled.

Wm Franklin

An Act for the Preservation of Deer and other Game and to prevent trespassing with Guns.

December 9th 1771. This Bill having been read three times in the House of Representatives, is passed.

December 9th 1771. This Bill having passed with the Council, Amendments thereto have been read and compared in the House of Representatives thrice, is passed.

Richd Smith Clerk



I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

Joseph R. Klett

Address;
New Jersey State Archives       Joseph R. Klett
P.O. Box 307                    Executive Director
225 West State St.              N. J. State Archives
Trenton, N.J. 08625

JA981



Burlington December 28th 1771 I assent to this Bill enacting the same and order it to be enrolled.

Wm Franklin

An Act for the Preservation of Deer and other Game, and to prevent trespassing with Guns.

December 9. 1771 This Bill being passed with the Councils Amendments, having been tried and compared in the House of Representatives, is refused.

Rich'd Smith Clk



*An Act for the Preservation of Deer and other Game, and to pre-vent Trespassing with Guns.* —

1. **Whereas** the Laws heretofore passed in this Colony, for the Preservation of Deer and other Game, and to prevent trespassing with Guns, Traps, and Dogs, have by Experience been found insuffi-cient to answer the Salutary purposes thereby intended. Therefore,

2. **Be it Enacted** By the Governor, Council, and General Assembly of this Colony of New Jersey And it is hereby Enacted by the Authority of the same, That if any Person or Persons shall presume at any time after the Publication hereof, to carry any Gun on any Lands not his own, and for which the Owner pays Taxes, or is in his lawful Possession, unless he hath Licence or Permission in writing from the Owner or Owners or Legal Possessor, every such Person so offending, and convicted thereof either upon the View of any Justice of the Peace within this Colony, or by the Oath or Affirmation of One or more Witnesses before any Justice of the Peace of either of the Counties, Cities, or Towns Corporate of this Colony in which the Offender or Offenders may be taken or reside. He, she, or they shall for every such Offence, forfeit and pay to the Owner of the Soil or his Tenant in possession, the Sum of Forty Shillings, with costs of Suit, which Forfeiture shall and may be sued for and recovered by the Owner of the Soil or Tenant in Possession, before any Justice of the Peace in this Colony, for the use of such Owner or Tenant in Possession.——

3. **And Be it Enacted** by the Authority aforesaid. That if any Person shall presume at any time after the Publication of this Act, to hunt or watch for Deer with a Gun, or set in any Dog or Dogs to drive Deer or any other Game, on any Lands, not his own, and for which the Owner or Possessor pays Taxes, or is in his lawful Possession, unless he hath Licence or Permission in Writing from such Owner or Owners, or Legal Possessor, every such Person so offending and being convicted thereof in manner aforesaid shall, for every such Offence forfeit and pay to the Owner of the Soil or Tenant in Possession, the Sum of Forty Shillings with Costs of Suit, **provided** that nothing herein contained shall be construed to extend to prevent any Person carrying a Gun upon the Kings Highway in this Colony.——

4. **And Be it further Enacted** By the Authority aforesaid. That if the Person or Persons offending against this Act be Non Residents of this Colony. He or they shall forfeit and pay for every such Offence, Five pounds, and shall forfeit his or their Gun or Guns to any Person or Persons who shall inform and prosecute the same to Effect, before any Justice of the Peace, in any County of this Colony, wherein the Offender or Offenders may be taken or apprehended.——

5. **And Be it Enacted** by the Authority aforesaid. That if any Person or Persons, shall kill, destroy, hunt or take any Doe, Buck, Fawn, or any sort of Deer whatsoever at any other Time or Season, except only between the First day of September, and the first day of January yearly and every Year. He, she, or they so offending, shall forfeit and pay the Sum of Forty Shillings for each and every Offence to be sued for, recovered, and applied as hereafter is directed.——

6. **And** for the better and more effectual Convicting of Offenders against this Act. **Be it Enacted** by the Authority aforesaid. That any and every Person or Persons in whose Custody shall be found, or who shall expose to Sale any Green Deer Skins, or fresh Venison, killed at any Time, after the First Day of January, and before the first day of September aforesaid, and shall be thereof convicted by the Oath or Affirmation of one or more credible Witnesses, shall be deemed Guilty of offending against this Act, and be subjected to the Penalties of killing Deer out of Season.——

7. **And Whereas** great Numbers of idle and disorderly Persons make a Practice of Hunting on the Waste and unimproved Lands in this Colony, whereby their Families are neglected, and the Public

45/42

Public is prejudiced by the Loss of their Labour, Be it therefore Enacted by the Authority aforesaid, That from and after the first day of January next, no Person or Persons whatsoever (except such Persons as are by the Laws of this Colony qualified to Vote for Representatives in General Assembly, in 'right of their Freeholds, and their Sons, being of the Age of Eighteen Years, or upwards, and living with their Parent or Parents, or being Freeholders) shall on any Pretence whatever hunt on the Waste and unimproved Lands in this Colony, And if any Person or Persons not qualified as aforesaid shall presume to hunt as aforesaid, He or they so offending shall forfeit and pay for every such Offence the Sum of Twenty shillings to be recovered by Action of Debt with Costs, by any Person who shall sue for the same, to be applied, one half to the Prosecutor, and the other half to the use of the Poor, of the Township or Precinct where the Fact was committed.

8. And Be it Enacted By the Authority aforesaid, That if any Person or Persons within this Colony, shall set any Traps, or other Device whatsoever, larger than what is usually and commonly set for Foxes and Mush Rats, such Person setting such Traps or other Device, shall pay the Sum of Five Pounds, and forfeit the Trap or other Device, shall suffer Three Months Imprisonment, and shall also be liable to make good all Damages any Person shall sustain by setting such Trap or other Device, and the Owner of such Trap or other Device, or Person to whom it was lent, shall be esteemed the setter thereof, unless it shall be proved on Oath or Affirmation what other person set the same, or that such Traps or other Device was lost by said Owner or Person to whom it was lent and absolutely out of his Power, And if the setter of the Trap or other Device be a Slave, and it be his own Voluntary Act, He shall (unless the Master or Mistress shall pay the Fine) in Lieu of such Fine, be publickly whipt with Thirty Lashes, and committed till the Costs are paid, And that the said Trap or other Device shall be broken and destroyed in the View and presence of the Justice of the Peace before whom they are brought, And if any Person or Persons shall have Possession of, or there shall be found in his or their House, any Trap or Traps, Device or Devices of whatsoever, for taking of Deer; such Person or Persons shall be subjected to the same Penalty, as if he or they were convicted of setting such Trap or Traps or other Device.

9. And for encouraging the Destruction of such Traps and Devices, Be it Enacted by the Authority aforesaid, That if any Person shall seize any Trap or other Device for the taking Deer and shall carry such Traps or Device to any Magistrate of the County where such Trap or Device was seized, such Person shall be intituled to an Order from the said Magistrate to the Collector of such County to pay him the Sum of Ten Shillings out of any Money in his Hands raised for the use of the County, which Sum shall be allowed to such Collector on the Settlement of his Accounts.

10. And Be it further Enacted By the Authority aforesaid, That every Smith, or other Artificer, who shall hereafter make, or mend any such Trap or other Device aforesaid, He shall forfeit and pay the Sum of Forty Shillings, And the Person carrying such Traps or other Device to the Artificer aforesaid, shall forfeit and pay the Sum of Twenty Shillings, And every Person who shall bring into this Colony any such Trap or Device as aforesaid, shall forfeit and pay the Sum of Forty Shillings, And if the Person who shall carry the same to the Smith or Artificer shall be so poor as that he shall not be able to pay the Forfeiture aforesaid, He shall be committed to the Common Goal until he shall prove who is Owner of such Trap or Device, or who delivered the same to him, and in such Case the forfeiture aforesaid shall be levied on the Goods, or in failure of Goods, on the Body of the Owner of such Trap or Device, or the person who delivered the same to the Pauper, and the Trap or Device shall be forfeited and destroyed.

11. And Whereas a most dangerous Method of setting Guns has too much prevailed in this Province, Be it Enacted, By the Authority aforesaid, That if any Person or Persons within this Colony shall presume to set any loaded Gun in such Manner as that the same shall be intended to go off, or discharge itself, or be discharged by any String, Rope, or other Contrivance, such Person or
/ Persons

JA984

persons shall forfeit and pay the Sum of Six Pounds, and on Non payment thereof, shall be committed to the Common Goal of the County for Six Months.

12. *And Be it further Enacted* by the Authority aforesaid. That the Fines and Forfeitures in this Act expressed, and not particularly appropriated shall be paid, One half to the Prosecutor, and the other half to and for the use of the Poor of the Town, Precinct, or District where the Offence is committed And that the Execution of this Act, and every part thereof, shall be within the Cognizance and Jurisdiction of any one Magistrate, or Justice of the Peace, without any Reference to the Act for Tryal of small Causes in this Colony.

13. *And Be it Enacted*, That nothing in this Law shall be construed to extend to restrain the Owners of Parks, or of Tame Deer, from Killing, Hunting, or Driving their own Deer.

14. *And Be it also Enacted* By the Authority aforesaid, That if any Justice of the Peace or other Magistrate within this Province shall have Information of any Persons offending against this Act, in killing Deer out of Season, Setting and making Traps, Non residents killing Deer, and persons setting of Guns, and shall not prosecute the same to Effect, within Two Months after such Information; He shall forfeit and pay the Sum or Sums to which the Offender against this Act would have been liable.

15. *And Be it Enacted* By the Authority aforesaid, That the Justices at every Quarter Sessions of the Peace, shall cause this Act to be publickly read, And give in charge to the Grand Jury to particularly enquire, and present all Persons for killing Deer out of Season, setting or making Traps, and all Non residents killing, destroying, Hunting and taking any sort of Deer, and all persons setting of Guns and upon Conviction for either of the said Offences, the said Justices shall set and impose the Fines and Penalties, herein before mentioned, with Costs of Suit.

16. *And Be it Enacted* By the Authority aforesaid That if any Person or Persons whatsoever whether the Accused or Accuser, Plaintiff or Defendant, shall think themselves aggrieved by any of the Judgments, given by the said Justices, or other Magistrates, for any Suit commenced by Virtue of this Act then, it shall and may be lawful for such Person or Persons to appeal (on giving sufficient Security for the Forfeitures and Costs) to the next Court of General Quarter Sessions held for such County where such Judgment shall be given, which Court is hereby impowered to hear and determine all and every such Appeal or Appeals.

17. *And Be it Enacted* By the Authority aforesaid, That if any Person or Persons within this Colony, shall, after the Publication of this Act, watch with a Gun or any uninclosed Lands within Two hundred yards of any Road or Path, in the Night time, whether the said Road is laid out by Law or not, or shall stand or station him or themselves upon, or within Two hundred Yards of any Road as aforesaid, for shooting at Deer, driven by Dogs, He or they so offending shall on Conviction, forfeit and pay the Sum of Five Pounds, for every such Offence, to be recovered by Action of Debt, or presentment of the Grand Jury as aforesaid, and pay all Damages.

18. *Provided Allways*, That the Seventh Section of this Act shall not be construed to affect any Native Indian, and that nothing in this Act shall be construed to prevent the Inhabitants of Essex, Bergen, Morris and Sussex from making, having in their Houses, or setting Traps of Five Pounds weight or more, For Bears, Wolves, Foxes, or any other Wild Beasts, Deer only excepted.

19. *And Be it further Enacted* By the Authority aforesaid, That all former Laws made in this Colony for the Preservation of Deer and other Game, and to prevent trespassing with Guns & and regulating the Size of Traps, shall be, and they are hereby repealed.

...ber 6th 1771. This Bill reinforced with the
...cils Amendments having been read & compared
...uncil, Resolved That the same do pass.
By Order of the House.   Cha...a... Esq.

December 9. 1771. This Bill, 'Reingrossed with the Councils Amendments,
having been read and compared in the House of Representatives,
Resolved, That the same do pass. By Order of the House. Hog... Crane Speaker

JA985

EXHIBIT E

New Jersey State Constitution of 1776

[original]



Constitution of New Jersey.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA987

*[struck-through heading]*

1.

# Constitution of New Jersey.

Whereas all the constitutional Authority, ever possessed by the Kings of Great Britain over these Colonies, or their other Dominions, was, by Compact, derived from the People, and held of them for the common Interest of the whole Society, Allegiance and Protection are, in the Nature of Things, reciprocal Ties, each equally depending upon the other, and liable to be dissolved by the others being refused or withdrawn. And whereas George the Third, King of Great Britain, has refused Protection to the good People of these Colonies; and, by assenting to sundry Acts of the British Parliament, attempted to subject them to the absolute Dominion of that Body; and has also made War upon them in the most cruel and unnatural Manner, for no other Cause than asserting their just Rights, all civil Authority under him is necessarily at an End, and a Dissolution of Government in each Colony has consequently taken Place:

And Whereas in the present deplorable Situation of these Colonies, exposed to the Fury of a cruel and relentless Enemy, some Form of Government is absolutely necessary, not only for the Preservation of good Order, but also the more effectually to unite the People, and enable them to exert their whole Force in their own necessary Defence; and as the Honourable the Continental Congress, the Supreme Council of the American Colonies, have advised such of the Colonies, as have not yet gone into the

2.

Measures to adopt for themselves respectively such Governments, as shall best conduce to their own Happiness & Safety, and the well-Being of America in general; We the Representatives of the Colony of New Jersey, having been elected by all the Counties in the freest Manner, and in Congress assembled, have, after mature Deliberation, agreed upon a Set of Charter Rights, and the Form of a Constitution in Manner following, viz.

1. That the Government of this Province shall be vested in a Governor, Legislative Council, and General Assembly.—

2. *[struck through]* That the ~~first Election~~ for Members of the Council shall be held ~~...~~ at the several Districts, on the first ~~Tuesday~~ of August next; and that the said Council & Assembly ~~so to be chosen~~ shall continue for ~~a year~~.

2d. That the said Legislative Council and Assembly shall be chosen, for the first Time, on the second Tuesday of August next; the Members thereof shall be the same in Number & Qualification ~~...~~ herein after mentioned; and shall be and remain vested with all the Powers and Authority to be held by any future Legislative Council & Assembly of this Colony, until the second Tuesday in October, which will be in the Year of our Lord one thousand seven hundred and seventy seven.—

3d. That on the said second Tuesday in October yearly & every Year *[struck through lines]* the Counties shall severally choose one Person to be a Member of the Legislative Council of this Colony, who shall be & have been for one whole Year next before the Election an Inhabitant and Freeholder in the County in which he is chosen, and worth at least one thousand Pounds Proclamation Money

3.

of real and personal State within the same County: that, at the
same time, each County shall also choose three Members of Assembly;
provided, that no Person shall be entitled to a seat in the said
Assembly, unless he be and have been for one whole Year resident
before the Election, an Inhabitant of the County he is to represent,
and worth five hundred Pounds Proclamation Money in real of
personal State in the same County: that, on the second Tuesday
next after the Day of Election, the Council of Assembly shall
separately meet; and that the Consent of both Houses shall be
necessary to every Law, provided, that seven shall be a Quorum
of the Council for doing Business; and that no Law shall pass,
unless there be a Majority of all the Representatives of each
Body personally present and agreeing thereto.— Provided
always, that if a Majority of the Representatives of this Province
in Council & General Assembly convened shall, at any Time or
Times hereafter, judge it equitable & proper to add to or
diminish the Number or Proportion of the Members of the
Assembly for any County or Counties in this Colony; then & in
such Case the same may, on the Principles of more equal
Representation, be lawfully done; any thing in this Charter to
the Contrary notwithstanding; so that the whole Number of
Representatives in Assembly shall not at any Time be less
than thirty nine.—

4. That all Inhabitants of this Colony of full Age, who are worth
Fifty Pounds proclamation Money clear State in the same, &
have resided within the County in which they claim a Vote for twelve
Months immediately preceding the Election, shall be entitled
to vote for Representatives in Council & Assembly; and also
for all other publick Officers that shall be elected by the People
of the County at Large.—

4.

5thly That the Assembly, when met, shall have Power to chuse a Speaker, and other their Officers; to be Judge of the Qualifications of Electors of their own Members; sit upon their own Adjournments; prepare Bills to be passed into Laws, and to empower their Speaker to convene them, whenever any extraordinary Occurrence shall render it necessary—

6thly That the Council shall also have Power to prepare Bills to pass into Laws, & have other like Powers as the Assembly, and in all Respects be a free & independent Branch of the Legislature of this Colony; save only that they shall not prepare or alter any Money-Bills, which shall be the Privilege of the Assembly; that the Council shall from Time to Time be convened by the Governor or Vice-President, but must be convened at all Times when the Assembly sits; for which Purpose the Speaker of the House of Assembly shall always immediately after an Adjournment give Notice to the Governor or Vice-President of the Time & Place to which the House is adjourned.—

7. That the Council & Assembly jointly at their first Meeting, after each annual Election, shall, by a Majority of Votes, elect some fit Person within the Colony to be a Governor for one Year, who shall be constant President of the Council, and have a casting Vote in their Proceedings; and that the Council themselves shall chuse a Vice-President, who shall act as such in the Absence of the Governor.—

8. That the Governor, or, in his Absence, the Vice-President of the Council shall have the Supreme executive Power, be Chancellor of the Colony, and act as Captain-General, & Commander in Chief of all the Militia, & other military Force in this Colony; and that any three or more of the Council

JA991

5.

shall at all Times be a Privy Council to advise the Governor in all Cases, where he may find it necessary to consult them, of that the Governor be Ordinary or Surrogate-General—

9. That the Governor & Council (seven whereof shall be a Quorum) be the Court of Appeals in the last Resort in all Causes of Law as heretofore; and that they possess the Power of granting Pardons to Criminals after Condemnation in all Cases of Treason, Felony, or other Offences—

10. That Captains, & all other inferior Officers of the Militia shall be chosen by the Companies in the respective Counties; but Field & General Officers by the Council & Assembly.

11. That the Council & Assembly shall have Power to make the Great Seal of this Colony, which shall be kept by the Governor, or, in his Absence, by the Vice-President of the Council, to be used by them as Occasion may require; and it shall be called the Great Seal of the Colony of New Jersey.

12. That the Judges of the Supreme Court shall continue in Office for seven Years; the Judges of the Inferior Court of Common Pleas in the several Counties, Justices of the Peace, Clerks of the Supreme Court, Clerks of the Inferior Courts of Common Pleas, & of Quarter Sessions, the Attorney-General, & Provincial Secretary shall continue in Office for five Years; and the Provincial Treasurer shall continue in Office for one Year; and that they shall be severally appointed by the Council & Assembly in Manner aforesaid, & commissioned by the Governor, or, in his Absence, by the Vice-President of the Council: provided always, That the said Officers severally shall be capable of being re-appointed at the End of the Terms severally before limited; and that any of the said Officers shall be liable to be

6. dismissed, when adjudged guilty of Misbehaviour by the Council on an Impeachment of the Assembly.

13. That the Inhabitants of each County qualified to vote as aforesaid shall, at the Time & Place of electing their Representatives, annually elect one Sheriff, and one or more Coroners; and that they may re-elect the same Person to such Office, until he shall have served three Years, but no longer; after which three Years shall elapse, before the same Person is capable of being elected again. When the Election is certified to the Governor or Vice-President, under the Hands of five Freeholders of the County, for which [they were elected, they shall be immediately commissioned to serve in their respective Offices.—

14. That the Freeholders, at their annual Town Meetings for electing other Officers, shall choose Constables for the Districts respectively; and also three or more judicious Freeholders of good Character to hear & finally determine all Appeals relative to unjust Assessments in Cases of publick Taxation; which Commissioners of Appeal shall, for that Purpose, sit at some suitable Time or Times to be by them appointed, & made known to the People by Advertisements.—

15. That the Seal of this Colony shall begin in the following Title, viz. Be it enacted by the Council & General Assembly of this Colony, & it is hereby enacted by the Authority of the same. And that all Commissions granted by the Governor or Vice-President, shall run thus, The Colony of New Jersey to A.B. &c. Greeting: [and that all Writs shall likewise run in the Name of the Colony;] and that all Indictments shall conclude in the

C9

7.  Gleaming Manner, viz. against the Peace of this Colony, the Government, and Dignity of the same.

16.  That all Criminals shall be admitted to the same Privilege of Witnesses & Counsel, as their Prosecutors now & shall be entitled to.

17.  That the Estates of such Persons, as shall destroy their own Lives, shall not, for that Offence, be forfeited; but shall descend in the same Manner as they would have done had such Persons died in a natural Way; nor shall any Article, which may occasion accidentally the Death of any one, be henceforth deemed a Deodand, or in any wise forfeited on Account of such Misfortune.—

18.  That no Person shall ever within this Colony be deprived of the inestimable Privilege of worshipping Almighty God in a Manner agreeable to the Dictates of his own Conscience; nor under any Pretence whatsoever compelled to attend any Place of Worship, contrary to his own Faith and Judgment: nor shall any Person within this Colony ever be obliged to pay Tithes, Taxes, or any other Rates, for the Purpose of building, or repairing any Church or Churches, Place or Places of Worship, or for the Maintenance of any Minister or Ministry, contrary to what he believes to be right, or has deliberately or voluntarily engaged himself to perform.—

19.  That there shall be no Establishment of any one religious Sect in this Province in Preference to another; and that no Protestant Inhabitant of this Colony shall be denied the Enjoyment of any civil Right merely on Account of his religious Principles; but that all Persons, professing a Belief in the Faith of any Protestant Sect, & who shall demean themselves peaceably under the Government as hereby established, shall be capable of being elected into any Office

8.

of Right or Trust, or being a Member of either Branch of the Legislature, shall fully & freely enjoy every Privilege & Immunity enjoyed by their other Fellow Subjects.

20. That the Legislative Department of this Colony may, as much as possible, be preserved from all suspicion of Corruption, none of the Judges of the Supreme Court, or other Court, Sheriffs, or any other Person or Persons possessed of any Post of Profit under the Government, other than Justices of the Peace, shall be entitled to a Seat in Assembly; but that, on his being elected & taking his Seat, his Office or Post shall be considered as vacant.

21. That all the Laws of this Province, contained in the Edition lately published by Mr. Allinson, shall be and remain in full Force, until altered by the Legislature of this Colony, (such only excepted as are incompatible with this Charter) and shall be, according as heretofore, regarded in all Respects by all civil Officers, & others, the good People of this Province.

22. That the Common Law of England, as well as so much of the Statute Law, as have been heretofore practised in this Colony, shall still remain in Force, until they shall be altered by a future Law of the Legislature; such Parts only excepted as are repugnant to the Rights & Privileges contained in this Charter; and that the inestimable Right of Trial by Jury shall remain confirmed, as a Part of the Law of this Colony without Repeal for ever.

23. That every Person, who shall be elected as aforesaid to be a Member of the Legislative Council or House of Assembly, shall, previous to his taking his Seat in Council or Assembly, take the following Oath or Affirmation, viz. I A.B. do solemnly declare, that, as a Member of the Legislative Council (or Assembly, as the case may be)

JA995



9 —

of the Colony of New Jersey, I will not assent to any Law, Vote, or Proceeding, which shall appear to me injurious to the public Welfare of said Colony, nor that shall annul or repeal that Part of the third Section in the Charter of this Colony, which declares that the Election of Members of the Legislative Council & Assembly shall be annual, nor that Part of the twenty second Section in said Charter respecting the Trial by Jury, nor that shall annul, repeal or alter any Clark or Clarks of the eighteenth or nineteenth Sections of the same. And any Person or Persons, who shall be elected as aforesaid, is hereby empowered to administer to the said Members the said Oath or Affirmation —

Provided always, and it is the true Intent & Meaning of this Congress, that if a Reconciliation between Great Britain & these Colonies should take Place, and the Colonies again taken under the Protection & Government of the Crown of Great Britain, this Charter shall be null & void, otherwise to remain firm and inviolable. —

In Provincial Congress, New Jersey, Burlington, July 2d 1775.

By Order of Congress,

Saml Tucker President

Entered for the Minutes

Wm Paterson Secy

Recorded in Lib: A B of Commissions folio 187, in the Secretary's Office of the State of New Jersey at the City of Burlington

Robert McElroy Depy Secy

JA996

EXHIBIT F

1771 Law "… to prevent trespassing with Guns"

[Allinson printing]

# ACTS

### OF THE

# General Assembly

#### OF THE PROVINCE OF

# NEW-JERSEY,

#### FROM THE

Surrender of the GOVERNMENT to Queen ANNE, on the 17th Day of *April*, in the Year of our Lord 1702, to the 14th Day of *January* 1776.

#### TO WHICH IS ANNEXED,

The ORDINANCE for regulating and establishing the FEES of the COURT of CHANCERY of the said Province.

#### WITH THREE ALPHABETICAL TABLES, AND AN INDEX.

---

Compiled and published under the Appointment of the GENERAL ASSEMBLY, and compared with the ORIGINAL ACTS,

## BY SAMUEL ALLINSON.

MUNICIPAL LAW is a Rule of civil Conduct prescribed by the Supreme Power in a State, commanding what is RIGHT and prohibiting what is WRONG. 1 *Black. Com.* 44.

The REASON of the Law is the LIFE of the Law. 2 *Ab. Ca. Eq.* 401.

No Freeman shall be taken or imprisoned, or be disseized of his Freehold, or Liberties or free Customs, or be outlawed, or exiled, or any otherwise destroyed, nor we will not pass upon him, nor condemn him, but by LAWFUL JUDGMENT of his Peers or by LAW OF THE LAND. We will SELL to no Man, we will not DENY or DEFER to any Man either JUSTICE or RIGHT. *Magna Charta*, Chap. XXXIX.

---

## BURLINGTON:

Printed by ISAAC COLLINS, Printer to the King, for the Province of *New-Jersey.*

### M.DCC.LXXVI.

I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA998

# A C T S

### OF THE

# General Affembly

#### OF THE PROVINCE OF

# NEW-JERSEY,

### FROM THE

Surrender of the GOVERNMENT to Queen ANNE, on the 17th Day of *April*, in the Year of our Lord 1702, to the 14th Day of *January* 1776.

#### TO WHICH IS ANNEXED,

The ORDINANCE for regulating and eſtabliſhing the FEES of the COURT of CHANCERY of the ſaid Province.

#### WITH THREE ALPHABETICAL TABLES, AND AN INDEX.

---

Compiled and publiſhed under the Appointment of the GENERAL ASSEMBLY, and compared with the ORIGINAL ACTS,

### BY SAMUEL ALLINSON.

---

MUNICIPAL LAW is a Rule of civil Conduct preſcribed by the Supreme Power in a State, commanding what is RIGHT and prohibiting what is WRONG. 1 *Black. Com.* 44.

The REASON of the Law is the LIFE of the Law. 2 *Ab. Ca. Eq.* 401.

No Freeman ſhall be taken or impriſoned, or be diſſeiſed of his Freehold, or Liberties or free Cuſtoms, or be outlawed, or exiled, or any otherwiſe deſtroyed, nor we will not paſs upon him, nor condemn him, but by LAWFUL JUDGMENT of his Peers or by LAW OF THE LAND. We will SELL to no Man, we will not DENY or DEFER to any Man either JUSTICE or RIGHT. *Magna Charta*, Chap. XXXIX.

---

## BURLINGTON:

Printed by ISAAC COLLINS, Printer to the King, for the Province of *New-Jerſey*.
M.DCC.LXXVI.

## WILLIAM FRANKLIN, Esquire, Governor.   343

# At a GENERAL ASSEMBLY held at

Burlington from the Twentieth Day of November to the Twenty-first Day of December 1771, in the Twelfth Year of the Reign of King George the Third, the following *Laws were passed.*

### SESSION THE FOURTH.

### C H A P.   DXXXIX.

*An* ACT *to continue and amend an Act, entitled, An* Act *for better settling and regulating the* Militia *of this Colony of* New-Jersey ; *for the repelling Invasions, and suppressing Insurrections and Rebellions.*\*

Passed Dec. 21, 1771.

WHEREAS the Act passed in the Nineteenth Year of the Reign of our late Sovereign Lord King *George* the Second, entitled, *An* Act *for better settling and regulating the Militia of this Colony of* New-Jersey ; *for the repelling Invasions, and suppressing Insurrections and Rebellions,* will expire at the End of this Session of Assembly ;   *Preamble.*

*Sect.* 1. BE IT ENACTED *by the Governor, Council and General Assembly, and it is hereby Enacted by the Authority of the same,* That the said Act, entitled, *An* Act *for better settling and regulating the Militia of this Colony of* New-Jersey ; *for the repelling Invasions, and suppressing Insurrections and Rebellions,*\* shall be, and hereby is continued, and every Article and Clause therein contained shall be and remain in full Force, from the Publication hereof, to the first Day of *May* which will be in the Year of our Lord One Thousand Seven Hundred and Seventy-seven, and from thence to the End of the next Session of the General Assembly of this Colony, and no longer.   *Limitation.*

2. AND WHEREAS it has been a Custom of late, in some of the Counties of this Colony, to choose the Militia Officers Constables ; for preventing the same for the Future, BE IT ENACTED *by the Authority aforesaid,* That, during the Continuance of this Act, it shall not be lawful for any Court of General Quarter-Sessions of the Peace, or for any of the Inhabitants of this Colony, at their annual Town-meetings, to appoint or choose any commissioned Officer, while in Commission, to be a Constable ; any Law, Usage or Custom to the contrary notwithstanding.   *Commissioned Officers not to be chosen Constables.*

### C H A P.   DXL.

*An* ACT *for the Preservation of* Deer *and other Game, and to prevent trespassing with Guns.*

Passed Dec. 21, 1771.

WHEREAS the Laws heretofore passed in this Colony for the Preservation of Deer and other Game, and to prevent trespassing   *Preamble.*

\* Chap. CC.

JA1000

ing with Guns, Traps and Dogs, have, by Experience, been found in-
sufficient to answer the salutary Purposes thereby intended ; Therefore,

**No Person to carry a Gun on Lands not his own, except, &c.**

*Sect.* 1. BE IT ENACTED *by the Governor, Council and General As-*
*sembly of this Colony of* New-Jersey, *and it is hereby Enacted by the Au-*
*thority of the same,* That if any Person or Persons shall presume, at
any Time after the Publication hereof, to carry any Gun on any
Lands not his own, and for which the Owner pays Taxes, or is in his
lawful Possession, unless he hath Licence or Permission in Writing from
the Owner or Owners or legal Possessor, every such Person so offending,
and convicted thereof, either upon the View of any Justice of the Peace
within this Colony, or by the Oath or Affirmation of one or more Wit-
nesses, before any Justice of the Peace of either of the Counties, Cities or
Towns-corporate of this Colony, in which the Offender or Offenders
may be taken or reside, he, she or they, shall, for every such Offence, for-
feit and pay to the Owner of the Soil, or his Tenant in Possession, the

**Penalty.**
Sum of *Forty Shillings,* with Costs of Suit ; which Forfeiture shall
and may be sued for and recovered by the Owner of the Soil, or Te-
nant in Possession, before any Justice of the Peace in this Colony, for
the Use of such Owner or Tenant in Possession.

**No Person to drive Deer or other Game, except, &c.**

2. AND BE IT ENACTED *by the Authority aforesaid,* That if any
Person shall presume, at any Time after the Publication of this Act,
to hunt or watch for Deer with a Gun, or set in any Dog or Dogs to
drive Deer, or any other Game, on any Lands not his own, and for
which the Owner or Possessor pays Taxes, or is in his lawful Possession,
unless he hath Licence or Permission in Writing from such Owner or
Owners or legal Possessor ; every such Person so offending, and being
convicted thereof in Manner aforesaid, shall, for every such Offence,
forfeit and pay to the Owner of the Soil, or Tenant in Possession, the

**Penalty.**
Sum of *Forty Shillings,* with Costs of Suit ; provided, that nothing
herein contained shall be construed to extend to prevent any Person
carrying a Gun upon the King's Highway in this Colony.

**Penalty on Non-Resi-dents.**

3. AND BE IT FURTHER ENACTED *by the Authority aforesaid,* That
if the Person or Persons offending against this Act be Non-Residents
of this Colony, he or they shall forfeit and pay for every such Offence
*Five Pounds,* and shall forfeit his or their Gun or Guns to any Person
or Persons who shall inform and prosecute the same to Effect, before
any Justice of the Peace in any County of this Colony, wherein the
Offender or Offenders may be taken or apprehended.

**Penalty for killing, &c. Deer out of Season.**

4. AND BE IT ENACTED *by the Authority aforesaid,* That if any
Person or Persons shall kill, destroy, hunt or take any Doe, Buck,
Fawn, or any Sort of Deer whatsoever, at any other Time or Season,
except only between the first Day of *September* and the first Day of
*January* yearly and every Year, he, she or they so offending, shall for-
feit and pay the Sum of *Forty Shillings* for each and every Offence ;
to be sued for, recovered and applied as hereafter is directed.

**What shall be Evidence of such Kill-ing, &c.**

5. AND, for the better and more effectual convicting of Offenders
against this Act, BE IT ENACTED *by the Authority aforesaid,* That any
and every Person or Persons in whose Custody shall be found, or who
shall

## WILLIAM FRANKLIN, Esquire, Governor. 345

shall expose to Sale, any green Deerskins, or fresh Venison killed at any Time after the first Day of *January*, and before the first Day of *September* aforesaid, and shall be thereof convicted by the Oath or Affirmation of one or more credible Witnesses, shall be deemed guilty of offending against this Act, and be subjected to the Penalties of killing Deer out of Season.

6. AND WHEREAS great Numbers of idle and disorderly Persons make a Practice of hunting on the waste and unimproved Lands in this Colony, whereby their Families are neglected, and the Publick is prejudiced by the Loss of their Labour, BE IT THEREFORE EN-ACTED *by the Authority aforesaid*, That, from and after the first Day of *January* next, no Person or Persons whatsoever (except such Persons as are by the Laws of this Colony qualified to vote for Representatives in General Assembly, in Right of their Freeholds, and their Sons being of the Age of eighteen Years or upwards, and living with their Parent or Parents, or being Freeholders) shall, on any Pretence whatever, hunt on the waste and unimproved Lands in this Colony ; and if any Person or Persons, not qualified as aforesaid, shall presume to hunt as aforesaid, he or they so offending shall forfeit and pay, for every such Offence, the Sum of *Twenty Shillings* ; to be recovered by Action of Debt, with Costs, by any Person who shall sue for the same ; to be applied one Half to the Prosecutor, and the other Half to the Use of the Poor of the Township or Precinct where the Fact was committed.

*[margin: Who may hunt on unimproved Lands.]*

*[margin: Penalty on Offenders.]*

7. AND BE IT ENACTED *by the Authority aforesaid*, That if any Person or Persons within this Colony shall set any Trap or other Device whatsoever, larger than what is usually and commonly set for Foxes and Muskrats, such Person, setting such Trap or other Device, shall pay the Sum of *Five Pounds*, and forfeit the Trap or other Device, shall suffer three Months Imprisonment, and shall also be liable to make good all Damages any Person shall sustain by setting such Trap or other Device, and the Owner of such Trap or other Device, or Person to whom it was lent, shall be esteemed the Setter thereof, unless it shall be proved, on Oath or Affirmation, what other Person set the same, or that such Trap or other Device was lost by said Owner or Person to whom it was lent, and absolutely out of his Power ; and if the Setter of the Trap or other Device be a Slave, and it be his own voluntary Act, he shall (unless the Master or Mistress shall pay the Fine) in Lieu of such Fine, be publickly whipped with thirty Lashes, and committed till the Costs are paid ; and that the said Trap or other Device shall be broken and destroyed in the View and Presence of the Justice of the Peace before whom they are brought : And if any Person or Persons shall have Possession of, or there shall be found in his or their House, any Trap or Traps, Device or Devices whatsoever, for taking of Deer, such Person or Persons shall be subjected to the same Penalty as if he or they were convicted of setting such Trap or Traps, or other Device.

*[margin: Penalty on setting Traps, &c.]*

*[margin: Penalty on a Slave setting such Trap, &c.]*

*[margin: Penalty on keeping such Trap, &c.]*

8. AND, for encouraging the Destruction of such Traps and Devices, BE IT ENACTED *by the Authority aforesaid*, That if any Person shall seize any Trap or other Device for the taking Deer, and shall carry such Trap or other Device to any Magistrate of the County where such Trap or Device was seized, such Person shall be entitled to

*[margin: Reward for seizing a Trap, &c.]*

4 Q                                                                          an

JA1002

an Order from the faid Magiftrate to the Collector of fuch County, to pay him the Sum of *Ten Shillings*, out of any Money in his Hands raifed for the Ufe of the County; which Sums fhall be allowed to fuch Collector on the Settlement of his Accounts.

**Penalty on a Smith making or mending fuch Trap, &c.**

9. AND BE IT FURTHER ENACTED *by the Authority aforefaid*, That every Smith or other Artificer, who fhall hereafter make or mend any fuch Trap or other Device aforefaid, he fhall forfeit and pay the Sum of *Forty Shillings*; and the Perfon carrying fuch Trap or other Device to the Artificer aforefaid, fhall forfeit and pay the Sum of *Twenty Shillings*.

**Penalty on bringing fuch Trap, &c. into the Colony.**

And every Perfon who fhall bring into this Colony any fuch Trap or Device as aforefaid fhall forfeit and pay the Sum of *Forty Shillings*. And if the Perfon who fhall carry the fame to the Smith or Artificer fhall be fo poor as that he fhall not be able to pay the Forfeiture aforefaid, he fhall be committed to the common Gaol, until he fhall prove who is Owner of fuch Trap or Device, or who delivered the fame to him; and in fuch Cafe the Forfeiture aforefaid fhall be levied on the Goods, or in Failure of Goods, on the Body of the Owner of fuch Trap or Device, or the Perfon who delivered the fame to the Pauper, and the Trap or Device fhall be forfeited and deftroyed.

**Penalty for fetting loaded Guns.**

10. AND WHEREAS a moft dangerous Method of fetting Guns has too much prevailed in this Province, BE IT ENACTED *by the Authority aforefaid*, That if any Perfon or Perfons within this Colony fhall prefume to fet any loaded Gun in fuch Manner as that the fame fhall be intended to go off or difcharge itfelf, or be difcharged by any String, Rope, or other Contrivance, fuch Perfon or Perfons fhall forfeit and pay the Sum of *Six Pounds*; and on Non-payment thereof fhall be committed to the common Gaol of the County for fix Months.

**Application of Penalties.**

11. AND BE IT FURTHER ENACTED *by the Authority aforefaid*, That the Fines and Forfeitures in this Act expreffed, and not particularly appropriated, fhall be paid, one Half to the Profecutor, and the other Half to and for the Ufe of the Poor of the Town, Precinct or Diftrict, where the Offence is committed;

**Jurifdiction given to one Magiftrate.**

and that the Execution of this Act, and every Part thereof, fhall be within the Cognizance and Jurifdiction of any one Magiftrate or Juftice of the Peace, without any Reference to the Act for Trial of fmall Caufes in this Colony.

**This Act not to affect Parks.**

12. AND BE IT ENACTED, That nothing in this Law fhall be conftrued to extend to reftrain the Owners of Parks, or of tame Deer, from killing, hunting or driving their own Deer.

**Penalty on Magiftrate neglecting his Duty.**

13. AND BE IT ALSO ENACTED *by the Authority aforefaid*, That if any Juftice of the Peace or other Magiftrate, within this Province, fhall have Information of any Perfons offending againft this Act, in killing Deer out of Seafon, fetting and making Traps, Non-Refidents killing Deer, and Perfons fetting of Guns, and fhall not profecute the fame to Effect within two Months after fuch Information, he fhall forfeit and pay the Sum or Sums to which the Offender againft this Act would have been liable.

14. AND

# WILLIAM FRANKLIN, Esquire, Governor. 347

14. AND BE IT ENACTED *by the Authority aforesaid*, That the Justices at every Quarter-Sessions of the Peace shall cause this Act to be publickly read; and give in Charge to the Grand-Jury to particularly inquire and present all Persons for killing Deer out of Season, setting or making Traps, and all Non-Residents killing, destroying, hunting and taking any Sort of Deer, and all Persons setting of Guns; and, upon Conviction for either of the said Offences, the said Justices shall set and impose the Fines and Penalties herein before-mentioned, with Costs of Suit.

*This Act to be published and executed.*

15. AND BE IT ENACTED *by the Authority aforesaid*, That if any Person or Persons whatsoever, whether the Accused or Accuser, Plaintiff or Defendant, shall think themselves aggrieved by any of the Judgments given by the said Justices or other Magistrates, for any Suit commenced by Virtue of this Act; then it shall and may be lawful for such Person or Persons to appeal, on giving sufficient Security for the Forfeitures and Costs, to the next Court of General Quarter-Sessions, held for such County where such Judgment shall be given; which Court is hereby empowered to hear and determine all and every such Appeal or Appeals.

*Appeal given to next Sessions.*

16. AND BE IT ENACTED *by the Authority aforesaid*, That if any Person or Persons, within this Colony, shall, after the Publication of this Act, watch with a Gun, on any uninclosed Land within two Hundred Yards of any Road or Path, in the Night Time, whether the said Road is laid out by Law or not, or shall stand or station him or themselves upon or within two Hundred Yards of any Road as aforesaid, for shooting at Deer driven by Dogs, he or they so offending, shall, on Conviction, forfeit and pay the Sum of *Five Pounds* for every such Offence; to be recovered by Action of Debt, or Presentment of the Grand-Jury as aforesaid, and pay all Damages.

*Penalty for watching in the Night near a Road.*

17. PROVIDED ALWAYS, That the sixth Section of this Act shall not be construed to affect any Native *Indian*; and that nothing in this Act shall be construed to prevent the Inhabitants of *Essex*, *Bergen*, *Morris* and *Sussex*, from making, having in their Houses, or setting Traps of five Pounds Weight or more for Bears, Wolves, Foxes, or any other wild Beasts, Deer only excepted.

*Not to affect Indians, nor Essex, Bergen, Morris or Sussex.*

18. AND BE IT FURTHER ENACTED *by the Authority aforesaid*, That all former Laws made in this Colony for the Preservation of Deer and other Game, and to prevent trespassing with Guns, and regulating the Size of Traps, shall be, and they are hereby repealed.

*Repeal of Former Laws.*

## C H A P.   DXLI.

*An* ACT *declaring the River* Delaware *a common* Highway, *and for improving the* Navigation *in the said River*.

Passed Dec. 21, 1771.

WHEREAS the improving the Navigation in Rivers is of great Importance to Trade and Commerce; AND WHEREAS the River *Delaware*

*Preamble.*

EXHIBIT G

1753 newspaper extract

[as published in 1897]

# DOCUMENTS

RELATING TO THE

# COLONIAL HISTORY

OF THE

# STATE OF NEW JERSEY.

EDITED BY

WILLIAM NELSON.

## VOLUME XIX.

I. SOME ACCOUNT OF EARLY AMERICAN NEWSPAPERS,
AND LIBRARIES IN WHICH THEY MAY BE FOUND.
PART III.—MICHIGAN–NEW-HAMPSHIRE.

II. EXTRACTS FROM AMERICAN NEWSPAPERS, RELATING
TO NEW JERSEY.

## VOL. III. 1751–1755.

PATERSON, N. J.:
THE PRESS PRINTING AND PUBLISHING CO., 269 MAIN ST.
1897.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives          Joseph R. Klett
P.O. Box 307                       Executive Director
225 West State St.                 N. J. State Archives
Trenton, N.J. 08625

JA1006

Case 1:22-cv-07464-RMB-AMD   Document 76-7   Filed 02/13/23   Page 3 of 3 PageID: 1130

ly have perish'd in the Flames.—*The Pennsylvania Gazette, March* 20, 1753. *No.* 1265.

Last Wednesday, Capt. Jones of this Port, arrived at Sandy Hook, in 18 Days from the Bay of Honduras, and came up here on Saturday.—*The Pennsylvania Gazette, March* 20, 1753. *No.* 1265.

New York, March 19.

By an Act lately passed in New Jersey, any Person seeing another carry a Gun over any inclosed Land, not his own, by Information against him, obliges him to pay Five Pounds, and be bound over to his good Behaviour, one Half to the Informer; and in case of Failure, to be dealt with at the Justice's Discretion: In Consequence of this Act, we hear, a few Weeks ago, a poor Fellow, in East New Jersey, was taken in the Fact, and brought to a Justice: The Justice accordingly was obliged to give Judgment; but the poor Fellow, Gun and all, not being worth Half the Money, the Justice was at a Stand what to do; at last determined him a Whipping of 30 Lashes, and as the Informer was entitled to one Half the Fine, very judiciously ordered him to receive one Half the Lashes.—*The Pennsylvania Gazette, March* 27, 1753. *No.* 1266.

We hear from Great-Egg-Harbour, that about a Fortnight ago, a French Sloop, bound to Cape Breton, from Cape Francois, was lost on Absecom Bar, in a violent North-east Storm; and that the people were all drown'd but two: And the Cargo, which consisted of Indigo, Sugar and Rum, was intirely lost —

# EXHIBIT H

## 1846 Law Revision "… to prevent trespassing with Guns"

[original enrolled law]

Senate. No 1.

Revision

An Act for the
preservation of deer,
and other Game, and
to prevent trespassing
with Guns.

I certify that this bill
Originated in the Senate

Dan Dodd
Sec. of the Senate

Comp. Sep 5. 106



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

Joseph R. Kler

Address;
New Jersey State Archives        Joseph R. Klett
P.O. Box 307                     Executive Director
225 West State St.               N. J. State Archives
Trenton, N.J. 08625

JA1009

Senate. No 1.

Revision

An Act for the
preservation of Deer,
and other Game, and
to prevent trespassing
with Guns.

I certify that this bill
originated in the Senate

Dan'l Dodd
Sec. of the Senate

Comp'd May 5 /96



State of New Jersey.

An Act for the preservation of Deer, and other Game, and to prevent trespassing with Guns.

1.  Be It Enacted by the Senate and General Assembly of the State of New Jersey, That if any person or persons shall carry any gun on any lands not his own, and for which the owner pays taxes, or is in his lawful possession, unless he hath license or permission in writing

Apr 1846

2

from the owner or owners, or
legal possessor, every such per=
son so offending, and convicted
thereof, either upon the view of
any justice of the peace within
this state, or by the oath or af=
firmation of one or more witness=
es, before any justice of the
peace of either of the counties,
cities, or towns corporate of this
State, in which the offender or
offenders may be taken or reside,
he, or they, shall, for every such
offence forfeit and pay to the
owner of the Soil or his tenant
in possession, the Sum of five
dollars, with costs of suit; which
forfeiture shall and may be sued
for and recovered by the owner of

3

the soil, a tenant in possession be=
fore any justice of the peace, in this
State, for the use of such owner or
tenant in possession.

2. And be it enacted, That if any
person shall hunt, or watch for
deer with a gun, or set in any dog
or dogs to drive deer, or any other
game, on any lands not his own,
and for which the owner or possessor
pays taxes, or is in his lawful pos=
session, unless he hath license or
permission in writing from such owner
or owners or legal possessor; every
such person so offending, and being
convicted thereof in manner aforesaid,
shall, for every such offence for=
feit and pay to the owner of the

4

Soil, or tennant in possession, the
sum of five dollars, with costs
of suit; provided, that nothing here=
in contained shall be construed
to extend to prevent any person
carrying a gun upon the high=
way in this State.

3.   And be it enacted, That if
the person or persons offending again=
st this act be non-residents of
this State, he or they shall for=
feit and pay for every such offence
fifteen dollars, and shall forfeit
his or their gun or guns to any per=
son or persons who shall inform
and prosecute the same to effect,
before any justice of the peace in any

5.

county of this State, wherein the
Offender or Offenders may be taken
or apprehended.

————————

11. And, for the better and more
effectual conviction of Offenders
against this act, be it enacted,
That any and every person or per=
sons in whose custody shall be
found, or who shall expose to Sale,
any green deer-Skins, or fresh Venison,
killed at any time after the first
day of January, and before the first
day of September aforesaid, and Shall
be thereof convicted by the oath or
affirmation of one or more credible
witnesses, Shall be deemed guilty
of offending against this act, and

6

be subjected to the penalties of
killing deer out of season.

5. And be it enacted, That if any
person or persons, within this State,
shall set any trap or other
device whatsoever, larger than
what is usually and commonly
set for foxes and muskrats, such
person, setting such trap or oth-
er device, shall pay the sum
of fifteen dollars, and forfeit
the trap or other device, and
shall also be liable to make
goods all damages any person
shall sustain by setting such
trap or other device, and the
owner of such trap or other

device, or person to whom it
was lent, shall be esteemed the
setter thereof, unless it shall
be proved on oath or affirma-
-tion, what other person set
the same, or that such trap
or other device was lost by said
owner or person, to whom it was
lent, and absolutely out of his
power; and that the said trap
or other device shall be broken
and destroyed in the view
and presence of the justice of
the peace, before whom they
are brought.

6. And be it enacted, That if
any person or persons, within

this state shall set any loaded gun in such manner, as that the same shall be intended to go off or discharge itself, or be discharged by any string, rope, or other contrivance, such person or persons shall forfeit and pay the sum of twenty dollars to be recovered by action of debt by any person who shall sue for the same, and, on non-payment thereof, shall be com-mitted to the common goal of the county, for six months.

7. And be it enacted, That nothing in this law shall be construed to ex-tend to restrain the owners of parks, or of tame deer, from killing, hunting

9

or driving their own deer.

8. And be it enacted, That if any person or persons within this state shall watch with a gun on any uninclosed land within two hundred yards of any road or path, in the night-time, whether the said road is laid out by law or not or shall stand or station him or themselves upon or within two hundred yards of any road as aforesaid, for shooting at deer driven by dogs, he or they so offending, shall, on conviction, forfeit and pay the sum of fifteen dollars, for every such offence; to be recovered by action of debt as aforesaid and pay all damages.

15.10

9. And be it enacted, That if any person or persons shall kill, destroy, hunt, or take any doe, buck, fawn, or any sorts of deer whatsoever, at any other time or season, except only between the last day of August and the second day of January, year-ly and every year, he, she, or they, so offending, shall forfeit and pay the sum of twenty dollars, for each and every such offence, to be sued for and recovered with costs of suit, in an action of debt, by any person, before any justice of the peace of the county wherein such offence

JA1020

16 11

shall have been committed, one half of the forfeit money shall be for the benefit of the person prosecuting for the same, and the remainder paid to the collector of the township, wherein the offence shall have been committed, for the use of the township.

10. And be it enacted, That if any person or persons shall kill, destroy or take any partridge, moor= fowl, grouse, quail or rabbit, ex= cept only between the first day of November and the tenth day of January, yearly and every year, or any woodcock, except only between

17½

the fifth day of July and the
first of January, yearly and every
year, he, she, or they so offending,
shall forfeit and pay, for every
partridge, moorfowl, grouse, quail,
rabbit or woodcock, one dollar
for each and every offence, to be
sued for and recovered in an action
of debt, with costs of suit, by any
person who shall sue for the same;
and any person in whose hands
or custody any partridge, moorfowl,
grouse, quail, rabbit or woodcock
shall be found, that shall have
been killed contrary to the provis=
sions of this act, shall be deemed,
taken, and adjudged to be the
killer and destroyer of such game,
and liable to the penalties aforesaid,

18

provided nevertheless, that no such per-
son or persons shall be prohibited
from gunning on his or their own
land.

_____

11.   And be it enacted, That if
any person or persons not resident
in this state, shall offend against
any of the provisions of the first
section of this act, it shall and
may be lawful for the owner or
owners of the said lands, or the
possessor or possessors thereof, to
apprehend any and every such
person or persons so offending, and
take him or them before a magis-
trate as soon as conveniently may
be, in order that he or they may be

19

14

dealt with according to law, and
every such person who may perform
this service, shall be entitled to
the same assistance and protec=
tion, and subject to the same
restrictions and liabilities, as a
constable would be on the same
occasion.

———————————

In Senate April
    16th __ 1846. This
Bill having been three
times read and compa-
red in the Senate.
    Resolved that the
same do pass.
    By order of Senate,
        J.C.Smallwood
        President of
        the Senate

House of Assembly
    April 9th 1846. This
Bill having been three
times read in the House
of Assembly. Resolved
that the same do pass.
    By order of the
    House of Assembly.

    Lewis Howell
    Speaker of the
    House of Assem

Approved April 16th 1846
        Charles C. Stratton

# EXHIBIT I

# 1846 Law Revision "… to prevent trespassing with Guns"

## [as printed in Revised Statutes of 1847]

# STATUTES

OF THE

# STATE OF NEW JERSEY.

REVISED AND PUBLISHED

## Under the authority of the Legislature.



## TRENTON:

PRINTED BY PHILLIPS & BOSWELL.

1847.

I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA1027

TITLE II.
CHAP. 3.

ered or brought down shall not be less than twenty-five cents on the first dog or bitch, and not less than fifty cents on a second one kept by the same person; and the said tax to be levied, collected, and applied as is directed in this act.

Marking re-
gulated.

11. *And be it enacted*, That from and after the passing of this act, no person or persons within this state shall put, or cause to be put, any artificial mark, by cutting off, or what is more usually termed cropping, both the ears of any sheep or cattle, nor shall they cut or crop either ear more than one inch from the tip end thereof, nor shall cut or half-crop both the ears of any sheep or cattle, nor on either ear more than one inch from the tip end as aforesaid, nor shall he or they have or keep in his or their possession any sheep or cattle, which they shall claim as their own, marked contrary to this act, unless they were so marked before the passing of this act, except they shall make it appear they were bought in market or of a stranger.

Penalty for
illegal mark-
ing.

12. *And be it enacted*, That any person or persons offending against the eleventh section of this act, on conviction thereof shall forfeit and pay two dollars, by the head, for all such sheep and cattle so by them marked or kept in their possession, to be recovered in an action of debt, with costs of suit, in any court having cognizance thereof, one moiety to the overseers of the poor, for the use of the poor of the township where the offence shall have been committed, and the other moiety to the use of the person who shall prosecute the same to effect.

# CHAPTER 3.

### PRESERVATION OF GAME, ETC.

| | |
|---|---|
| 1. Carrying guns, where prohibited. | 7. Owners excepted. |
| 2. Hunting deer, where prohibited. | 8. Watching with guns at night, where prohibited. |
| 3. If non-residents, what forfeiture. | |
| 4. Who deemed guilty. | 9. Season for killing deer. |
| 5. What traps prohibited. | 10. Season for other game. |
| 6. Setting loaded guns prohibited. | 11. Remedy against non-residents. |

REV. 25, 673.
1836-7.
PAMPH. 460.
1837-8.
PAMPH. 216.

An Act for the preservation of deer and other game, and to prevent trespassing with guns.

Revision.—Approved April 16, 1846.

Carrying
guns, where
prohibited.

1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey*, That if any person or persons shall carry any

gun on any lands not his own, and for which the owner pays taxes, TITLE II. or is in his lawful possession, unless he hath license or permission CHAP. 3. in writing from the owner or owners or legal possessor, every such person so offending, and convicted thereof, either upon the view of any justice of the peace within this state, or by the oath or affirmation of one or more witnesses, before any justice of the peace of either of the counties, cities, or towns corporate of this state, in which the offender or offenders may be taken or reside, he or they shall, for every such offence, forfeit and pay to the owner of the soil or his tenant in possession the sum of five dollars, with costs of Forfeiture suit; which forfeiture shall and may be sued for and recovered by the owner of the soil or tenant in possession before any justice of the peace in this state, for the use of such owner or tenant in possession.

2. *And be it enacted,* That if any person shall hunt or watch for Hunting deer with a gun, or set in any dog or dogs to drive deer or any prohibited. other game, on any lands not his own, and for which the owner or possessor pays taxes, or is in his lawful possession, unless he hath license or permission in writing from such owner or owners or legal possessor, every such person so offending, and being convicted thereof in manner aforesaid, shall for every such offence forfeit and pay to the owner of the soil or tenant in possession the sum of five Forfeiture. dollars, with costs of suit; *provided,* that nothing herein contained shall be construed to extend to prevent any person carrying a gun upon the highway in this state.

3. *And be it enacted,* That if the person or persons offending Forfeiture, if against this act be non-residents of this state, he or they shall forfeit non-resident. and pay for every such offence fifteen dollars, and shall forfeit his or their gun or guns to any person or persons who shall inform and prosecute the same to effect, before any justice of the peace in any county of this state, wherein the offender or offenders may be taken or apprehended.

4. *And,* for the better and more effectual conviction of offend- Who deemers against this act, *be it enacted,* That any and every person or ed guilty. persons in whose custody shall be found, or who shall expose to sale, any green deer-skins or fresh venison killed at any time after the first day of January, and before the first day of September aforesaid, and shall be thereof convicted by the oath or affirmation of one or more credible witnesses, shall be deemed guilty of offending against this act, and be subjected to the penalties of killing deer out of season.

5. *And be it enacted,* That if any person or persons within this What traps state shall set any trap, or other device whatsoever, larger than prohibited.

B

14                              A N I M A L S.

Forfeiture.

what is usually and commonly set for foxes and muskrats, such person setting such trap or other device shall pay the sum of fifteen dollars, and forfeit the trap or other device, and shall also be liable to make good all damages any person shall sustain by setting such trap or other device; and the owner of such trap or other device, or person to whom it was lent, shall be esteemed the setter thereof, unless it shall be proved on oath or affirmation what other person set the same, or that such trap or other device was lost by said owner or person to whom it was lent, and absolutely out of his power; and that the said trap or other device shall be broken and destroyed in the view and presence of the justice of the peace before whom they are brought.

Setting load-
ed guns pro-
hibited.

6. *And be it enacted,* That if any person or persons within this state shall set any loaded gun in such manner as that the same shall be intended to go off or discharge itself, or be discharged by any string, rope, or other contrivance, such person or persons shall forfeit and pay the sum of twenty dollars, to be recovered by action of debt by any person who shall sue for the same, and on non-payment thereof, shall be committed to the common jail of the county for six months.

Owners ex-
cepted.

7. *And be it enacted,* That nothing in this law shall be construed to extend to restrain the owners of parks or of tame deer from killing, hunting, or driving their own deer.

Watching
with guns at
night, where
prohibited.

8. *And be it enacted,* That if any person or persons within this state shall watch with a gun on any unenclosed land within two hundred yards of any road or path, in the night-time, whether the said road is laid out by law or not, or shall stand or station him or themselves upon or within two hundred yards of any road as aforesaid, for shooting at deer driven by dogs, he or they so offending

Forfeiture.

shall on conviction forfeit and pay the sum of fifteen dollars for every such offence, to be recovered by action of debt as aforesaid, and pay all damages.

Season for
killing deer.

9. *And be it enacted,* That if any person or persons shall kill, destroy, hunt, or take any doe, buck, fawn, or any sort of deer whatsoever, at any other time or season, except only between the last day of August and the second day of January, yearly and every

Forfeiture.

year, he, she, or they so offending shall forfeit and pay the sum of twenty dollars for each and every such offence, to be sued for and recovered with costs of suit, in an action of debt, by any person, before any justice of the peace of the county wherein such offence shall have been committed; one half of the forfeit money shall be for the benefit of the person prosecuting for the same, and the

JA1030

ANIMALS. 15

remainder paid to the collector of the township wherein the offence shall have been committed, for the use of the township.

10. *And be it enacted*, That if any person or persons shall kill, destroy, or take any partridge, moorfowl, grouse, quail, or rabbit, except only between the first day of November and the tenth day of January, yearly and every year, or any woodcock, except only between the fifth day of July and the first of January, yearly and every year, he, she, or they so offending shall forfeit and pay, for every partridge, moorfowl, grouse, quail, rabbit, or woodcock, one dollar for each and every offence, to be sued for and recovered in an action of debt with costs of suit, by any person who shall sue for the same; and any person in whose hands or custody any partridge, moorfowl, grouse, quail, rabbit, or woodcock shall be found, that shall have been killed contrary to the provisions of this act, shall be deemed, taken, and adjudged to be the killer and destroyer of such game, and liable to the penalties aforesaid; *provided nevertheless*, that no such person or persons shall be prohibited from gunning on his or their own land.

*[Season for killing other game.]*

*[Forfeiture.]*

*[Proviso.]*

11. *And be it enacted*, That if any person or persons not resident in this state shall offend against any of the provisions of the first section of this act, it shall and may be lawful for the owner or owners of the said lands, or the possessor or possessors thereof, to apprehend any and every such person or persons so offending, and take him or them before a magistrate as soon as conveniently may be, in order that he or they may be dealt with according to law; and every such person who may perform this service shall be entitled to the same assistance and protection, and subject to the same restrictions and liabilities, as a constable would be on the same occasion.

*[Remedy against non-residents.]*

# CHAPTER 4.

PRESERVATION OF MUSKRATS.

1. When muskrats not to be killed.  |  2. Penalty for illegal killing.

### An Act for the preservation of muskrat fur.

*[HAR. 198.]*

Passed January 21, 1829.

1. BE IT ENACTED *by the Council and General Assembly of this state, and it is hereby enacted by the authority of the same,* That it *[When muskrats may not be killed.]*

JA1031

# EXHIBIT J

# 1852 Supplement

## [as printed]

# ACTS

OF THE

## SEVENTY-SIXTH LEGISLATURE

OF THE

# STATE OF NEW JERSEY,

AND

### EIGHTH SESSION UNDER THE NEW CONSTITUTION.



SOMERVILLE:

PRINTED BY DONALDSON & BROKAW.

———

1852.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA1033

38

ensack, and for other purposes therein mentioned," passed November twenty-fourth, seventeen hundred and ninety; and the contract and agreement for building said bridges, entered into in pursuance of said act, bearing date the seventeenth day of February, seventeen hundred and ninety-three, but the same shall be and remain of the same force and effect as if this act had not been passed.

Public act.    5. *And be it enacted,* That this act shall be deemed and taken as a public act, and shall go into effect immediately.

Approved February 13, 1852.

---

## CHAPTER XVIII.

Supplement to the act entitled, "An act for the preservation of deer and other game, and to prevent trespassing with guns," approved April sixteenth, eighteen hundred and forty-six.

Decoys, &c., how placed.    1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey,* That it shall not be lawful for any person, hunting or gunning after geese, ducks, brant, and for that purpose using stools or decoy geese, ducks, or brant, to place the boat, sneak-box, or other floating vessel in which he lies in wait to kill the said geese, ducks, and brant, at a distance more than three rods from ice, or from marsh, or meadow bank, or heaped sea-weed, or sand-bar not covered with water at ordinary high tide.

Lights not to be used in hunting.    2. *And be it enacted,* That it shall not be lawful for any person, with intent to capture or kill geese, ducks, or brant, in and about the waters aforesaid, to hunt after or pursue them with a light at night.

Penalty.    3. *And be it enacted,* That every person offending against the provisions of this act shall, for each offence, forfeit and pay the sum of fifteen dollars, to be sued for and recovered, with costs, in an action of debt before any jus-

Case 1:22-cv-07464-RMB-AMD   Document 76-10   Filed 02/13/23   Page 4 of 4 PageID: 1158

tice of the peace in this state, by any person who shall sue for the same.

4. *And be it enacted,* That this act shall take effect immediately.

Approved February 14, 1852.

---

## CHAPTER XIX.

An act to incorporate the Good Intent Hose Company of Mount Holly.

1. Be it enacted *by the Senate and General Assembly of the State of New Jersey,* That Joseph Gale, James D. Boling, Samuel Carr, George White, Theodore Collins, David W. Carr, and all persons, not exceeding fifty in number, as now are or hereafter shall become associates of the Good Intent Hose Company of Mount Holly, be, and they are hereby constituted and declared to be a body corporate and politic, in fact and in law, by the name of "the Good Intent Hose Company of Mount Holly." *Names of corporators.*

2. *And be it enacted,* That the capital stock of said company shall not exceed the sum of four thousand dollars, which shall be solely and exclusively applied to procuring, maintaining, and repairing such hose carriage, hose, reservoirs of water, ladders, buckets, fire hooks, hose houses, and other implements and machines, and to such other incidental expenses as shall to the said company appear best calculated to secure the property of their fellow citizens from injury or destruction by fire. *Amount of capital stock.*

3. *And be it enacted,* That the said company shall have power to elect annually, or oftener if necessary, a president out of their own body, and such other officers and assistants as they shall deem necessary for conducting their affairs, according to their constitution and by-laws; and that the said president shall keep in his custody the common seal of the said company, and, at the expiration of his term *Election of officers.*

JA1035

# EXHIBIT K

## First 1859 Supplement

## [as printed]

# ACTS

OF THE

## EIGHTY-THIRD LEGISLATURE

OF THE

# STATE OF NEW JERSEY,

AND

#### FIFTEENTH UNDER THE NEW CONSTITUTION.



FREEHOLD, N. J.:

PRINTED BY TUNIS & STOUT.

. . . .

1859.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives          **Joseph R. Klett**
P.O. Box 307                       Executive Director
225 West State St.                 N. J. State Archives
Trenton, N.J. 08625

JA1037

Case 1:22-cv-07464-RMB-AMD   Document 76-11   Filed 02/13/23   Page 3 of 3 PageID: 1161

636          LAWS OF NEW JERSEY.

2. *And be it enacted,* That this act shall go into effect immediately.

Approved March 23, 1859.

—————

## CHAPTER CCXXII.

A SUPPLEMENT to the act entitled "An act for the preservation of deer and other game, and to prevent trespassing with guns," approved April sixteenth, eighteen hundred and forty-six.

**Game not to be killed after certain times.**
1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey,* That from and after the passage of this act, it shall not be lawful for any person or persons to kill, capture or hunt in or about the waters of Barnegat bay, or Mannasquan river, any geese, brant, or ducks at night, that is to say, after sunset or before daylight, nor shall it be lawful at any time to kill, capture or hunt any geese, brant, or ducks in or about the waters aforesaid, except only between the fifteenth day of October and the fifteenth day of April, yearly and every year hereafter.

**Former acts repealed.**
2. *And be it enacted,* That all acts and parts of acts heretofore passed, conflicting with this act, be and the same are hereby repealed.

Approved March 23, 1859.

JA1038

# EXHIBIT L

# Second 1859 Supplement

# [as printed]

# ACTS

OF THE

## EIGHTY-THIRD LEGISLATURE

OF THE

# STATE OF NEW JERSEY,

AND

FIFTEENTH UNDER THE NEW CONSTITUTION.



FREEHOLD, N. J.:

PRINTED BY TUNIS & STOUT.

. . . .

1859.



I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA1040

Case 1:22-cv-07464-RMB-AMD Document 76-12 Filed 02/13/23 Page 3 of 4 PageID: 1164

the laws of eighteen hundred and fifty-eight, now on file in the office of the secretary of state.

6. *And be it enacted*, That before the treasurer shall pay for the printing hereby directed, the secretary of state shall audit the bills and certify to him in writing that the work has been executed in all respects as herein directed. <span style="float:right">Bills to be audited.</span>

7. *And be it enacted*, That this act shall take effect immediately.

Approved March 16, 1859.

----

# CHAPTER CLXII.

A SUPPLEMENT to the act entitled "An act for the preservation of deer and other game, and to prevent trespassing with guns," approved April sixteenth, eighteen hundred and forty-six.

1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey*, That hereafter if any person or persons shall kill, destroy, or take any partridge, moor-fowl, grouse, quail or rabbit, except only between the first day of November and the first day of January yearly and every year, or any woodcock, except only between the first day of September and the first day of January, yearly and every year, he, she, or they, so offending, shall forfeit and pay for every partridge, moor-fowl, grouse, quail, rabbit, or woodcock, the sum of five dollars, for each and every offence, to be sued for and recovered in an action of debt, <span style="float:right">Penalty for killing game at certain times.</span>

30

JA1041

with costs of suit, by any person who shall sue for the same, and on non-payment thereof shall be committed to the common jail of the county, for any period not exceeding sixty days, and until the fine and costs are paid; and any person in whose hands or custody any partridge, moor-fowl, grouse, quail, rabbit, or woodcock shall be found, that shall have been killed contrary to the provisions of this act, shall be deemed, taken and adjudged to be the killer and destroyer of said game, and liable to the penalties aforesaid.

2. *And be it enacted*, That this act shall take effect immediately.

Approved March 16, 1859.

---

## CHAPTER CLXIII.

An Act to incorporate the Long-a-Coming, May's Landing and Tuckerton Turnpike Company.

Commissioners to receive subscriptions.

1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey*, That all such persons as shall become subscribers to the capital stock hereinafter mentioned, their successors and assigns, shall be and they are hereby ordained, constituted, and made a body politic and corporate, in fact and in law, by the name of "The Long-a-Coming, May's Landing and Tuckerton Turnpike Company," and that Andrew K. Hay, Charles Wright, Samuel S. Cake,

# EXHIBIT M

# 1866 Supplement

# [as printed]

# ACTS

OF THE

# NINETIETH LEGISLATURE

OF THE

## STATE OF NEW JERSEY,

AND

TWENTY-SECOND UNDER THE NEW CONSTITUTION.



PATERSON, N. J.:

PRINTED BY CHISWELL & WURTS, DAILY "PRESS" OFFICE.

1866.



I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA1044

Case 1:22-cv-07464-RMB-AMD   Document 76-13   Filed 02/13/23   Page 3 of 5 PageID: 1168

## CHAPTER CCLXXVII.

Supplement to the act entitled "An act for the preservation
of deer and other game, and to prevent trespassing with
guns," approved April sixteenth, eighteen hundred and
forty-six.

1. BE IT ENACTED *by the Senate and General Assembly of the* Penalty for
*State of New Jersey,* That hereafter no person shall at any killing
grouse.
time within five years from the passage of this act, kill, or
take, or destroy any pinnated grouse, commonly called prai-
rie fowl, within this state, under a penalty of fifty dollars
for each and every pinnated grouse so killed, taken or de-
stroyed.

2. *And be it enacted,* That hereafter no person shall, within Penalty for
this state, kill or have in his or her possession, or expose for having, kill-
ing, or sell-
sale any woodcock killed in this state between the first day ing, &c.
of January and the fourth day of July, in each year, or any
ruffled grouse, commonly called partridge, or any quail, some-
times called Virginia partridge, or any rabbit killed in this
state between the first day of January and the first day of
November in each year, under a penalty of fifteen dollars
for each and every woodcock, partridge, quail or rabbit so
killed or had in possession, or exposed for sale.

3. *And be it enacted,* That no person shall at any time, or Penalty for
in any place within this state, take with any trap or snare trapping.
any quail or ruffed grouse, or partridge, or rabbit, under a
penalty of ten dollars for each and every ruffed grouse, or
partridge, or quail so trapped or snared, except the same be
so taken with the intent to be kept alive, and be so kept
alive and set at liberty, in the month of April following the
taking thereof.

4. *And be it enacted,* That no person hereafter shall at any Trout penal-
time, with intent so to do, catch any speckled brook trout, ty for catch-
ing.
or speckled river trout, with any device, save only with a
hook and line, and no person shall in any way catch any
such trout, or have any such trout in his or her possession,
save only during the months of March, April, May, June,
July and August, under a penalty of five dollars for each and
every trout so caught or had in his or her possession; but in
any prosecution under this section it shall be deemed a de-

fence that the trout so taken was for the purpose of stocking other waters therewith within this state.

Penalty for gunning on sunday.

5. *And be it enacted*, That hereafter any person who shall hunt with a gun, or with a dog and gun, or with any kind of fire-arm or weapon, or shall in any way kill, take or destroy with any trap, snare, or other device whatsoever, any bird or animal whatever, on the Sabbath day, commonly called Sunday, except those who observe the seventh day of the week as the Sabbath gunning upon their own lands, shall be liable to a penalty of twenty-five dollars for each and every offence, one-half of said penalty to be paid to the complainant, and the remainder to be paid to the overseer of the poor of the township where the offence was committed, for the use of the poor of said township.

Penalties how recovered.

6. *And be it enacted*, That all penalties imposed under the provisions of this act may be recovered in an action of debt, with costs of suit by any person or persons in his or their own names, before any justice of the peace in the county where the offence was committed, or where the defendants resides, or is found, and any justice of the peace is hereby authorized and directed upon receiving sufficient proof, by affidavit, of the violation of any of the provisions of this act, by any person being temporarily within his jurisdiction, but not residing therein, or who is likely to evade judgment by removal therefrom, or by any person whose name and residence are unknown, to issue his warrant and have such offender arrested and tried within twenty-four hours for such offence, or committed, or held to bail to answer the charge against him, in case such offender shall require or demand a reasonable delay for such trial; and any justice of the peace shall, upon proof of probable cause to believe in the concealment of any game or fish mentioned in this act, during any of the prohibited period, issue his warrant and cause search to be made at any hour, in any house, market, store, shop, boat, car, or other place or building, or any person, and for that end may cause any apartment, chest, box, locker, barrel, crate, or other place of concealment to be broken open and the contents examined, and if any quail, grouse or partridge, or rabbit, trout or woodcock be found, to take the body of the person in whose custody they shall be found, before the justice of the peace who issued the warrant, to be held to answer to the penalties aforesaid; and in all prosecutions and proceeding under this act, it shall not be necessary to file any state of demand, or to comply with the for-

Case 1:22-cv-07464-RMB-AMD   Document 76-13   Filed 02/13/23   Page 5 of 5 PageID: 1170

malities required in penal actions, and in all such actions both parties may be sworn.

7. *And be it enacted,* That any person proving that the How exempt birds, fish or animals found in his or her possession during the prohibited periods were killed, or taken in any place outside the limits of this state, and that the laws of such place did not prohibit such killing or taking, shall be exempt from the penalties of this act.

8. *And be it enacted,* That any penalty recovered under Punishment this act, when collected, shall be paid to the complainant, for non-pay-ment. (when not otherwise directed by this act) and on the non-payment of any penalty, the defendant shall be committed to the common jail of the county for a period of not less than ten days; and at the rate of one day in addition for each dollar of the judgment over ten dollars in amount, and it shall be lawful for any freeholder upon view of any violation of any of the provisions of this act, to arrest any person or persons guilty thereof, without warrant, and take the offender or offenders before some justice of the peace, to be dealt with as law and justice may require, and shall be clothed with the same power, and may exact the same assistance as if he was constable.

9. *And be it enacted,* That all acts and parts of acts incon- Repealer. sistent with the provisions of this act be, and the same are hereby repealed.

10. *And be it enacted,* That this act shall take effect immediately.

Approved March 26, 1866.

---

# CHAPTER CCLXXVIII.

A further supplement to "An act for the preservation of Sheep."

1. BE IT ENACTED *by the Senate and General Assembly of the* Provisions *State of New Jersey,* That the provisions of the supplement extended. to an act entitled "An act for the preservation of Sheep," approved April fourteenth, eighteen hundred and forty-six, which said supplement was approved March twenty-fourth, eighteen hundred and fifty-two, be and the same are hereby

JA1047

# EXHIBIT N

# 1867 Supplement

# [as printed]



# ACTS

OF THE

# NINETY-FIRST LEGISLATURE

OF THE

# STATE OF NEW JERSEY,

AND

TWENTY-THIRD UNDER THE NEW CONSTITUTION.

PATERSON, N. J.:

PRINTED BY CHISWELL & WURTS, DAILY "PRESS" OFFICE.

1867.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives     Joseph R. Klett
P.O. Box 307                  Executive Director
225 West State St.            N. J. State Archives
Trenton, N.J. 08625                          JA1049

Case 1:22-cv-07464-RMB-AMD   Document 76-14   Filed 02/13/23   Page 3 of 5 PageID: 1173

teen hundred and sixty-four, be, and they are hereby extended to the township of Tewksbury, in said county.

Approved, March 27, 1867.

## CHAPTER CXCVI.

A further supplement to "An act for the preservation of deer and other game and to prevent trespassing with guns," approved April sixteenth, anno domini, eighteen hundred and forty-six.

**To prevent fishing on sunday.** 1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey*, That the provisions of the fifth section of the supplement to the act approved March twenty-sixth, anno domini, eighteen hundred and sixty-six, to which this is a further supplement, be, and they are hereby extended so as to include all persons who shall fish, with hook and line, for any kind of fish whatsoever, on the Sabbath day, except those mentioned in the said section of said supplement, and that all persons so fishing on the Sabbath day shall be subject to the same fines and penalties, and shall be recovered in the same manner as in said supplement stated.

2. *And be it enacted*, That this act shall take effect immediately.

Approved, March 27, 1867.

## CHAPTER CXCVII.

An additional supplement to "An act to provide for the publication of the Public Laws of this state," approved February sixteenth, eighteen hundred and sixty-four.

**Laws to be published in Union Standard.** 1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey*, That such laws as are authorized to be published by the other newspapers of Union county, be published in the Union Standard, a weekly newspaper published in Elizabeth, Union county, by J. Madison Drake, for which

JA1050

# EXHIBIT O

## 1873 Supplement

## [as printed]

# ACTS

OF THE   #470

# Ninety-Seventh Legislature

OF THE

## STATE OF NEW JERSEY,

AND

### TWENTY-NINTH UNDER THE NEW CONSTITUTION.



MORRISTOWN, N. J.:

VANCE & STILES, STEAM POWER BOOK AND JOB PRINTERS.

1873



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA1052

10. *And be it enacted*, That the provisions of the act to <span style="font-size:smaller">Provisions of original act not repealed.</span> which this is a supplement shall continue to apply to such Baptist churches as do not avail themselves of the provisions of this act.

11. *And be it enacted*, That this shall be a public act and shall take effect immediately.

Approved April 4, 1873.

---

## CHAPTER DXCVIII.

A Further Supplement to "An Act for the Preservation of Deer and other Game, and to Prevent Trespassing with Guns," approved April sixteenth, one thousand eight hundred and forty-six.

1. Be it enacted *by the Senate and General Assembly of* <span style="font-size:smaller">Penalty for hunting rabbits with ferrets.</span> *the State of New Jersey*, That hereafter it shall not be lawful for any person or persons to hunt for rabbits with ferrets, or to capture or kill any rabbit or rabbits by means of any ferret or ferrets, and whoever shall offend against the provisions of this act, shall forfeit and pay for each and every such offence, the sum of fifteen dollars, to be sued for before any justice of the peace, and recovered in an action of debt with costs of suit by any person who shall sue for the same, and on non-payment thereof, such offender shall be committed to the workhouse or common jail of the county for any period not exceeding sixty days, and until said fine and costs are paid.

2. *And be it enacted*, That this act shall take effect immediately.

Approved April 4, 1873.

EXHIBIT P

1846 Law relative to "Carrying guns,

where prohibited"

[as printed in Revised Statutes of 1877]

# REVISION

OF THE

# STATUTES OF NEW JERSEY.

PUBLISHED

UNDER THE AUTHORITY OF

THE LEGISLATURE.

BY VIRTUE OF AN ACT APPROVED APRIL 4, 1871.



TRENTON, N. J.:
JOHN L. MURPHY, BOOK AND JOB PRINTER.

1877.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives
P.O. Box 307
225 West State St.
Trenton, N.J. 08625

Joseph R. Klett
Executive Director
N. J. State Archives

JA1055

48. Repealer.
49. Fish may be taken with set lines in Delaware, north of Reigelsville.
50. Penalty for killing wood or summer duck during a certain time.
51. When grouse or pheasants not to be killed.
52. Penalty for taking with trap, snare or net, any kind of deer, game or birds.
53. Hunting and fishing, when prohibited.
54. Repealer of part of former act.
55. Fishing with net, seine, etc., prohibited in waters stocked by commissioners.
56. Fishing with hook and line prohibited for three years in lakes, etc., stocked by commissioners.
57. Act to apply to waters stocked by individuals.
58. When brook trout not to be caught.
59. When black bass and perch not to be caught.

60. Unlawful to take fish from waters stocked by individuals.
61. No deleterious substances to be placed in streams for catching of fish.
62. How penalties applied.
63. Fish may be caught with hook and line, etc., in certain waters.
64. Fishing with nets, etc., above tide water prohibited.
65. Appointment of fish wardens. Powers. Duties. Term of office, etc.
66. Penalty for neglect of duty.
67. Wardens to be appointed by the governor.
68. Repealer.
69. When unlawful to take terrapin.
70. Penalty.
71. Action by summons or warrant.

## An act for the preservation of deer and other game, and to prevent trespassing with guns.

Rev. 25, 673.

R. S. 12.

Approved April 16, 1846.

*Carrying guns, where prohibited.*

1. If any person or persons shall carry any gun on any land not his own, and for which the owner pays taxes, or is in his lawful possession, unless he hath license or permission in writing from the owner or owners or legal possessor, every such person so offending, and convicted thereof, either upon the view of any justice of the peace within this state, or by the oath or affirmation of one or more witnesses, before any justice of the peace of either of the counties, cities, or towns corporate of this state, in which the offender or offenders may be taken or reside, he or they shall, for every such offence, forfeit and pay to the owner of the soil or his tenant in possession the sum of five dollars, with costs of suit; which forfeiture shall and may be sued for and recovered by the owner of the soil or tenant in possession before any justice of the peace in this state, for the use of such owner or tenant in possession.(a)   (See Sec. 18).

*Hunting deer, where prohibited.*

2. If any person shall hunt or watch for deer with a gun, or set in any dog or dogs to drive deer or any other game, on any lands not his own, and for which the owner or possessor pays taxes, or is in his lawful possession, unless he hath license or permission in writing from such owner or owners, or legal possessor, every such person so offending, and being convicted thereof in manner aforesaid, shall for every such offence forfeit and pay to the owner of the soil or tenant in possession the sum of five dollars, with costs of suit; provided, that nothing herein contained shall be construed to prevent any person carrying a gun upon the highway in this state.

*Forfeiture.*

*Forfeiture if; non-resident.*

3. If the person or persons offending against this act be non-residents of this state, he or they shall forfeit and pay for every such offence fifteen dollars, and shall forfeit his or their gun or guns to any person or persons who shall inform and prosecute the same to effect, before any justice of the peace in any county of this state, wherein the offender or offenders may be taken or apprehended.

*Who deemed guilty.*

4. And, for the better and more effectual conviction of offenders against this act, be it enacted, That any and every person or persons in whose custody shall be found, or who shall expose to sale, any green deer skins or fresh venison killed at any time after the first day of January, and before the first day of September aforesaid, and shall be thereof convicted by the oath or affirmation of one or more credible witnesses, shall be deemed guilty of offending against this act, and be subjected to the penalties of killing deer out of season.

*What traps prohibited.*

5. If any person or persons within this state shall set any trap, or other device whatsoever, larger than what is usually and commonly set for foxes and muskrats, such person setting such trap or other device shall pay the sum of fifteen dollars, and forfeit the trap or other device, and shall also be liable to make good all damages any person shall sustain by setting such trap or other device; and the owner of such trap or other

(a) The action must now be in trespass instead of debt, Huck v. Danzenbacker, 8 Vr. 359.   In an action for this penalty the state of demand and all the proceedings must show that the plaintiff is clearly within the act, Chew v. Thompson, 4 Hal. 249.

Case 1:22-cv-07464-RMB-AMD   Document 76-16   Filed 02/13/23   Page 4 of 6 PageID: 1180

device, or person to whom it was lent, shall be esteemed the setter thereof, unless it shall be proved on oath or affirmation what other person set the same, or that such trap or other device was lost by said owner or person to whom it was lent, and absolutely out of his power; and that the said trap or other device shall be broken and destroyed in the view and presence of the justice of the peace before whom they are brought.

6. If any person or persons within this state shall set any loaded gun  *Setting loaded* in such manner as that the same shall be intended to go off or discharge  *guns prohibited.* itself, or be discharged by any string, rope, or other contrivance, such person or persons shall forfeit and pay the sum of twenty dollars, to he recovered by action of debt by any person who shall sue for the same, and on non-payment thereof, shall be committed to the common jail of the county for six months.

7. Nothing in this law shall be construed to extend to restrain the  *Owners ex-* owners of parks or of tame deer from killing, hunting, or driving their  *cepted.* own deer.

8. If any person or persons within this state shall watch with a gun on  *Watching with* any unenclosed land within two hundred yards of any road or path, in the  *guns at night,* night time, whether the said road is laid out by law or not, or shall stand  *where pro-* or station him or themselves upon or within two hundred yards of any  *hibited.* road as aforesaid, for shooting at deer driven by dogs, he or they so offending shall on conviction forfeit and pay the sum of fifteen dollars for every such offence, to be recovered by action of debt as aforesaid, and pay all damages.

[SEC. 9 and 10 repealed by act of March 27, 1874].

9. SEC. 11. If any person or persons not resident in this state shall  *Remedy against* offend against any of the provisions of the first section of this act, it shall  *non-residents.* and may be lawful for the owner or owners of the said lands, or the possessor or possessors thereof, to apprehend any and every such person or persons so offending, and take him or them before a magistrate as soon as conveniently may be, in order that he or they may be dealt with according to law; and every such person who may perform this service shall be entitled to the same assistance and protection, and subject to the same restrictions and liabilities, as a constable would be on the same occasion.(a)

### Supplement.

Approved February 14, 1852.     P. L. 1852, p. 38.

10. SEC. 1. That it shall not be lawful for any person, hunting or gun-  *Hunting or gun-* ning after geese, ducks, brant, and for that purpose using stools or decoy  *ning after geese,* geese, ducks or brant, to place the boat, sneak-box or other floating vessel  *ducks, etc., with* in which he lies in wait to kill the said geese, ducks and brant, at a  *stools or decoys.* distance more than three rods from ice, or from marsh, or meadow bank, or heaped sea weed, or sand bar not covered with water at ordinary high tide.

11. SEC. 2. That it shall not be lawful for any person, with intent to  *Not lawful to* capture or kill geese, ducks or brant, in and about the waters aforesaid,  *hunt geese,* to hunt after or pursue them with a light at night.  *ducks, etc., with* *light at night.*

12. SEC. 3. That every person offending against the provisions of this  *Penalty.* act shall, for each offence, forfeit and pay the sum of fifteen dollars, to be sued for and recovered with costs, in an action of debt before any justice of the peace in this state, by any person who shall sue for the same.

### Supplement.

Approved March 23, 1859.      P. L. 1859, p, 636.

13. SEC. 1. That from and after the passage of this act, it shall not be  *Killing and* lawful for any person or persons to kill, capture or hunt in or about the  *hunting geese,* waters of Barnegat bay, or Manasquan river, any geese, brant, or ducks  *etc., in Barnegat* at night, that is to say, after sunset or before daylight, nor shall it be  *bay or Mana-* lawful at any time to kill, capture or hunt any geese, brant, or ducks in  *squan river.* or about the waters aforesaid, except only between the fifteenth day of October and the fifteenth day of April, yearly and every year hereafter.

(a) A justice of the peace, who is the owner of the land trespassed on, cannot convict such trespasser on his own view, *Schroder v. Ehlers*, 2 *Vr.* 44.

29

P. L. 1866, p. 681.

## Supplement.

Approved March 26, 1866.

**Hunting on Sunday prohibited.**

14. Sec. 5. That hereafter any person who shall hunt with a gun, or with a dog and gun, or with any kind of fire-arm or weapon, or shall in any way kill, take or destroy with any trap, snare, or other device whatsoever, any bird or animal whatever, on the Sabbath day, commonly called Sunday, except those who observe the seventh day of the week as the Sabbath gunning upon their own lands, shall be liable to a penalty of twenty-five dollars for each and every offence, one-half of said penalty to be paid to the complainant, and the remainder to be paid to the overseer of the poor of the township where the offence was committed, for the use of the poor of said township. (The other sections of this supplement repealed by act of March 27, 1874. See Sec. 25, 26, &c).

P. L. 1867, p. 430.

## Supplement.

Approved March 27, 1867.

**Fishing with hook and line on Sunday prohibited.**

15. Sec. 1. That the provisions of the fifth section of the supplement to the act approved March twenty-sixth, anno domini, eighteen hundred and sixty-six, to which this is a further supplement, be and they are hereby extended so as to include all persons who shall fish, with hook and line, for any kind of fish whatsoever, on the Sabbath day, except those mentioned in the said section of said supplement, and that all persons so fishing on the Sabbath day shall be subject to the same fines and penalties, and shall be recovered in the same manner as in said supplement stated.

P. L. 1870, p. 835.

## Supplement.

Approved March 17, 1870.

**Killing of water fowl prohibited during certain seasons in Brick township, Ocean county.**
**[P. L. 1872, p. 516.]**

16. Sec. 1. That it shall not be lawful for any person or persons to kill, destroy or take, on the waters or about the shores of such portions of Metedeconk river, Manasquan river, the Beaver Dam creek, Kettle creek, and their several branches and environs, as lie within the present limits of the township of Brick, in the county of Ocean, any wood duck, black duck, teal or other wild water fowl, except only between the first day of [September] and the first day of April yearly and every year.

**Penalty for violation of act.**

17. Sec. 2. That if any person or persons shall offend against the provisions of the first section of this act, he, she or they so offending, shall forfeit and pay for every wood duck, black duck, teal or other water fowl, ten dollars for each and every offence, to be sued for and recovered in an action of debt, with costs of suit, by any person who shall sue for the same, before any justice of the peace of the said county, one-half of the said penalty to be paid to the complainant, and the remainder to the overseer of the poor, for the use of the poor of said township; and any person in whose hands or custody any wood duck, black duck, teal or other water fowl shall be found which shall have been killed, contrary to the provisions of this act, shall be deemed, taken and adjudged to be the killer and destroyer of such game, and liable to the penalties aforesaid.

## Supplement.

Approved March 21, 1873.

P. L. 1873, p. 58.

WHEREAS, many irresponsible persons are trespassing with guns on lands not their own, doing much damage to stone fences, and so forth, in search of game, for which the owners have no redress on account of the action now being debt; therefore,

**Actions brought under Sec. 1 to be trespass.**

18. Sec. 1. Be it enacted by the Senate and General Assembly of the State of New Jersey, That hereafter all actions brought under the first section of the act for the preservation of deer and other game, and to prevent trespassing with guns, approved April sixteenth, one thousand eight hundred and forty-six, shall be actions of trespass.

P. L. 1873, p. 151.

## Supplement.

Approved April 4, 1873.

**Penalty for hunting rabbits with ferrets.**

19. Sec. 1. That hereafter it shall not be lawful for any person or persons to hunt for rabbits with ferrets, or to capture or kill any rabbit or rabbits by means of any ferret or ferrets, and whoever shall offend

against the provisions of this act, shall forfeit and pay for each and every such offence, the sum of fifteen dollars, to be sued for before any justice of the peace, and recovered in an action of debt with costs of suit by any person who shall sue for the same, and on non-payment thereof, such offender shall be committed to the workhouse or common jail of the county for any period not exceeding sixty days, and until said fine and costs are paid.

### An act to amend and consolidate the several acts relating to game and game fish.(1)

Approved March 27, 1874.        P. L. 1874, p. 137.

20. SEC. 1. That no person shall kill or pursue in any part of this state any buck, doe, fawn or wild deer, save only from the fifteenth day of October to the first day of December in any year, and any person offending against any of the provisions of this section shall be deemed guilty of a misdemeanor, and shall be liable to a penalty of fifty dollars for each buck, doe or fawn so killed or pursued, and may be proceeded against in any county of the state wherein he may be arrested having the same in his or her possession; *provided*, however, that any person may sell or have in his or her possession the buck, doe or fawn aforesaid, between the fifteenth day of October in any year and the first day of December next following, without liability to the penalty herein imposed. *(margin: When deer shall not be killed. Penalty. Proviso.)*

21. SEC. 2. That no person shall kill or expose for sale or have unlawfully in his or her possession after the same has been killed, any gray, black or fox squirrel between the first day of January and the first day of July in each year, under a penalty of five dollars for each and every squirrel so killed or had in possession. *(margin: When squirrels shall not be killed. Penalty.)*

22. SEC. 3. That no person shall kill or expose for sale or have unlawfully in his or her possession after the same has been killed, any hare, commonly called rabbit, between the first day of January and the first day of November in any year, under a penalty of five dollars for each and every hare or rabbit so killed or had in his possession. *(margin: When rabbits shall not be killed. Penalty.)*

23. SEC. 4. That no person shall at any time kill any wild duck, brant or goose with any device or instrument known as a swivel or punt gun, or with any gun other than such guns as are habitually raised at arm's length and fired from the shoulder; or shall use any net, device, instrument, or gun other than such gun as aforesaid with intent to capture or kill any such wild duck or goose, under a penalty of fifty dollars. *(margin: How wild duck, brant or geese shall be killed. Penalty.)*

24. SEC. 5. That no person shall kill or expose for sale, or have unlawfully in his or her possession after the same has been killed, any upland or grass plover between the first day of January and the first day of August in any year under a penalty of ten dollars for each bird so killed or had in his possession; no person shall kill, expose for sale, or have unlawfully in his or her possession any "Wilson" or gray snipe between the first day of May and the first day of October in any year, under a like penalty. *(margin: When plover and gray snipe shall not be killed. Penalty.)*

25. SEC. 6. That no person shall kill or expose for sale or have unlawfully in his or her possession after the same has been killed, any woodcock between the first day of January and the fourth day of July in any year, under a penalty of ten dollars for each bird so killed or had in possession. *(margin: When woodcock shall not be killed. Penalty.)*

26. SEC. 7. That no person shall kill or expose for sale or have unlawfully in his or her possession after the same has been killed, any quail or Virginia partridge between the first day of January and the first day of November in any year, under a penalty of fifteen dollars for each bird so killed or had in possession. *(margin: When quail shall not be killed. Penalty.)*

[SEC. 8 repealed. See *Sec.* 51].

27. SEC. 9. That no person shall kill or expose for sale or have unlawfully in his or her possession after the same has been killed, any pinnated grouse or wild turkey, commonly called prairie chicken, prior to the first day of November, anno domini one thousand eight hundred and *(margin: When prairie chicken shall not be killed.)*

(1) By a supplement approved February 10, 1875, (P. L., 1875, p. 171), it is unlawful for any person with net, seine, trap, fyke or gilling net, set net, pot or gun, to take or catch fish in the north branch of the Rancocas creek, in the county of Burlington, commencing at the mill dam at Mount Holly and extending up said branch to its beginning. And by a supplement approved April 8, 1875, (P. L. 1875, p. 79), a like prohibition to fishing in the south branch of Rancocas creek commencing at Lumberton and extending up said branch to its beginning.

EXHIBIT Q

1846 Law referred to as "An act to Prevent Trespassing with Guns"

[as included in 1880 synopsis of laws]

# THE

ORGANIZED
OCT.
1878.

# WEST EWING

# IMPROVEMENT

Proceedings of Anniversary Meeting, held in Ewing Church, Sept. 2d, 1880, and other valuable matter.

# ASSOCIATION.

TRENTON, N. J.:
MACCRELLISH & QUIGLEY, STEAM POWER PRINTERS.
1880.

Digitized by Google

JA1061

Entered, according to act of Congress, in the year 1880, by the
WEST EWING IMPROVEMENT ASSOCIATION,
P. O. Address, Greensburg, Mercer Co., N. J.,
in the office of the Librarian of Congress, at Washington, D. C.

Digitized by Google

# TABLE OF CONTENTS.

PROCEEDINGS OF THE SECOND ANNUAL MEETING.

ADDRESS OF THE PRESIDENT.

ADDRESS OF HON. B. G. NORTHROP, OF CONNECTICUT.

ADDRESS OF COL. GEORGE E. WARING, JR., OF RHODE ISLAND.

REPORT ON THE SANITARY CONDITION OF THE WESTERN PART OF EWING
TOWNSHIP, BY COL. GEORGE E. WARING, JR., OF NEWPORT, RHODE
ISLAND.

SYNOPSIS OF SUCH LAWS OF THE STATE OF NEW JERSEY AS CONCERN
A RURAL COMMUNITY.

CONSTITUTION AND BY-LAWS.

INDEX.

COMMUNICATIONS, IN REGARD TO
THE WORK OF THE ASSOCIATION,
MAY BE ADDRESSED TO
HARVEY EDW. FISK,
GREENSBURG,
MERCER CO., N. J.,
OR, P. O. BOX 235,
NEW YORK, N. Y.

Digitized by Google

JA1063

# SYNOPSIS OF SUCH LAWS OF THE STATE OF NEW JERSEY AS CONCERN A RURAL COMMUNITY.

COMPILED BY A. G. RICHEY, ESQ.

### Mode of Laying out Public Roads.

When ten or more persons, being freeholders, shall think a public road necessary in any part of the county, they may apply to the Court of Common Pleas of the county for the appointment of six surveyors of the highways to lay out such road.

Ten days' notice of such application must be first given.

The surveyors of the highway are to meet, at such time and place as the court shall direct, for the purpose of laying out said road.

Notice shall be given by advertisement of the time and place of such meeting.

The surveyors of the highway, when met as aforesaid, shall view the premises, and may, if they think necessary, lay out such public road; and they shall lay the same as it appears to them to be most for the public and private convenience—having a regard to the best ground for a road and the shortest distance in such a manner as to do the least injury to private property.

And they shall make a return thereof, with a map of the same, with the courses and distances, with the time when the overseers of the highway shall open the same for public use.

The said surveyors shall also make an assessment of the damages, if any, the owner of any land (other than an applicant for such road) shall sustain by laying out the same, above the advantages that will accrue to the owner, which assessment they must affix to their return, which return, with the assessments,

112

out this State, or from any city, county, township, borough or place in this State, and have no legal settlement in the places in which they are found, and live idly and without employment, and refuse to work for the usual and common wages given to other persons for like work in the place where they then are, or shall be found going about from door to door, or placing them-selves in the streets, highways or roads to beg or gather alms, and can give no reasonable account of themselves or their business in such places.

That if any person shall be found offending in any county, city, township, borough or district in this State, against this act, it shall and may be lawful for any constable or police officer of such place, and he is hereby enjoined and required, on notice thereof to him given by any of the inhabitants thereof, or without such notice, on his own view, to apprehend and convey, or cause to be conveyed, such person to a justice of the peace or other magistrate of such place, who shall examine such person, and shall commit him or her, being thereof legally convicted before him, on his own view, or by the confession of such offenders, or by the oath or affirmation of one or more credible witnesses, to labor upon any county farm or upon the streets, roads and highways of any city, township or borough, or in any house of correction, poor-house, work-house or com-mon jail, for a term not exceeding six months, and shall forth-with commit him or her to the custody of the steward, keeper or superintendent of such county farm, house of correction, poor-house, work-house or common jail, or to the supervisors or overseers of the highways, street commissioners, or other officer or officers having in charge the repairs of any street, road or highway, or overseers of the poor of the respective township, borough, county or city wherein such person shall be found, as in their judgment shall be deemed most expedient.

### An Act to Prevent Trespassing with Guns.

If any person or persons shall carry any gun on any land not his own, and for which the owner pays taxes, or is in his lawful possession, unless he hath license or permission in writing from the owner or owners or legal possessor, every such person so offending, and convicted thereof, either upon the view of any

Digitized by Google

113

justice of the peace within this State, or by the oath or affirma-
tion of one or more witnesses, before any justice of the peace
within this State, or by the oath or affirmation of one or more
witnesses, before any justice of the peace of either of the coun-
ties, cities or towns corporate, of this State, in which the offender
may be taken or reside, he shall, for every such offence, forfeit
and pay to the owner of the soil, or his tenant in possession, the
sum of five dollars, with costs of suit; which forfeiture may and
shall be sued for and recovered by the owner of the soil or ten-
ant in possession, before any justice of the peace in this State,
for the use of such owner or tenant in possession.

### Law to Prevent the Adulteration of Milk.

If any person shall knowingly sell any impure or unwhole-
some milk, he shall be deemed guilty of a misdemeanor, and
on conviction thereof, he shall be punished by a fine of not less
than fifty dollars for each and every offence.

And if any person shall adulterate milk with a view of offer-
ing the same for sale, he shall be deemed guilty of a misde-
meanor, and on conviction thereof shall be punished by a fine
of not less than fifty dollars for each and every offence.

The addition of water to milk is hereby declared to be an
adulteration thereof.

### Law for the Prevention of Cruelty to Animals.

That any person who shall overdrive, overload, overwork,
cruelly beat or otherwise abuse any living animal, and any per-
son having the charge of any living animal, who inflicts unnec-
essary cruelty upon the same, or fails to provide the same with
proper food, drink or shelter, or protection from the weather,
shall be deemed guilty of a misdemeanor, and for every such
offence, shall, on conviction thereof, be punished, by fine not
exceeding two hundred dollars, or by imprisonment in the
county jail not exceeding six months, or both, in the discretion
of the court.

And any person who shall keep or use any place for the pur-
pose of fighting or baiting any bull, bear, dog, cock, or other
living animal or creature, and every person who shall be pres-
ent and witness, encourage, aid or assist therein, shall be

8

Digitized by Google

EXHIBIT R

1895 Law "to prevent trespassing with guns"

[original enrolled law]



Chapter 284
Assembly, No. 287.

An Act to prevent Trespassing
with guns.

Passed 3/6/95

Agr

COMPARED.
JOHN S. McMASTER,
PRIVATE SECRETARY.

I certify that this Bill originated in
the House of Assembly.

James Parker
Clerk of the House of Assembly.



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

Joseph R. Klett

Address;
New Jersey State Archives          Joseph R. Klett
P.O. Box 307                       Executive Director
225 West State St.                 N. J. State Archives
Trenton, N.J. 08625

JA1068

Chapter

Assembly, No. 287.

An Act to Prevent Trespassing
with guns.

Passed 3/6/95

Agr

COMPARED.
JOHN S McMASTER,
PRIVATE SECRETARY,

I certify that this Bill originated in
the House of Assembly.

James Parker
Clerk of the House of Assembly.

JA1069



Assembly, No. 287.

State of New Jersey.

An Act to prevent trespassing with guns.

1. Be it enacted by the Senate and General Assembly of the State of New Jersey: That any person trespassing on any lands, carrying a gun, after public notice on the part of the owner, occupant, lessee or licensee thereof, forbidding such trespassing, such notice being posted conspicuously adjacent to the highway binding on said lands, or adjacent to any usual entranceway to said lands, shall be deemed guilty of trespass at the suit of such owner, occupant, lessee or licensee, and in an action of trespass or tort (which action shall be



Conducted in all respects as actions of trespass
or tort are usually conducted) The damages
awarded for any such trespass shall not be
less than ten dollars.

2. And be it enacted, That
any person trespassing on any lands, car-
rying a gun, after being forbidden so to trespass
by the owner, occupant, lessee or licensee there-
of, shall be deemed guilty of trespass at the
suit of such owner, occupant, lessee or li-
censee, and in an action of trespass or tort
(which action shall be conducted in all respects
as actions of trespass or tort are usually
conducted) The damages awarded for any such
trespass shall not be less than ten dollars.

3. And be it enacted, That
any person or persons found trespassing,
as provided in the first and second sections
of this act, shall be deemed and adjudged
to be disorderly, and in addition to the remedies
therein provided for, it shall be lawful for the
owner or owners of the said lands or the occu-
pant or occupants, lessee or lessees or licen-
see thereof, or any constable or constables, to

JA1071

apprehend, without warrant or process, any such disorderly person or persons, and to take him or them before any justice of the peace of the county where apprehended; and it shall be the duty of the said justice, in a summary manner, to hear and determine the guilt or innocence of such person or persons; and upon conviction, to impose upon the offender or offenders, and each of them so convicted, a fine of five dollars, besides the costs of the prosecution; and if any person or persons so convicted shall fail to pay such fines and costs, the said justice shall commit such offender or offenders to the common jail of the county for a period of not less than five nor more than ten days.

4. And be it enacted, That any person or persons who shall willfully or maliciously remove, deface or alter any notice posted, as contemplated in the first section of this act, with the intent to destroy such notice, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding twenty dollars or imprison-



ment in the county jail not exceeding thirty days, or both.

5. *And be it enacted, That* this act shall take effect immediately.

Approved March 14th 1895.

George T Werts
Governor



HOUSE OF ASSEMBLY No. 287

HOUSE OF ASSEMBLY,

February 27 1895.

This bill having been three times read

in the House of Assembly,

RESOLVED, That the same do pass.

By order of the House of Assembly.

*Joseph Cross*
Speaker of the House of Assembly.

SENATE,

March 8 1895.

This bill having been three times read

and compared in the Senate,

RESOLVED, That the same do pass.

By order of the Senate.

*E. C. Stokes*
President of the Senate.

HOUSE OF ASSEMBLY,

1895.

This bill having been three times read

in the House of Assembly,

RESOLVED, That the same do pass, as

amended.

By order of the House of Assembly.

Speaker of the House of Assembly.

SENATE,

1895.

This bill having been three times read

and compared in the Senate,

RESOLVED, That the same do pass, as

amended.

By order of the Senate.

President of the Senate.

EXHIBIT S

1911 Supplement

[original enrolled law]



Chapter *145* *Apl.*

## SENATE, No. 9

An Act to amend an act entitled "An act to prevent trespassing with guns," approved March fourteenth, one thousand eight hundred and ninety-five.

Passed 4/4

FILED
APR 15 1911
*S. D. Dickinson*
SECRETARY OF STATE

I certify that this Bill originated in the Senate.

*Secretary of the Senate.*

I hereby certify that the foregoing is a true copy of the original record on file in the New Jersey State Archives, Department of State.



*Joseph R. Klett*

Address;
New Jersey State Archives     Joseph R. Klett
P.O. Box 307                  Executive Director
225 West State St.            N. J. State Archives
Trenton, N.J. 08625

JA1076



Chapter *145* apr.

## SENATE, No. 9

An Act to amend an act entitled "An act to prevent trespassing with guns," approved March fourteenth, one thousand eight hundred and ninety-five.

Passed 4/4

FILED
APR 15 1911
*S. D. Dickinson*
SECRETARY OF STATE

I certify that this Bill originated in the Senate.

*Secretary of the Senate.*

JA1077





## SENATE, No. 9.

*(Chapter 148, Pamphlet Laws 1895, page 307.)*

—————

# STATE OF NEW JERSEY.

—————

AN ACT to amend an act entitled "An act to prevent trespassing with guns," approved March fourteenth, one thousand eight hundred and ninety-five.

BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey:*

1. Section one of the act to which this act is amendatory be and the same is hereby amended to read as follows:

1. Any person trespassing on any lands, except fresh-meadow land over which the tide has ebbed and flowed continuously for twenty years or more, carrying a gun, after public notice on the part of the owner, occupant, lessee or licensee thereof forbidding such trespassing, such notice being posted conspicuously adjacent to the highway binding on said lands, or adjacent to any usual entrance way to said lands, shall be deemed guilty of trespass at the suit of such owner, occupant, lessee or licensee, and in an action of trespass or tort (which action shall be conducted in all respects as actions of trespass or tort are usually conducted) the damages awarded for any such trespass shall not be less than ten dollars.

2. Section two of the act to which this act is amendatory be and the same is hereby amended to read as follows:

2. Any person trespassing on any lands, except fresh-meadow land over which the tide has ebbed and flowed continuously for twenty years or more, carrying a gun,

2

5 after being forbidden so to trespass by the owner, occupant, lessee or licensee

6 thereof, shall be deemed guilty of trespass, at the suit of such owner, occupant,

7 lessee or licensee, and in an action of trespass or tort (which action shall be con-

8 ducted in all respects as actions of trespass or tort are usually conducted) the

9 damages awarded for any such trespass shall not be less than ten dollars.

3. Add the following section to the act of which this act is amendatory:

2 All acts or parts of acts inconsistent with this act are hereby repealed, and this

3 act shall take effect immediately.

Approved, 15 April, 1911.

*Woodrow Wilson*
Governor

SENATE No. *9,*

| SENATE, | HOUSE OF ASSEMBLY, |
|---|---|
| *April 4"* 1911. | *4/6* 1911. |
| This bill having been three times read in the Senate, | This bill having been three times read and compared in the House of Assembly, |
| RESOLVED, That the same do pass. | RESOLVED, That the same do pass. |
| By order of the Senate. | By order of the House of Assembly. |
| *Ernest R. Ackerman* | *[signature]* |
| *President of the Senate.* | *Speaker of the House of Assembly.* |

| SENATE, | HOUSE OF ASSEMBLY, |
|---|---|
| 1911. | 1911. |
| This bill having been three times read in the Senate, | This bill having been three times read and compared in the House of Assembly, |
| RESOLVED, That the same do pass as amended. | RESOLVED, That the same do pass as amended. |
| By order of the Senate. | By order of the House of Assembly. |
| *President of the Senate.* | *Speaker of the House of Assembly.* |

JA1080

# EXHIBIT T

# 1928 Repeal of 1846 Law

# [original enrolled law]



Chapter 246

**SENATE, No. 242**

An Act to repeal certain acts and parts of acts.

APR 13 1929

SECRETARY OF STATE

I certify that this bill originated in the SENATE

*Secretary of the Senate*



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives        **Joseph R. Klett**
P.O. Box 307                     Executive Director
225 West State St.               N. J. State Archives
Trenton, N.J. 08625

JA1082



Chapter 246

246

# SENATE, No. 242

An Act to repeal certain acts and parts of acts.

APR 13 1928

SECRETARY OF STATE

Rery Laws
3/19

2nd Rdy 3/27

3rd Rdy - 3/29

Passed 3/29

I certify that this bill originated in the
SENATE

Secretary of the Senate

JA1083



# SENATE, No. 242

---

# STATE OF NEW JERSEY

---

An Act to repeal certain acts and parts of acts.

1    Be it enacted *by the Senate and General Assembly of the State of New Jersey:*

1    1. From and after the time when this act shall take effect the following acts
2    and parts of acts be and the same hereby are repealed:

FISH AND GAME.

3    (Rev. of 1846, c. 3, p. 12.)   (Rev. 1877, p. 448.)

4    "An act for the preservation of deer and other game, and to prevent trespassing
5    with guns," approved April sixteenth, one thousand eight hundred and forty-six.

6    (1852, c. 18, p. 38.)   (Rev. 1877, p. 449.)

7    "Supplement to the act entitled 'An act for the preservation of deer and other
8    game, and to prevent trespassing with guns,' approved April sixteenth, eighteen
9    hundred and forty-six," approved February fourteenth, one thousand eight hundred
10   and fifty-two.

11   (1855, c. 58, p. 132.)   (Rev. 1877, p. 458.)

12   "An act for the preservation of terrapin," approved March two, one thousand
13   eight hundred and fifty-five.

14   (1859, c. 222, p. 636.)   (Rev. 1877, p. 449.)

15   "A supplement to the act entitled 'An act for the preservation of deer and other
16   game, and to prevent trespassing with guns,' approved April sixteenth, eighteen
17   hundred and forty-six," approved March twenty-third, one thousand eight hundred
18   and fifty-nine.





2

19  (1866, c. 277, p. 681.)   (Rev. 1877, p. 450.)

20      "Supplement to the act entitled 'An act for the preservation of deer and other

21  game, and to prevent trespassing with guns,' approved April sixteenth, eighteen

22  hundred and forty-six," approved March twenty-sixth, one thousand eight hundred

23  and sixty-six.

24  (1867, c. 196, p. 430.)   (Rev. 1877, p. 450.)

25      "A further supplement to 'An act for the preservation of deer and other game

26  and to prevent trespassing with guns,' approved April sixteenth, anno domini

27  eighteen hundred and forty-six," approved March twenty-seventh, one thousand

28  eight hundred and sixty-seven.

29  (1870, c. 397, p. 835.)   (Rev. 1877, p. 450.)

30      "A further supplement to 'An act for the preservation of deer and other

31  game,' approved April sixteenth, eighteen hundred and forty-six," approved March

32  seventeenth, one thousand eight hundred and seventy.

33  (1873, c. 313, p. 58.)   (Rev. 1877, p. 450.)

34      "A supplement to an act for the preservation of deer and other game, approved

35  April sixteenth, one thousand eight hundred and forty-six," approved March twenty-

36  first, one thousand eight hundred and seventy-three.

37  (1873, c. 598, p. 151.)   (Rev. 1877, p. 450.)

38      "A further supplement to 'An act for the preservation of deer and other game

39  and to prevent trespassing with guns,' approved April sixteenth, one thousand eight

40  hundred and forty-six," approved April fourth, one thousand eight hundred and

41  seventy-three.

42  (1874, c. 317, p. 61.)   (Rev. 1877, p. 455.)

43      "An act for the protection of fisheries in this State," approved March twenty-

44  first, one thousand eight hundred and seventy-four.

45  (1874, c. 525, p. 137.)   (Rev. 1877, p. 451.)

46      "An act to amend and consolidate the several acts relating to game and game

47  fish," approved March twenty-seventh, one thousand eight hundred and seventy-

48  four.





JA1085

3

49  (1875, c. 141, p. 30.)   (Rev. 1877, p. 454.)

50   "A supplement to an act entitled 'An act to amend and consolidate the several

51  acts relating to game and game fish,' approved March twenty-seventh, one thousand

52  eight hundred and seventy-four," approved March seventeenth, one thousand eight

53  hundred and seventy-five.

54  (1875, c. 345, p. 60.)

55   "An act for the preservation of fish in certain waters within the State of New

56  Jersey," approved April eighth, one thousand eight hundred and seventy-five.

57  (1876, c. 30, p. 53.)   (Rev. 1877, p. 454.)

58   "A supplement to an act entitled 'An act to amend and consolidate the several

59  acts relating to game and game fish,' approved March twenty-seventh, eighteen hun-

60  dred and seventy-four," approved March sixteenth, one thousand eight hundred and

61  seventy-six.

62  (1876, c. 100, p. 127.)   (Rev. 1877, p. 456.)

63   "An act for the preservation of fish," approved April thirteenth, one thousand

64  eight hundred and seventy-six.

65  (1876, c. 116, p. 157.)   (Rev. 1877, p. 455.)

66   "Supplement to an act entitled 'An act to amend and consolidate the several

67  acts relating to game and game fish,' approved April fifteenth, one thousand eight

68  hundred and seventy-six."

69  (1876, c. 146, p. 237.)   (Rev. 1877, p. 1339.)

70   "An act for the protection of black bass in the rivers of New Jersey," ap-

71  proved April twenty-first, one thousand eight hundred and seventy-six.

72  (1877, c. 46, p. 64.)   (Rev. 1877, p. 1340.)

73   "A further supplement to an act entitled 'An act to amend and consolidate the

74  several acts relating to game and game fish,' approved March twenty-seventh, one

75  thousand eight hundred and seventy-four," approved March eighth, one thousand

76  eight hundred and seventy-seven.

77  (1877, c. 60, p. 84.)   (Rev. 1877, p. 1339.)

78   "A supplement to an act entitled 'An act for the preservation of fish,' approved

79  the thirteenth day of April, one thousand eight hundred and seventy-six," approved

80  March eighth, one thousand eight hundred and seventy-seven.





JA1086



4

81  (1877, c. 123, p. 187.)  (Rev. 1877, p. 1340.)

82    "Supplement to an act entitled 'An act to amend and consolidate the several

83  acts relating to game and game fish,' prescribing a method of procedure for the

84  better enforcement of the game laws of this State," approved March ninth, one

85  thousand eight hundred and seventy-seven.

86  (1878, c. 184, p. 293.)

87    "An act for the protection of game and game fish," approved April fourth, one

88  thousand eight hundred and seventy-eight.

89  (1878, c. 206, p. 320.)

90    "An act to provide for the better protection of the fishing interests of this

91  State," approved April fifth, one thousand eight hundred and seventy-eight.

92  (1878, c. 221, p. 333.)

93    "A further supplement to an act entitled 'An act to amend and consolidate the

94  several acts relating to game and game fish,' approved March twenty-seventh,

95  eighteen hundred and seventy-four," approved April fifth, one thousand eight hun-

96  dred and seventy-eight.

97  (1878, c. 256, p. 396.)

98    "An act for the preservation of fish," approved April fifth, one thousand eight

99  hundred and seventy-eight.

100  (1879, c. 75, p. 112.)

101    "Supplement to an act entitled 'An act for the preservation of fish,' approved

102  April third, one thousand eight hundred and seventy-eight," approved March

103  eleventh, one thousand eight hundred and seventy-nine.

104  (1879, c. 109, p. 194.)

105    "A supplement to an act entitled 'An act for the preservation of deer and other

106  game, and to prevent trespassing with guns,' approved March fourteenth, one thou-

107  sand eight hundred and seventy-nine."

108  (1879, c. 124, p. 210.)

109    "A supplement to an act entitled 'An act for the preservation of fish,' approved

110  April fifth, one thousand eight hundred and seventy-eight," approved March four-

111  teenth, one thousand eight hundred and seventy-nine.







5

112  (1879, c. 158, p. 255.)

113      "An act for the further protection of fisheries," approved March fourteenth,

114  one thousand eight hundred and seventy-nine.

115  (1880, c. 60, p. 81.)

116      "Supplement to an act entitled 'An act to amend and consolidate the several acts

117  relating to game and game fish,' approved March twenty-seventh, one thousand eight

118  hundred and seventy-four," approved March third, one thousand eight hundred and

119  eighty.

120  (1880, c. 107, p. 138.)

121      "Supplement to an act for the preservation of fish, approved April thirteenth,

122  one thousand eight hundred and seventy-six," approved March tenth, one thousand

123  eight hundred and eighty.

124  (1880, c. 134, p. 174.)

125      "A supplement to an act entitled 'An act to amend and consolidate the several

126  acts relating to game and game fish,' approved March twenty-seventh, one thou-

127  sand eight hundred and seventy-four," approved March tenth, one thousand eight

128  hundred and eighty.

129  (1881, c. 111, p. 126.)

130      "A further supplement to an act entitled 'An act to amend and consolidate the

131  several acts relating to game and game fish,' approved March twenty-seventh, one

132  thousand eight hundred and seventy-four, and the supplement thereto, approved

133  March eighth, one thousand eight hundred and seventy-seven," approved March

134  seventeenth, one thousand eight hundred and eighty-one.

135  (1881, c. 173, p. 216.)

136      "An act to amend and to partially consolidate the several game laws of this

137  State," approved March twenty-fourth, one thousand eight hundred and eighty-one.

138  (1881, c. 186, p. 234.)

139      "An act for the protection of fish," approved March twenty-fifth, one thousand

140  eight hundred and eighty-one.

141  (1882, c. 41, p. 44.)

142      "Supplement to an act regulating fisheries," approved March third, one thou-

143  sand eight hundred and eighty-two, effective July fourth.



JA1088



6

144  (1882, c. 87, p. 109.)

145    "A supplement to an act entitled 'An act for the preservation of fish,' approved
146  April fifth, one thousand eight hundred and seventy-eight," approved March seven-
147  teenth, one thousand eight hundred and eighty-two.

148  (1883, c. 16, p. 24.)

149    "Supplement to 'An act to amend an act to partially consolidate the several
150  game laws of this State,' approved February eighth, one thousand eight hundred
151  and eighty-three."

152  (1883, c. 83, p. 99.)

153    "An act permitting the catching of fish by set lines and fish weirs in those tribu-
154  taries of the Delaware river above tidewater which are obstructed by dams," ap-
155  proved March thirteenth, one thousand eight hundred and eighty-three.

156  (1883, c. 110, p. 127.)

157    "A supplement to an act entitled 'An act for the preservation of fish,' approved
158  April fifth, one thousand eight hundred and seventy-eight," approved March twenty-
159  second, one thousand eight hundred and eighty-three.

160  (1884, c. 40, p. 70.)

161    "A supplement to 'An act for the preservation of fish,' approved April fifth,
162  eighteen hundred and seventy-eight," approved March tenth, one thousand eight
163  hundred and eighty-four.

164  (1884, c. 114, p. 176.)

165    "An act to empower fish wardens to enforce game laws," approved April four-
166  teenth, one thousand eight hundred and eighty-four.

167  (1885, c. 3, p. 13.)

168    "A supplement to an act entitled 'An act for the protection of game fish,' ap-
169  proved April fourth, one thousand eight hundred and seventy-eight, and other game
170  laws of this State, providing for the payment of fines into the county treasuries,"
171  approved January twenty-eighth, one thousand eight hundred and eighty-five.

172-73  (1885, c. 56, p. 65.)

174    "A further supplement to an act entitled 'An act to amend and consolidate the
175  several acts relating to game and game fish,' approved March twenty-seventh, one





7

176 thousand eight hundred and seventy-four," approved March ninth, one thousand

177 eight hundred and eighty-five.

178 (1885, c. 81, p. 96.)

179     "A further supplement to an act entitled 'An act for the protection of fisheries

180 in this State,' approved March twenty-first, one thousand eight hundred and seventy-

181 four," passed March sixteenth, one thousand eight hundred and eighty-five.

182 (1885, c. 84, p. 98.)

183     "An act to provide a uniform method of procedure for the recovery of penal-

184 ties for the violation of the several laws relating to game and game fish," passed

185 March sixteenth, one thousand eight hundred and eighty-five.

186 (1885, c. 145, p. 181.)

187     "A supplement to an act entitled 'An act for the preservation of fish,' approved

188 April thirteenth, one thousand eight hundred and seventy-six," passed March thirty-

189 first, one thousand eight hundred and eighty-five.

190 (1885, c. 180, p. 238.)

191     "An act to amend an act entitled 'An act to empower fish wardens to enforce

192 game laws," approved April tenth, one thousand eight hundred and eighty-five.

193 (1886, c. 17, p. 26.)

194     "An act to amend an act entitled 'Supplement to an act regulating fisheries,' ap-

195 proved March third, one thousand eight hundred and eighty-two," approved Febru-

196 ary fifteenth, one thousand eight hundred and eighty-six.

197 (1886, c. 40, p. 52.)

198     "A further supplement to an act entitled 'An act to amend and consolidate the

199 several acts relating to game and game fish,' approved March twenty-seventh, one

200 thousand eight hundred and seventy-four," approved March first, one thousand

201 eight hundred and eighty-six.

202 (1886, c. 85, p. 113.)

203     "An act for the protection and to limit the time and manner of killing European

204 pheasants and other game birds of foreign origin," approved March twenty-second,

205 one thousand eight hundred and eighty-six, effective July fourth.

206 (1886, c. 88, p. 118.)

207     "A further supplement to the act entitled 'An act to amend and consolidate the





JA1090

8

208 several acts relating to game and game fish,' approved March twenty-seventh, one

209 thousand eight hundred and seventy-four," approved March twenty-second, one thou-

210 sand eight hundred and eighty-six.

211 (1886, c. 181, p. 242.)

212     "A supplement to an act to repeal the first section of an act entitled 'An act for

213 the protection of fish,' approved April sixteenth, one thousand eight hundred and

214 eighty-four," passed April sixteenth, one thouusand eight hundred and eighty-six.

215 (1886, c. 184, p. 252.)

216     "A supplement to the act entitled 'An act for the protection of fisheries in this

217 State,' approved March twenty-first, one thousand eight hundred and seventy-four,"

218 approved April twentieth, one thousand eight hundred and eighty-six.

219 (1886, c. 206, p. 311.)

220     "An act to amend an act entitled 'An act for the protection of fish,' approved

221 March twenty-fifth, one thousand eight hundred and eighty-one," approved April

222 twenty-eighth, one thousand eight hundred and eighty-six.

223 (1886, c. 208, p. 312.)

224     "An act for the preservation of squirrels," approved April twenty-eighth, one

225 thousand eight hundred and eighty-six.

226 (1886, c. 262, p. 388.)

227     "A supplement to 'An act for the preservation of fish,' approved April fifth, one

228 thousand eight hundred and seventy-eight," passed June first, one thousand eight

229 hundred and eighty-six.

230 (1887, c. 42, p. 55.)

231     "A further supplement to an act to repeal the first section of an act entitled

232 'An act for the protection of fish,' approved April sixteenth, one thousand eight

233 hundred and eighty-four," approved March twenty-eighth, one thousand eight hun-

234 dred and eighty-seven.

235 (1887, c. 82, p. 114.)

236     "An act to amend an act entitled 'A supplement to an act entitled 'An act for

237 the preservation of fish,' approved April fifth, one thousand eight hundred and

238 seventy-eight, which said supplement was approved March seventeenth, one thousand





JA1091

9

239 eight hundred and eighty-two," approved April first, one thousand eight hundred

240 and eighty-seven.

241 (1888, c. 34, p. 47.)

242     "An act to amend an act entitled 'An act to amend an act entitled "A supple-

243 ment to an act entitled 'An act for the preservation of fish,' '" approved April fifth,

244 one thousand eight hundred and seventy-eight, which said supplement was approved

245 March seventeenth, one thousand eight hundred and eighty-two,' approved April

246 first, one thousand eight hundred and eighty-seven," approved February fifteenth,

247 one thousand eight hundred and eighty-eight.

248 (1888, c. 54, p. 577.)

249     "An act for the preservation of fish in the Hackensack river and its tributaries

250 or branches, within the counties of Bergen and Hudson," passed February twenty-

251 first, one thousand eight hundred and eighty-eight.

252 (1888, c. 74, p. 106.)

253     "A supplement to an act entitled 'An act to amend and consolidate the several

254 acts relating to game and game fish,' approved March twenty-seventh, one thou-

255 sand eight hundred and seventy-four," approved February twenty-eighth, one thou-

256 sand eight hundred and eighty-eight.

257 (1888, c. 252, p. 368.)

258     "An act to divide the counties of this State into two sections, to be known as

259 game sections, and to fix the time for shooting certain game birds and animals

260 therein," approved April second, one thousand eight hundred and eighty-eight.

261 (1888, c. 298, p. 450.)

262     "An act relative to fishing in the river Delaware," approved April seventeenth,

263 one thousand eight hundred and eighty-eight.

264 (1889, c. 13, p. 25.)

265     "A further supplement to the act entitled 'An act for the protection of game

266 and game fish,' approved April fourth, one thousand eight hundred and seventy-

267 eight," approved February twenty-fifth, one thousand eight hundred and eighty-nine.

268 (1889, c. 113, p. 162.)

269     "Supplement to an act entitled 'An act to consolidate the several acts relating

270 to game and fish in this State,' " approved April third, one thousand eight hundred



JA1092

10

271 and eighty-nine.

272 (1889, c. 290, p. 455.)

273     "A further supplement to 'An act to amend and consolidate the several acts

274 relating to game and game fish,' approved March twenty-seventh, one thousand

275 eight hundred and seventy-four," approved May thirteenth, one thousand eight

276 hundred and eighty-nine.

277 (1891, c. 143, p. 277.)

278     "Supplement to an act entitled 'An act to consolidate the several acts relating

279 to game and fish in this State,'" approved April second, one thousand eight hundred

280 and ninety-one.

281 (1891, c. 149, p. 301.)

282     "A further supplement to an act entitled 'An act to consolidate the several acts

283 relating to game and fish in this State,'" approved April second, one thousand eight

284 hundred and ninety-one.

285 (1891, c. 186, p. 361.)

286     "A supplement to an act entitled 'An act to provide for the better protection of

287 the fishing interests of this State,' approved April fifth, one thousand eight hundred

288 and seventy-eight," approved April fourteenth, one thousand eight hundred and

289 ninety-one.

290 (1891, c. 193, p. 370.)

291     "A further supplement to an act entitled 'An act to amend and consolidate the

292 several acts relating to game and game fish,' approved March twenty-seventh, one

293 thousand eight hundred and seventy-four," approved April fourteenth, one thou-

294 sand eight hundred and ninety-one.

295 (1891, c. 216, p. 410.)

296     "Supplement to an act entitled 'An act for the preservation of fish in the

297 Hackensack river and its tributaries or branches within the counties of Bergen and

298 Hudson,' approved February twenty-first, one thousand eight hundred and eighty-

299 eight," approved April fourteenth, one thousand eight hundred and ninety-one.

300 (1892, c. 150, p. 259.)

301     "A supplement to an act entitled 'An act for the protection and to limit the

302 time and manner of killing European pheasants and other game birds of foreign

11

303 origin,' approved March twenty-second, one thousand eight hundred and eighty-
304 six," approved March twenty-fourth, one thousand eight hundred and ninety-two.

305 (1893, c. 27, p. 44.)

306      "An act for the protection of certain kinds of birds, animals and fish, and to
307 provide a procedure to recover penalties for the violation thereof," approved Febru-
308 ary twenty-eighth, one thousand eight hundred and ninety-three.

309 (1894, c. 100, p. 154.)

310      "A supplement to an act entitled 'An act for the protection of certain kinds of
311 birds, animals and fish, and to provide a procedure to recover penalties for the
312 violation thereof,' approved February twenty-eighth, one thousand eight hundred
313 and ninety-three," approved April twenty-sixth, one thousand eight hundred and
314 ninety-four.

315 (1894, c. 313, p. 470.)

316      "A supplement to an act entitled 'An act for the protection of certain kinds of
317 birds, animals and fish, and to provide a procedure to recover penalties for the
318 violation thereof,' approved February twenty-eighth, one thousand eight hundred
319 and ninety-three," approved May twenty-second, one thousand eight hundred and
320 ninety-four.

321 (1894, c. 314, p. 471.)

322      "Supplement to an act entitled 'An act for the protection of certain kinds of
323 birds, animals and fish, and to provide a procedure to recover penalties for the vio-
324 lation thereof,' approved February twenty-eighth, one thousand eight hundred and
325 ninety-three," approved May twenty-second, one thousand eight hundred and
326 ninety-four.

TRESPASSES (FOR TAKING FISH).

327 (1894, c. 49, p. 61.)

328      "An act concerning trespassing on private lands," approved April twelfth, one
329 thousand eight hundred and ninety-four.

1      2. This act shall take effect immediately, and the repeal of the above entitled
2 acts, or parts thereof, shall not be construed to revive any act which may have
3 been repealed by any of the acts hereby repealed.

JA1094

SENATE No. 242

| SENATE, | HOUSE OF ASSEMBLY, |
|---|---|
| March 13th 1928 | March 29 1928 |
| This bill having been three times read in the Senate, | This bill having been three times read and compared in the House of Assembly, |
| RESOLVED, That the same do pass. | RESOLVED, That the same do pass. |
| By order of the Senate. | By order of the House of Assembly. |
| *William A. Stevens* | *Thomas L. Hanson* |
| President of the Senate. | Speaker of the House of Assembly. |

| SENATE, | HOUSE OF ASSEMBLY, |
|---|---|
| 1928 | 1928 |
| This bill having been three times read in the Senate, | This bill having been three times read and compared in the House of Assembly. |
| RESOLVED, That the same do pass as amended. | RESOLVED, That the same do pass as amended. |
| By order of the Senate. | By order of the House of Assembly. |
| President of the Senate. | Speaker of the House of Assembly. |

JA1095

# EXHIBIT U

New Jersey Statutes, 2A:63–1

[as published]

# NEW JERSEY STATUTES
# ANNOTATED

### Title 2A
### ADMINISTRATION OF CIVIL AND
### CRIMINAL JUSTICE

### 2A:53A to 2A:65C



**THOMSON REUTERS**

Mat #41425517



I hereby certify that the foregoing is a true copy
of the original record on file in the New Jersey
State Archives, Department of State.

*Joseph R. Klett*

Address;
New Jersey State Archives       **Joseph R. Klett**
P.O. Box 307                    Executive Director
225 West State St.              N. J. State Archives
Trenton, N.J. 08625

JA1097

# CHAPTER 63

# TRESPASS UPON LANDS

**Section**
2A:63–1.   What constitutes; notice; action; damages.

## 2A:63–1.   What constitutes; notice; action; damages

Any person who, while carrying a gun, shall trespass on any lands, except fresh meadow lands over which the tide has ebbed and flowed continuously for 20 years or more, after (a) having been forbidden so to trespass by the owner, occupant, lessee or licensee of such lands or (b) after such owner, occupant, lessee or licensee has given public notice forbidding such trespass, which notice has been conspicuously posted adjacent to the highway bounding on such lands or adjacent to a usual entry way thereto, shall be deemed guilty of trespass at the suit of such owner, occupant, lessee or licensee, in a civil action and liable for damages of not less than $10.00.

### Historical and Statutory Notes

**Source:**

R.S. 2:77–1 (enacted, New Jersey Revised Statutes, 1937).

L.1895, c. 148, §§ 1, 2, p. 307 [C.S. p. 5653, §§ 2, 3], amended by L.1911, c.

145, §§ 1, 2, pp. 209, 210 [1924 Suppl. §§ 220–2, 220–3].

### Cross References

Agricultural or horticultural lands, willful trespasses, see N.J.S.A. § 4:17–2.
Animals, stray and trespassing animals, see N.J.S.A. § 4:21–1 et seq.
Criminal trespass, see N.J.S.A. § 2C:18–3.
Escheated or escheatable real estate, trespass, see N.J.S.A. § 2A:37–10.
Executors and administrators, actions by and against, see N.J.S.A. §§ 2A:15–3, 2A:15–4.
Fires, no action for trespass while extinguishing, see N.J.S.A. § 13:9–17.
Limitation of actions for trespass, see N.J.S.A. § 2A:14–1.
Railroad tracks and cars, trespass on, see N.J.S.A. §§ 2C:18–3, 48:12–152.
Trespass for hunting or fishing where notice posted, see N.J.S.A. § 23:7–1 et seq.

### Law Review and Journal Commentaries

Liability to trespasser, licensee and invitee. 97 N.J.L.J. 17 (1974).

### Library References

Trespass ⬢9.
Westlaw Topic No. 386.
C.J.S. Trespass §§ 8 to 12, 24 to 25, 69.

537

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br> *Plaintiffs,* <br> v. <br> WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C. | No. 22-CV-7463 (RMB) (AMD) |

MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,
*Defendants*.

## CERTIFICATION OF SARAH ADELMAN

Sarah Adelman, of full age, upon her oath certifies and says:

1.     I am the Commissioner of the New Jersey Department of Human
Services (DHS or Department). The Department's programs serve one in three
New Jersey children and one in five adults, with a budget of approximately $26
billion in state and federal funds and a staff of about 7,500.

2.     I received my Bachelor of Arts summa cum laude from Rowan
University and a certificate in Advanced Healthcare Leadership from Seton Hall
University as a fellow in the inaugural class of the New Jersey Healthcare
Executives Leadership Academy.

3.     Before joining Governor Murphy's Administration, I served as Vice
President at the New Jersey Association of Health Plans and Chief of Staff at
the New Jersey Health Care Quality Institute. I also served on the Board of

Trustees for Samaritan Healthcare and Hospice and the Board of Directors for a statewide child abuse and neglect prevention program.

4.     I joined the Department in 2018, initially serving as a Deputy Commissioner, overseeing the Division of Developmental Disabilities, Division of Aging Services, and the Division of Medical Assistance and Health Services, which operates the Medicaid/NJ FamilyCare program.

5.     I have led DHS since January 2021, and was confirmed as Commissioner in March 2022. Under my leadership, the Department has helped New Jerseyans throughout the pandemic by, among other important initiatives, protecting health coverage for more than 2 million residents, and continuing to enhance mental health and addiction services.

6.     As DHS Commissioner, I have personal knowledge of the material facts of this Certification.

**<u>Facilities that provide mental health or addiction support services</u>**

7.     Pertinent to this litigation, the Department's Division of Mental Health and Addiction Services (DMHAS) oversees New Jersey's adult system of community-based behavioral health services. DMHAS regulates private agencies that provide a full array of services including but not limited to: outpatient and intensive outpatient mental health and addictions services, partial care and partial hospitalization, medication assisted treatment for substance

abuse, and long- and short-term mental health and substance abuse residential services.

8. Some of the individuals served in behavioral health settings have experienced past trauma and high rates of exposure to firearm violence, whether as witnesses or victims. Behavioral health providers are expected to provide treatment and services for these individuals in settings in which these individuals feel safe.

9. Introducing the possibility of concealed firearms into behavioral health treatment settings may cause heightened anxiety and fear among those seeking and providing services.  This may have deleterious effects on mental health and could lead to some individuals avoiding these settings, thereby not receiving needed treatment.

10. Additionally, some behavioral health settings provide services to individuals who are at risk of hurting themselves, others or property.  The potential of concealed firearms being introduced in these settings creates a significantly greater, and potentially catastrophic, risk of self-harm and harm to others.

11. Behavioral health provider agencies conduct environmental scans to create settings that are as safe as possible for those they serve.  These scans influence the type of furniture used, and remove access to ligature points (e.g.,

plumbing fixtures, doors and door hinges, air vents) to reduce the risk of harm. These careful measures would be undermined if firearms were allowed in behavioral health settings.

12.    The population receiving services will be negatively impacted if firearms are allowed in these settings.

## Intermediate Care Facilities for Persons with Developmental Disabilities

13.    Also pertinent to this litigation, the Department's Division of Developmental Disabilities (DDD) assures the opportunity for individuals with developmental disabilities to receive quality services and supports, participate meaningfully in their communities and exercise their right to make choices.

14.    DDD oversees five Intermediate Care Facilities (ICFs), known as developmental centers, with a workforce of about 4,000 employees. These ICFs provide 24/7 care to about 1,200 individuals, many of whom require specialized supports for complex medical and behavioral needs.

15.    The presence of firearms in any of these settings presents additional risk to employees and persons served. Individuals residing or attending programs in these settings have varying abilities and needs. Some individuals are unable to independently transfer/ambulate, recognize danger, understand/follow directions, or self-regulate stress/anxiety without intensive staff support.

16.     Certain individuals also display rule violating behavior and require constant re-direction for their safety and the safety of others.  Introducing firearms into these settings would create the danger of a resident or staff person taking possession of another person's firearm (by force or accident) and causing severe harm to themselves or others. For example, in the past, a resident at New Lisbon Developmental Center had to be restrained after attempting to grab the gun of a police officer who was visiting the facility.

**Skilled nursing homes and nursing homes**

17.     The Department's Division of Medical Assistance and Health Services (DMAHS) provides funding for Medicaid recipients at Nursing Facilities and Skilled Nursing Facilities. The Department's Division of Aging Services and DMAHS also determine eligibility for individuals who reside at these facilities, and the Medicaid program provides care management support for certain residents.  Nursing Facilities and Skilled Nursing Facilities provide care for medically complex individuals who require 24-hour nursing care for rehabilitative or custodial care purposes. Residents meet the clinical criteria of being unable to perform multiple activities of daily living, often including getting out of bed and walking.

18.     During an active shooter situation, many residents would be unable to shelter or evacuate. Certain residents would not have the capability to

recognize an active shooter situation or to safely carry out "shelter in place" activities.

19.    Additionally, law enforcement would have a difficult time locating victims, those who need to be evacuated, and the active shooter. Many residents would not have the capability to follow officers' instructions, alert authorities to their disabilities/medical condition, or evacuate independently. Rescuers would be put at extreme risk as evacuation efforts would be hindered.

20.    Moreover, residents with acute medical needs would be put at extreme medical risk by having rescuers attempt to evacuate them without recognition of life sustaining treatment devices or medical limitations. The presence of oxygen tanks used by residents would put the entire building at extreme risk in the event of gunshots, even if accidentally discharged, as a fire could erupt if a bullet struck an oxygen tank.

21.    Even the accidental discharge of a firearm could also cause confusion or panic among residents, which itself could have adverse health effects, let alone more intentional discharges.

22.    In short, residents and workers in nursing homes and skilled nursing homes face a severely heightened and intolerable risk in the event of a shooting, whether accidental or intentional.

The foregoing statements are true to the best of my knowledge, information, and belief.  I am aware that, if any of the statements are willfully false, I may be subject to punishment.

_____

SARAH ADELMAN
Commissioner
NJ Department of Human Services

Dated: February 10, 2023

JA1106

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br> *Plaintiffs,* <br> v. <br> WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C. | No. 22-CV-7463 (RMB) (AMD) |

1

MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,
*Defendants.*

## CERTIFICATION OF GEORGE FEDORCZYK

GEORGE FEDORCZYK, of full age, upon her oath certifies and says:

1.     I am the Chief of the New Jersey State Park Police (the "SPP"),

within the New Jersey Department of Environmental Protection ("NJDEP").

2.     As the Chief of the SPP, I have personal knowledge of the material

facts of this Certification.

3.     NJDEP administers New Jersey's state park land.

4.     Title 13 of the New Jersey Administrative Code provides the State

Park Police the authority to arrest without any warrant any person violating any

law of the State committed in their presence and bring the offender before any

court having jurisdiction to receive the complaint of such violation.

5.     Title 7 of the New Jersey Administrative Code is the State Park

Service Code. The primary responsibility of the State Park Police is to protect

the Natural Resources and Historic Treasures of our State Parks, Forests, and

2

Historic Sites and the safety, security, and well being of all who visit them. This includes Section 7:2-2.17 of the New Jersey Administrative Code, which references the use of any firearm or bow and arrow on State Park Service Property.

6. As Chief of the SPP, I currently supervise a staff of 82 law enforcement officers that are charged with patrolling and protecting visitors and enforcing laws and regulations to protect the assets and sensitive natural and cultural resources within State Parks. State Park Police Officers currently patrol 98 State Parks, Forests, Historic Sites and 6 marinas statewide. In addition to the State, Parks, Forests and Historic Sites the State Park Police responds to and provides law enforcement services to 114 Natural Land Trusts. The patrol area for the State Park Police currently encompasses over 450,000 acres of land and growing as new land acquisitions by the DEP continue. This presents an officer safety issue as most, if not all, officers patrol alone and are spread out across the state. Assistance from another State Park Police officer is not always immediate and can be any where from 30 to 60 minutes away.

7. NJDEP has broad authority to manage State Parks for recreational purposes. N.J.S.A. 13:1B-5(a); N.J.S.A. 13:1L-9; N.J.S.A. 13:1B-15.101(a); N.J.S.A. 13:1B-15.101(g); N.J.S.A. 28:1-4.

3

8.     In furtherance of its statutory directives, NJDEP has promulgated the State Park Service Administrative Code, N.J.A.C. 7:2, which governs the use of these State Parks.

9.     The State Park Service Administrative Code does not allow for the possession or discharge of a firearm or similar weapon in State Parks, unless for permitted recreational hunting in designated areas or other specifically approved firearm possession or use.   N.J.A.C. 7:2-2.17, -2.18(a), -2.22(a).   The DEP firearm restriction was adopted on October 7, 1991. NJDEP allows the State Park Police and Conservation Police or other law enforcement agencies to possess firearms in State Parks.

10.     Since 2012, the State Park Police has responded to an annual average of 172 complaints related to domestic violence, assaults, various disturbances, and disorderly persons offenses. Domestic related incidents account for 13 calls per year on average. These incidents are particularly dangerous for law enforcement. As explained by one domestic violence organization, "[s]tudies reveal that the lethality factor for police officers responding to domestic disturbances increases significantly because a police presence threatens the offender's perceived power. The abuser's emotions can begin to escalate due to a lack of power and control, and out of a desperate state, they may ultimately explode, prompting them to display totally disregard for a

4

police officer's safety or life. If drugs or alcohol are involved, this contempt is magnified."[1] For the calendar year of 2022, we saw a 10-year high with 220 complaints which include 22 domestic related incidents. The bulk of these responses occur during the high-volume season between Memorial Day and Labor Day. Potential firearm possession would add another issue that may result in escalation of the issue where service was requested.

11.     State Park Police does not have a system in place to determine if an individual visiting a State Park is currently approved for a concealed carry permit, meaning information is not available on whether officers should expect a firearm to be present at an incident prior to responding to a call. This creates an officer-safety concern, because "officers are forced to operate based on limited or inaccurate information."[2]

12.     Many campers arrive at State Parks with equipment that can be used as weapons. Edged tools such as axes, hatchets and knives are a regular occurrence at most, if not all, campsites. Park Police officers prepare for these potential weapons, but historically there is no expectation of concealed firearms during these encounters.

---

[1] *See* Genesis Women's Shelter & Support, *First Responder Lethality on Domestic Violence Calls* (Jul 26, 2021), https://www.genesisshelter.org/first-responder-lethality-on-domestic-violence-calls/.
[2] *Id.*

5

13.    If the unrestricted carry of firearms were permitted as a default by any visitor of a State Park, it would undermine public safety, given that State Parks host large events. State Park Police provide law enforcement services for all of the events hosted in the state parks and often require the assistance of outside agencies. The Veuve Clicquot Polo Classic is an annual event at Liberty State Park that brings 5,000-8,000 spectators in addition to the daily visitation. Fleet Week, also at Liberty State Park, draws 3,000-5,000 visitors. July 4th festivities can bring attendance around 60,000 visitors to Liberty State Park. These are just a few of the larger scale events hosted in our parks and require planning throughout the year. Allowing concealed firearms would put a larger burden on the planning of such events as most events will require some level of private security. Currently, the Veuve Clicquot Polo Classic is the only event that provides metal detectors at the entrance, but these are only accessible by ticketed spectators.

The foregoing statements are true to the best of my knowledge, information, and belief. I am aware that, if any of the statements are willfully false, I may be subject to punishment.

GEORGE FEDORCZYK
Chief

6

New Jersey State Park Police
New Jersey Department of
Environmental Protection

Dated: 2-10-2023

JA1113

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br> *Plaintiffs,* <br> v. <br> WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C. | No. 22-CV-7463 (RMB) (AMD) |

1

MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,
*Defendants.*

### CERTIFICATION OF BONNY FRASER

Bonny Fraser, of full age, upon her oath certifies and says:

1.     I am the Deputy Commissioner of Policy, Legal Affairs and
Compliance for the New Jersey Department of Children and Families (DCF or
Department), which is the state's first Cabinet-level agency devoted exclusively
to serving and supporting at-risk children and families.  It is made up of about
6,600 staff who are focused on and committed to assisting and empowering
residents to be safe, healthy and connected.  The DCF works to, inter alia,
prevent child maltreatment and promote strong families; provide an integrated
and inclusive system of care for youth; and safeguard staff.

2.     Prior to joining DCF, I worked with the New Jersey Department of
Human Services as Assistant Commissioner for Legal and Regulatory Affairs.
In that role, I was responsible for directing a wide range of legal support services
for that agency, oversaw the department's compliance and risk management =

JA1115

activities, managed tort and employment litigation, oversaw the Office of contract Policy and Management and served as a member of the Senior Management Team.

3.     As Deputy Commissioner, I oversee the Offices of Childcare Licensing, Youth Residential Licensing, Institutional Abuse Investigation, Education, Legal Affairs, Litigation, Employee Relations and Equal Employment Opportunity & Affirmative Action.  In addition, I provide legal and compliance support for the entire agency, including the Divisions of the Children's System of Care, Child Protection and Permanency, Family and Community Partnership, and Women, and various units and offices including the Offices of Resilience, Family Voice, and Diversity Equity and Belonging.

4.     My work with DCF frequently brings me into contact with federal regulators and state policymakers and leaders on addiction and behavioral health, as well as general social work issues.

5.     As Deputy Commissioner of DCF, I have personal knowledge of the material facts of this Certification.

6.     Children and families involved with DCF frequently require services related to physical health, mental health or substance abuse.  DCF oversees health screenings at its offices to determine whether further care or

services are required for a child in DCF care.  Local offices have consultants on site who perform these functions.

7.    DCF  has the authority to remove children from their parents or other caregivers due to abuse—including but not limited to physical or sexual abuse—or neglect by way of it's Division of child Protection and Permanency (DCP&P).  Indeed, in 2022 86% of children in DCF care have been involved in a violent incident at least once, and 86% have a parent struggling with mental health or substance abuse.

8.    When DCP&P becomes involved with a family due to child welfare concerns, and particularly when intervention results in the removal of a child from a family, relationships with parents or other caregivers are strained as these are instances that are extremely personal and emotional to those involved.  DCF gets involved with crises situations due to substance abuse, mental health issues and so forth, whereby its involvement often increases the stressors on the families/individuals involved because of the focus on children.

9.    In order to provide a safe and secure environment wherein parents may visit children in DCF care, parental visitations frequently occur in one of 46 DCF offices, supervised by DCP&P or contracted staff.

10.    Department staff routinely are threatened with violence. In 2022, DCF Security and Safety Operations tracked seventy-three (73) instances where

JA1117

DCF employees were threatened with violence by clients or the public, and there were seven (7) assaults on employees in the same year. That is an increase in incidents from 2020 and 2021.

11.    Partly due to routine threats against DCF staff, firearms currently are prohibited at all DCF offices, except for uniformed officers and security. Signage is posted in each DCF office stating: For your safety and ours, the following items are prohibited when being transported by DCF staff or visiting a DCF/DCP&P office...."   That list includes firearms. Additionally, guests entering DCF offices, including parents visiting their children in DCF care, must pass through security to enter the office.  Each visitor or client enters each DCF office through a designated entrance where security is stationed. They are required to sign in with a form of photo identification and logged into a visitor management system prior to entry.  They are then accompanied by staff and security through a secure door to the main body of the office.  They are directed where to go and are monitored by caseworkers and security to ensure everyone's safety.

12.    If unrestricted concealed carry were permitted in DCF offices, it would create an atmosphere of heightened stress and fear for staff, as well as children in care, resource parents, as well as other parents and caregivers and professionals visiting DCF locations.   Staff already contend with difficult

5

situations and safety risks by the nature of their involvement in child welfare cases where parental - and even childhood - mental health and substance abuse are common issues. Allowing concealed weapons would further endanger staff and visitors to DCF facilities. As noted above, in DCP&P cases relationships between the caregivers, children and agency staff can be strained due to the nature of the agency's role, and DCF staff are already frequently threatened.

13.   It is imperative for the security of DCF staff, the children in DCF care, and all family members involved, that DCF facilities and offices remain secure and free of firearms except those possessed by security personnel.

14.   DCF additionally operates 16 regional schools and two hospital-based satellite programs, including:  programs for at-risk youth, and programs for pregnant and parenting teens with licensed day care centers for the infants/toddlers of the parenting teens.

15.   These State and federally compliant education programs are designed for students who exhibit severe cognitive, physical, behavioral and emotional disabilities; exhibit a variety of moderate to severe learning disabilities; are at risk of school failure; and/or are pregnant/parenting teens.

16.   Regular and special education programs are individually designed and provided to these students in the least restrictive environment.

JA1119

17.     Pursuant to statute, N.J.S.A. 2C:39-5(e), concealed weapons are currently prohibited at DCF school facilities.

18.     As with other DCF offices and for the same reasons described above, it is imperative for the security of DCF staff, the children in DCF care, and all family members involved, that DCF schools and programs remain secure and free of firearms except those possessed by security personnel.

19.     DCF also licenses more than 4000 child care centers across the state. Like school locations, these are particularly sensitive sites.  More so even than schools, however, these programs restrict the presence of potentially dangerous conditions due to the particularly young ages of the children in care, which typically extend from infancy through grade school.  Children this young are ill prepared for any of the precautionary measures necessary to guard against gun usage in a center (e.g. children who are too young to be independently mobile cannot practice evacuation drills), and most centers are too small to provide armed security personnel of their own.

20.     Through contracted providers, DCF's Children's System of Care licenses and provides funding for youth residential facilities that serve youth experiencing mental, emotional and behavioral health needs as well as those requiring substance use disorder treatment whose treatment needs require them to be placed outside of the home.

JA1120

21.   Additionally, DCF schools, licensed child care centers and contracted residential facilities, are sensitive places wherein the presence of firearms would compromise the safety and security of teachers, staff, and vulnerable students and clients.

The foregoing statements are true to the best of my knowledge, information, and belief.  I am aware that, if any of the statements are willfully false, I may be subject to punishment.

BONNY FRASER
Deputy Commissioner
New Jersey Department of Children and
Families

Dated: 2/13/2023

JA1121

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC.,<br><br>     Plaintiffs,<br><br>v.<br><br>MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,<br><br>     Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY,<br>*Plaintiffs,*<br>v.<br>WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C. | No. 22-CV-7463 (RMB) (AMD) |

1

JA1122

MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,
*Defendants.*

## CERTIFICATION OF STEVEN GORELICK

I, Steven Gorelick, with offices located at 153 Halsey Street, Newark, NJ

07102, do hereby provide the following Certification.

1.      I currently serve as the Executive Director of the New Jersey Motion

Picture and Television Development Commission.

2.      In my capacity as Executive Director, I am thoroughly familiar with

the activities of the Commission with regard to assisting motion picture or

television companies seeking to film at locations within the State of New Jersey.

3.      I specifically provide this Certification with regard to Section 7.a (23)

of Chapter 131 of the Laws of 2022 which designates as a place where the carrying

of a firearm or destructive device is prohibited "a public location being used for

making motion picture or television images for theatrical, commercial or

educational purposes, during the time such location is being used for that purpose."

JA1123

4.      I am providing this Certification for the edification of the Court because movie sets are generally closed to the public. Not only would someone carrying a functional firearm or destructive device be prohibited from a motion picture or television location set, but the same would generally apply to a person without a weapon or destructive device.

5.      Production of motion pictures and television programs has become a burgeoning industry in New Jersey.  New Jersey is attractive because it has a wide variety of locations within a small geographic area, making shooting on location in New Jersey efficient and cost effective.

6.      Our office assists producers, directors, and location managers with regard to the procurement of desired locations and offer them assistance in negotiating the use of public and private properties.

7.      Permits are generally required for filming at such locations as county, state and national parks and historic sites, state and county highways, railroad and airport terminals and military posts.  https://www.nj.gov/state/njfilm/regulations-firearms.shtml.  Our office will assist production companies in obtaining these permits.

8.      The use of private properties is obtained by contractual agreement between the production company and the property owner, and where necessary

JA1124

and/or applicable, our office will assist production companies in working with local police to provide security.

9.      With regard to public properties such as streets, roads or parks, our office plays an active role in obtaining assistance from local governing bodies to close off these locations from public access and provide security with local police supplemented by other security guards and other employees of the production company.

10.     In some cases, the individual talent (i.e., actors, actresses), will have personal security guards when there is the problem of stalkers or overly aggressive fans that are to be kept outside of the location.

11.     Typically, a location involves a significant amount of expensive equipment, many trucks and other vehicles, and the many employees involved in the production, sometimes exceeding 100 persons.

12.     Therefore, access to these locations is typically restricted and controlled.

13.     Our experience over the past three years during the covid pandemic is instructive with regard to the security of location sets. During the time of the health emergency, all persons permitted on the sets of union productions and even many non-union productions had to produce negative covid tests. This even

JA1125

applied to official visits.  The point is that location set security is applied

scrupulously without discrimination.

I hereby certify that all of the statements made in this Certification by me are

true.

New Jersey Motion Picture and Television
Development Commission

Date: _2/13/23_         By: _____

Steven Gorelick
Executive Director

JA1126

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., | No. 22-CV-7463 (RMB) (AMD) |

Plaintiffs,

v.

MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,

Defendants.

| | |
|---|---|
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, | No. 22-CV-7463 (RMB) (AMD) |

*Plaintiffs,*

v.

WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C.

1

JA1127

Privileged & Confidential | Advisory, Deliberative, Consultative | Work Product | DRAFT

MACAULAY in her official capacity as the Prosecutor of Camden County, New Jersey; ANNEMARIE TAGGART in her official capacity as the Prosecutor of Sussex County, New Jersey; MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,
*Defendants*.

## CERTIFICATION OF ROBIN MADDEN

ROBIN MADDEN, of full age, upon her oath certifies and says:

1.     I am the Chief of Operations of the Assistant Commissioner's Program Area of State Parks, Forests & Historic Sites (the "SPF&HS"), within the New Jersey Department of Environmental Protection ("NJDEP").

2.     As the Chief of Operations for SPF&HS, I have personal knowledge of the material facts of this Certification.

3.     Through the SPF&HS, NJDEP administers New Jersey's state park land.

4.     As Chief of Operations, on behalf of the Assistant Commissioner, I oversee and provide guidance and direction to State Park Service management and personnel who handle the day-to-day operations of State Parks.

JA1128

5.   NJDEP has broad authority to manage State Parks for recreational purposes.   N.J.S.A. 13:1B-5(a); N.J.S.A. 13:1L-9; N.J.S.A. 13:1B-15.101(a); N.J.S.A. 13:1B-15.101(g); N.J.S.A. 28:1-4.

6.   In furtherance of its statutory directives, NJDEP has promulgated the State Park Service Administrative Code, N.J.A.C. 7:2, which governs the use of these State Parks.

7.   The State Park Service Administrative Code does not allow for the possession or discharge of a firearm or similar weapon in State Parks, unless for permitted recreational hunting in designated areas or other specifically approved firearm possession or use.   N.J.A.C. 7:2-2.17, -2.18(a), -2.22(a). The DEP firearm restriction was adopted on October 7, 1991. NJDEP allows the State Park Police and Conservation Police or other law enforcement agencies to possess firearms in State Parks. Additionally, the State Park Service hosts historical re-enactments to commemorate significant historical battles and related events, utilizing antique weapons. Those weapons must be stored and used in compliance with a comprehensive black powder policy, last revised in 2014, in order to ensure the safety of both participants and spectators. Allowing the unrestricted carrying of firearms in State Parks would be contrary to NJDEP's policy of State Parks generally being gun free zones.

8.     NJDEP set this policy because it is interested in preventing weapons from being carried in State Parks, as they are public places that vary in size and character through New Jersey, which attracts a wide range of visitors and hosts numerous large, crowded events.

9.     New Jersey's residents, out-of-State tourists, and their families come to State Parks to enjoy recreating in the outdoors, staying overnight, visit historic sites and visitor centers, and/or attend events.

10.    There are frequently many children present at State Parks.

11.    During the summer months, State Parks are often filled for recreational activities, including swimming, picnicking and camping.

12.    For instance, day use and overnight visitation numbers for fiscal year 2022 was over 17 million visitors. Many times are campsites are filled to capacity in some locations.

13.    State Parks are also often locations for large events, ranging from marathons to charitable fundraisers to organized protests, where as many as tens of thousands of visitors may be in attendance.

14.    July 4th brings visitation to some of the highest numbers seen by the parks overall. Typically, visitation is in excess of 60,000 visitors across the State. The Veuve Clicquot Polo Classic, an annual staple event, will be returning

4

to Liberty State Park in 2023 with attendance expected to reach anywhere to 5,000-8,000 in excess of the daily visitation to the park.

15. State Park visitors may purchase and consume alcohol at State-approved and regulated vendors within State Parks. Some of these vendors include Special event caterers that host weddings and other celebrations.

16. It is important to NJDEP and the State that visitors to State Parks have a sense of security and peaceful enjoyment while visiting State Parks, in order to further the purpose of the State Park system and protect the public welfare.

The foregoing statements are true to the best of my knowledge, information, and belief. I am aware that, if any of the statements are willfully false, I may be subject to punishment.

_Robin Madden_

ROBIN MADDEN
Chief of Operations
Assistant Commissioner's Program Area,
State Parks, Forests & Historic Sites
New Jersey Department of
Environmental Protection

Dated: 2/10/23

5

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., | No. 22-CV-7463 (RMB) (AMD) |

Plaintiffs,

v.

MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police,

Defendants.

| | |
|---|---|
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, | No. 22-CV-7463 (RMB) (AMD) |

*Plaintiffs,*

v.

WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C.

1

JA1132

MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,
*Defendants*.

## CERTIFICATION OF JUDITH A. NASON

Judith A. Nason, of full age, upon her oath certifies and says:

1.     I am the Executive Director of the New Jersey Racing Commission
("NJRC" or "Commission"), which regulates horse racing, pari-mutuel
wagering, and exchange wagering in New Jersey and is responsible for ensuring
the integrity of the sport.

2.     As the Executive Director, I oversee NJRC staff, who are tasked
with regulating horse racing, including the permitting and licensing procedures
of horse owners, trainers, drivers, jockeys, veterinarians, and others involved in
the sport.

3.     As the Executive Director of the NJRC, I have personal knowledge
of the material facts of this Certification.

JA1133

4.   The NJRC has broad authority pursuant to N.J.S.A. 5:5-30 to prescribe the rules and conditions under which horse races shall be conducted. The NJRC oversees the licensure of horse owners, trainers, drivers, and veterinarians involved in the sport as well as the issuance of permits for race meetings. Each year, the NJRC issues an order, with conditions, to grant each permit.

5.   Current racetracks in New Jersey include Meadowlands Racetrack, Monmouth Park, and Freehold Raceway. Freehold Raceway is owned and operated by private entities. Meadowlands Racetrack and Monmouth Park are owned by the State and leased to private entities, which hold the race permits.

6.   Currently, Meadowlands Racetrack requires all patrons entering the racetrack to pass through metal detectors. Monmouth Park and Freehold Raceway do not currently have such a requirement.

7.   Allowing unrestricted concealed carry in racing venues would pose a threat to public safety given the sensitive nature of racetracks. Racetracks are sensitive places for several reasons.

8.   A racetrack can be a crowded venue, depending on the day. It is a family-friendly locale that is particularly favored by older members of the population. Accordingly, there are frequently many children as well as many older persons present at a racetrack.

JA1134

9.     Moreover, by virtue of the wagering enterprise, emotions run high at the racetrack. Patrons may put large amounts of money at stake and bet for the success of rival horses. The experience of either winning or losing big may place patrons in a heightened emotional state.

10.     Given the emotional nature of wagering, the consumption of alcohol at the track, and the money at stake, the racetrack is a place ripe with the potential for conflict.

11.     The presence of horses at the racetrack would compound the danger of a shooting, whether intentional or unintentional. Race horses are large, volatile, skittish, and strong. If the race horses were disturbed by the sound of even one gunshot, they could harm jockeys, drivers, workers, and patrons.

12.     Moreover, while plainly less important than the threat to public safety, a gunshot fired during a race could disturb the horses which would undermine the integrity of the competition and compromise the wagers placed thereupon.

13.     If concealed carry were permitted as a default by any patron at a racetrack, it would undermine public safety at the racetrack and could compromise the integrity of the competition.

14.     On January 30, 2023, a Temporary Restraining Order was entered in *Siegel, et al. v. Platkin, et al.* which prevents enforcement of Section 7(a)(17)

JA1135

of Chapter 131, new legislation prohibiting concealed carry in racetracks. Since that time, the NJRC has learned that the permit holders at all three racetracks, who operate the racetracks privately, have decided to prohibit concealed carry on racetrack premises, including the sportsbook located there.

The foregoing statements are true to the best of my knowledge, information, and belief.  I am aware that, if any of the statements are willfully false, I may be subject to punishment.

JUDITH A. NASON
Executive Director
New Jersey Racing Commission

Dated:  February 9, 2023

5

JA1136

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br> *Plaintiffs,* <br> v. <br> WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic County, New Jersey; GRACE C. | No. 22-CV-7463 (RMB) (AMD) |

JA1137

MACAULAY in her official capacity as
the Prosecutor of Camden County, New
Jersey; ANNEMARIE TAGGART in her
official capacity as the Prosecutor of
Sussex County, New Jersey; MATTHEW
J. PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in
his official capacity as Superintendent of
the New Jersey State Police,
*Defendants*.

## CERTIFICATION OF DAVID L. REBUCK

David L. Rebuck, of full age, upon his oath certifies and says:

1.      I am the Director of the Division of Gaming Enforcement ("DGE"
or "Division"), the casino regulatory agency within the Department of Law and
Public Safety.

2.      As the Director, I am responsible for, inter alia, overseeing
enforcement of the Casino Control Act, N.J.S.A. 5:12-1 *et seq*, the review and
audit of casino-hotel operations, and the investigation and prosecution of all
casino-related crimes.

3.      In this role, I oversaw the Division's implementation of the Clean
and Safe Mission established as part of Senate Bill S-11 (Feb. 1, 2011).  This
effort enhanced casino security and surveillance operations and established a
policy to exclude individuals from casino hotels who repeatedly disrupt casino
operations or threaten the safety of casino patrons and employees.

4.     As the Director of DGE, I have personal knowledge of the material facts of this Certification.

5.     DGE exercises authority over the entire casino complex, including hotel amenities, bars, restaurants, and parking lots.  In non-gaming areas, this authority is shared with the Atlantic City Police Department and the Atlantic County Prosecutor's Office. In gaming areas, the authority is shared with the New Jersey State Police and the Division of Criminal Justice.

6.     A primary concern for DGE is ensuring that patrons feel and are safe when they come to casinos.  For this reason, DGE promulgated a regulation which restricts access to firearms to protect the safety of patrons and workers within the casino complex. However, that regulation is currently enjoined by a temporary restraining order (TRO) issued in the litigation, *Siegel, et al. v. Platkin, et al.*, on January 30, 2023.

7.     The restriction on firearms in a casino hotel complex was established in 1978 by New Jersey Casino Control Commission regulation, N.J.A.C. 19:45-1.13, and continued by DGE in 2011 when DGE was authorized by statute to oversee all casino hotel complex operations. When in effect, DGE's regulation, N.J.A.C. 13:69D-1.13, prohibited individuals, including casino security guards but excluding law enforcement officers responding to an incident, from possessing firearms within a casino or casino simulcasting

facility without having obtained express written approval from the Division. N.J.A.C. 13:69D-1.13(a).  To obtain that approval, an individual was required to show that they received adequate training in the possession and use of a firearm, hold a valid license for the possession of a firearm, and have a compelling need for the possession within the casino facility.  N.J.A.C. 13:69D-1.13(b).

8.     Additionally, DGE's regulation required that casinos post conspicuous signs informing patrons that firearms are not allowed within the casino complex without the express written permission of DGE.

9.     N.J.A.C. 13:69D-1.13 was enjoined on January 30, 2023. As of February 2, 2023, all casino licensees in New Jersey have informed DGE that at present, they intend to exercise their right to prohibit carrying firearms on their premises.

10.     Instances of misplaced firearms occur at Atlantic City casinos, and it is likely that if concealed carry were to be permitted at these facilities, there would be an increase in such incidents and a corresponding increase in safety risks for patrons and staff. For instance, in 2022 alone, there were approximately 17 instances of firearms left behind in casino hotel rooms, 6 instances of firearms left in vehicles at the casinos, 5 reports of individuals attempting to enter casino properties with firearms without authorization, 3 incidents of guns

recovered while police were responding to reports of domestic disputes or assaults, and additional incidents of guns reported lost or stolen (e.g. missing from safe, stolen out of car, left in a purse), or guns or ammunition left in other locations in the casino complex (e.g. restroom, gift shop, slot machines). Each of these instances represents a threat to public safety due to the potential for unauthorized access and accidental discharge of weapons.

11.     The casino hotel complex is also a large, enclosed, indoor space, filled with patrons and workers, where an active shooter event or the accidental discharge of a firearm could have a particularly severe impact.

12.     Allowing concealed carry in casinos would present a huge logistics and resource burden for law enforcement, casino operators, and the DGE, and require a massive increase in law enforcement or armed security guards to prevent crimes and protect patrons.

13.     The regulatory scheme that was in effect before the TRO ensures that only those in need of carrying a firearm within the casino may do so which minimizes the number of firearms within the casino complex and strikes an appropriate balance that keeps casinos safe.


The foregoing statements are true to the best of my knowledge, information, and belief.  I am aware that, if any of the statements are willfully

false, I may be subject to punishment.

_____
DAVID L. REBUCK
Director, Division of Gaming Enforcement
State of New Jersey
Department of Law and Public Safety

Dated:   February 6, 2023

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| AARON SIEGEL, JASON COOK, JOSEPH DELUCA, NICOLE CUOZZO, TIMOTHY VARGA, CHRISTOPHER STAMOS, KIM HENRY, AND ASSOCIATION OF NEW JERSEY RIFLE AND PISTOL CLUBS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW J. PLATKIN, in his official capacity as Attorney General of the State of New Jersey; and PATRICK CALLAHAN, in his official capacity as Superintendent of the New Jersey State Police, <br><br> Defendants. | No. 22-CV-7463 (RMB) (AMD) |
| RONALD KOONS; NICHOLAS GAUDIO; JEFFREY M. MULLER; SECOND AMENDMENT FOUNDATION; FIREARMS POLICY COALITION, INC.; COALITION OF NEW JERSEY FIREARM OWNERS; and NEW JERSEY SECOND AMENDMENT SOCIETY, <br><br> *Plaintiffs,* <br><br> v. <br><br> WILLIAM REYNOLDS in his official capacity as the Prosecutor of Atlantic | No. 22-CV-7463 (RMB) (AMD) |

JA1143

County, New Jersey; GRACE C.
MACAULAY in her official capacity as the
Prosecutor of Camden County, New Jersey;
ANNEMARIE TAGGART in her official
capacity as the Prosecutor of Sussex
County, New Jersey; MATTHEW J.
PLATKIN, in his official capacity as
Attorney General of the State of New
Jersey; and PATRICK CALLAHAN, in his
official capacity as Superintendent of the
New Jersey State Police,

*Defendants.*

### DECLARATION OF HENDRIK HARTOG

I, Hendrik Hartog, do hereby certify as follows:

**<u>Background</u>**

1. I am the Class of 1921 Bicentennial Professor in the History of American
   Law and Liberty, Emeritus at Princeton University. I taught at Princeton
   University from 1992 to 2019, when I retired. Prior to that, I taught at the
   University of Wisconsin Law School and the Indiana University School of
   Law.

2. I obtained my Ph.D. in History of American Civilization from Brandeis
   University in 1982. I obtained my J.D. from New York University School
   of Law in 1973. I received my A.B. from Carleton College in 1970.

3. I am the author of five published books, including two books on New Jersey
   legal history. I am also the coeditor of several other books, and the author of
   many articles in law journals and history journals.

4. Much of my scholarly life has been immersed in the question of how to read
   eighteenth and nineteenth century statutes, particularly local and regulatory
   statutes. I have written a great deal about the social history of American
   rights, including writings on property law. My scholarship has also focused
   on how constitutional doctrine has shaped legislative practices, as well as the
   question of how legislative practices and understandings have shaped
   constitutional doctrine.

5. My first book, *Public Property and Private Power: the Corporation of the City of New York in American Law*, 1730-1870 (1983) was about eighteenth century American statutes.

6. Early in my career as a scholar, I researched and published an article about eighteenth century regulatory practices, including efforts to limit hunting out of season. *See* H. Hartog, "The Public Law of a County Court: Judicial Government in Eighteenth Century Massachusetts," American Journal of Legal History, 20 (1976), 282-329.

7. I was a student of and for many years a close collaborator of (and occasional editor of) the late John Phillip Reid, who was, for the past fifty years, the leading scholar of rights discourses in Revolutionary Era America (see his five volume *Constitutional History of the American Revolution.*)

8. I have supervised graduate students whose dissertations and published articles focused on the history of eighteenth and nineteenth century statutory interpretation, and on officer's rights and duties, among other subjects.

9. Exhibit A contains a copy of my resume.

## Scope of Analysis

10. It is my understanding that the above-captioned cases present constitutional questions about New Jersey's 2022 law prohibiting carrying of firearms on private property without the express consent of the property owner. See subpart 24, Section 7, Public Law 2022 Chapter 131.

11. I have been asked to evaluate firearm trespass legislation of early New Jersey, including legislation contemporaneous with the enactment of the Second and Fourteenth Amendments.

12. I focus on the 18th century enactments:

    a. A 1722 Statute: "An Act to prevent killing of deer out of season, and against carrying of guns and hunting by persons not qualified." (Exhibit B).

    b. A 1769 Statute: "An Act for the more effectual preservation of deer in this Colony." (Exhibit C).

    c. A 1771 Statute: "An Act for the preservation of deer and other game, and to prevent trespassing with guns." (Exhibit D).

13. I have also reviewed 19th century legislative documents showing the continuation of the relevant provision in the 18th century statutes listed above. They include:

   a. An 1846 Statute: "An Act for the preservation of deer and other game, and to prevent trespassing with guns." (Exhibit E).

14. I have also reviewed a number of other historical documents, including relevant historical treatises.

15. My findings are informed by my review of the historical documents and my knowledge and expertise as a historian of early American legislation.

## Review of 18th Century New Jersey Gun Trespass Statutes

### *Statutory Goals*

16. In 1722, 1769, and again in 1771, the New Jersey colonial legislature enacted statutes that created a presumption, what in modern language is usually referred to as a default rule, that property owners refused permission to others, including other property owners, to carry guns on to their properties.

17. These 18th century statutes all framed as restrictions on the rights of to bring a gun on privately owned lands.  To read the colonial statutes, one has to think of them as marked by the enormous weight that the right to property held for colonial and early national white Americans.

18. One regulatory goal was making sure that deer were not slaughtered out of season, at a time when deer were for many a crucial source of protein.  But that was not the only regulatory goal of the statutes.

   a. The desire to restrict the season in which deer would be shot was qualified by the overarching desire to protect the interests of freeholding property owners. The desire to prevent hunting out of season was always countered by the over-arching value given to property in land.

   b. It is worth noting that the right of the landowner to hunt as he or she pleased on her or his property was validated in a separate paragraph in each of these statutes.  The statutes ensured that the property owner

could shoot deer found on his property whenever he wished, but that others could not.

19. Another explicitly named goal in the titles of the 1722 and 1771 Acts was preventing trespass with guns.

20. The specific goal that is apparent in provisions in each of the 1722, 1769, and 1771 Acts was to validate the power of landowners to regulate who should be permitted to enter onto their properties, and in particular to control who could bring guns onto those properties.

   a. Section 4 of the 1722 statute made it unlawful to "carry any gun, or hunt on the improved or inclosed lands in any plantation, other than his own" without written permission from the owner. *See* Ex. B.

   b. Section 1 of the 1769 statute made it unlawful to "carry any gun, or hunt or watch for deer, or set in any dog or dogs to drive deer or any other game, on any lands not his own" without written permission from the owner. *See* Ex. C.

   c. Section 1 of the 1771 statute made it unlawful to "carry any Gun on any Lands not his own" without written permission from the owner. It does not mention hunting. Other parts of the 1771 statute, such as section 2, deal with hunting game. But the first section concerned only carrying guns. *See* Ex. D.

21. A person would violate the above provisions by carrying a gun on another's property without written permission from the owner, regardless of whether the carrying of guns was in order to hunt game.

22. The aim of these provisions was to protect the powerful right of the property owners to prevent armed individuals from coming on to their property without license. Each of the above-listed statutes reveals a goal to protect the rights of the property holders, who were also the selectmen with voting rights at the time.

23. It was common for 18th and early 19th century statutes to have multiple goals. That sense of multiple purposes contained within a single statute was the norm in statutory drafting, particularly of what was then known as general or public legislation (as opposed to special legislation that granted particular privileges or franchises to particular individuals or communities).

*Default Property Rules*

24. These 18th and 19th century historical statutes and the 2022 subpart 24 provision all contain specifications of the traditional "bundle of rights" that pertain to the fee simple absolute that constitutes property ownership.

25. The 2022 statute shifts the default or the presumption from one that presumes that a licensee or visitor to someone's property <u>has</u> the right to carry a gun, unless the owner explicitly forbids it, to one that presumes as a default measure that the owner <u>does not</u> license gun owners to bring their weapons on to private property, unless the property owner has specifically licensed it.

26. In the above-listed provision in each of the 1722, 1769, and 1771 Acts, the presumption or default rule articulated was, in effect, an ordinary expression of property law. Structurally, such provisions are no different than property law rules are today—including the subpart 24 private property default rule enacted in 2022.

27. Any property regime is full of rules, many of which are explicit, some of which are not, that define the relations of owners to a world of others. Those default rules are typically articulated as a right /no-right relationship.

28. In this instance, a presumptive right to carry weapons on to property, which may or may not have preexisted the passage of the 1722 Act, became a no-right presumption, unless the property owner licensed that hunter or gun possessor.

29. Under the relevant provision in each of the 1722, 1769, and 1771 Acts, only explicit license by the property owner exempted the otherwise trespassing gun owner from the restriction on his freedom.

30. The gun owner who carried his weapon on to private property presumptively trespassed, unless he had prior license from the property owner to do so. When he trespassed, he was subject to a misdemeanor fine before a justice of the peace.

31. The statutory texts as enacted and reenacted from the mid-18th century through the 19th century were clear: that there was no right to bear arms on someone else's private property—even if that owner was silent as to consent. Instead, there was an absolute right to exclude firearms which extended to all real property.

*Scope Of Default Property Rule*

32. What lands counted as private lands to which one had implicit or direct notice that one could not bring guns onto them without explicit permission? Land on which one might theoretically hunt was obviously included. But the property rules expressed in the first provision in each of the 1769 and 1771 Acts provide that the same no-right presumption extended to all varieties of real property, including the typical "businesses" of the times.

33. The 1771 law applied to all privately held lands without limitation. Its text was straightforward and unqualified on this question: "any lands . . . for which the owner pays taxes [] or is in his lawful possession." And the statute went out of its way to mark that jurisdiction may fall to justices of the peace in towns and cities, not just rural justices. The 1769 statute similarly applied to "any lands … for which the owners pay Taxes [] or is in his lawful Possession."

34. Private business property in 18th century New Jersey would have encompassed taverns, leathersmiths and blacksmiths, pharmacies, seed stores, and merchants who bought and sold livestock. Thus, under the 1771 law, if one entered a blacksmith's shop, one needed the permission of the blacksmith or his agents if one meant to enter the space armed. Such a duty was not as such a restriction on the right to bear arms. It was, rather, an expression of how one lived as an armed white subject of the Crown and then, soon, as an armed free citizen of an American state.

35. The 1722 statute limited the right of the property owner (or, one might say, limited the constraint on the gun owner) to the property owner's "improved or inclosed lands in any Plantation."

36. The language of "improved or inclosed" in the 1722 Act was not a limitation of the provision to fenced-in land. Rather, it would have marked two ways an owner would have given notice of his possession of the property at issue. Fencing-in was one way to give such notice of possession, but there were others, such as recording in county deed books and paying of taxes.

37. There may have been at a time, early in the colonization and settlement of New Jersey, when white colonial settlers did not yet routinely record property records in county deed books and tax records may have been sparse. By the middle of the 18th century, however, the development of a recording system and tax collections would have clarified and given notice

both of who was a legal possessor and of the boundaries of possession. *See* C. Priest, CREDIT NATION, 40, 44-45, 179 (2019) (noting the "New Jersey Assembly's efforts to create locally run institutions for publicly searchable title recording" in the first half of the 18th century).

38. In any event, in both the 1769 and 1771 statutes, no limitation as to "improved or inclosed" or "plantation" appeared. Instead, the presumption of no-carry of firearms applied for land where anyone paid taxes or was in lawful possession of the land.

### Historical Context

39. All the evidence suggests that the relevant provision in each of these three 18th century statutes was not controversial. I am not aware of any Second-Amendment challenge to these statutes. Certainly, none in the several generations they remained in effect, in terms of the default rule each statute articulated requiring express consent before carrying guns on another's property. In the 18th century, general legislation usually occurred when there was a need to ratify existing practices. Legislation occasionally intended to mark a change from past practices.

40. Nothing about these three 18th century statutes suggests that they marked a change from a prior rule that the presumption was that the property owner had to affirmatively mark that guns were not permitted. Rather, the provisions in the statutes, particularly in 1769 and 1771, speak to the diversity of peoples that increasingly populated New Jersey, a diversity that required, in the minds of the legislators, specific and diverse penalties.

41. Regardless of whether these 18th century statutes ratified existing practice, established a new default rule, or clarified an ambiguity, they provided clear notice of the existence of the presumption that one could not carry guns on to private property.

42. This understanding continued through and well past the American Revolution and into the 19th century. Historical sources confirm the that the 1771 presumption that one may not carry guns onto the property of another without explicit license existed for most of the 19th century.

43. In James Ewing's treatise on "The Office and Duty of a Justice of the Peace," the section on "Hunting and Guning[sic]" begins "No person may carry a gun on any lands not his own, and for which the owner pays taxes,

unless he hath license or permission in writing from the owner, or owners or legal possessor." (Trenton, James Oram, 1805, 303).

44. The Legislature enacted a law in 1846, referenced above and in Ex. E, which contained substantially the same language in its Section 1 as did the 1771 Act, see Ex. D. The above conclusions about the scope and operation of the 1771 statute's first provision thus apply equally to the 1846 statute's first provision.

45. Lucius Elmer's 1868 Digest of the Laws of New Jersey 362 (4th ed., Newark, 1868) contained the relevant provisions of the 1846 Act. (Ex. F).

46. By 1895, the Legislature enacted a new law codifying a different presumption. Under that new enactment on trespass, one was still presumptively forbidden to carry a gun onto private property for purposes of hunting, but only when the private property owner, occupant, lessee, or licensee has given "public notice." (Public Law 1895, ch. § 148 (approved Mar. 14, 1985). (Exhibit G.)

47. In short, well after the passage of the 14th Amendment in 1868, the presumption that it was illegal to take a gun on to private property without prior affirmative permission by the property owner remained the rule of law.

## Conclusion

48. In sum, in 18th and throughout much of 19th century New Jersey, bringing arms onto the lands of another was presumptively illegal, unless the owner of those lands had affirmatively consented to the presence of those arms on his or her lands. This practice, which presumed the no-right of gun possessors to enter on to private property, was unqualified and unchallenged at the time of the passage of the 2nd Amendment, and it was still in force at the time of the passage of the 14th Amendment.

I certify that pursuant to 28 U.S.C. § 1746 and under penalty of perjury that to the best of my knowledge, information, and belief, the foregoing is true and correct.

_____

Hendrik Hartog
January 30, 2023

# RESUME

## Hendrik Hartog

EMPLOYMENT EXPERIENCE:

| | |
|---|---|
| 2019- | Class of 1921 Bicentennial Professor in the History of American Law and Liberty, Emeritus, Princeton University |
| 2015-2016 | Lapidus Fellow, New-York Historical Society |
| 2006-2015 | Director, Program in American Studies (Acting Director, 2016-2017) |
| 1992-2019 | Class of 1921 Bicentennial Professor in the History of American Law and Liberty, Princeton University |
| 1991-1993 | Professor of Law and History, University of Wisconsin-Madison |
| 1987-1991 | Honorary Member, History Department, University of Wisconsin-Madison |
| 1982-1991 | Visiting Assistant Professor of Law, Associate Professor of Law, Professor of Law, University of Wisconsin Law School |
| 1978-1983 | Assistant Professor of Law, Indiana University School of Law (Bloomington) |
| 1977-1978 | Visiting Assistant Professor of Law, Indiana University School of Law (Bloomington) |
| 1988 | Visiting Professor of Law, UCLA Law School, Los Angeles, California |
| 1998-99, 2003 | Interim Director, Program in American Studies, Princeton University |

PUBLICATIONS:

Books:

JA1153

<u>Nobody's Boy and His Pals: The Story of Jack Robbins and the Boys' Brotherhood Republic</u>. Chicago: University of Chicago Press, 2024 (forthcoming).

<u>The Trouble with Minna: A Case of Slavery and Emancipation in the Antebellum North</u>. Chapel Hill: University of North Carolina Press, 2018.

<u>Someday All This Will Be Yours: A History of Inheritance and Old Age</u>. Cambridge, Mass.: Harvard University Press, 2012.

<u>Man and Wife in America, A History</u>. Cambridge, Mass.: Harvard University Press, 2000. Paperback edition, 2002.

<u>Public Property and Private Power: the Corporation of the City of New York in American Law, 1730 to 1870</u>. Chapel Hill: University of North Carolina Press, 1983. Paperback edition, Ithaca: Cornell University Press, 1989.

Editor and Contributor, <u>Law in the American Revolution and the Revolution in the Law</u>. New York: New York University Press, 1981.

Editor (with William Nelson) and Contributor, <u>Law in Culture and Culture in Law: Essays in Honor of John Philip Reid</u>. Madison, WI: Madison House, 2000.

Editor (with Wendy Gamber and Michael Grossberg) and Contributor, <u>American Public Life and the Historical Imagination</u>. Notre Dame, IN: University of Notre Dame Press, 2003.


Articles and Chapters:

"Three Fragments on Doing Legal History, or Willard Hurst and Me," in <u>Legal Realism to Law in Action: Innovative Courses at UW-Madison</u> (2021), to appear under a slightly different title in <u>Law and History Review</u> (2021)

"Response: The Muddle in the Middle," <u>Law and Social Inquiry</u> (2019)

"Somedays I Have Second Thoughts," <u>Law and Social Inquiry</u> (2015)
        (Reflections, following a Symposium devoted to my book, <u>Someday All This Will Be Yours, A History of Inheritance and Old Age</u> (2012))

"Coverture and Dignity," <u>Law and Social Inquiry</u> (2016), in a symposium on "dignity takings"

"Two Stories About Two Currencies of Care," <u>Buffalo Law Review</u>, 2013 (The Mitchell Lecture of 2012)

"Introduction to Symposium on 'Critical Legal Histories,'" <u>Law and Social Inquiry</u> , 2012.

"Comment on Appleby," <u>Historically Speaking</u>, 2011

"Horwitz and the End of Socio-Legal History: 1975," in <u>Transformations in American Legal History: Essays in Honor of Morton J. Horwitz, Volume II.</u> Cambridge, MA: Harvard University Press, 2010.

Barbara Welke, "Glimmers of Life: A Conversation with Hendrik Hartog," <u>Law and History Review,</u> 2009

"The Scene of a Marriage," in Carol Sanger, editor, <u>Family Law Stories</u>. St. Paul, MN: Foundation Press, 2008.

"Someday All This Will Be Yours: Inheritance, Adoption, and Obligation in Capitalist America," <u>Indiana Law Journal</u> (revised version of Harris Lecture) (2004)

"Romancing the Quotation," in <u>Law in the Liberal Arts</u>. Edited by Austin Sarat (Ithaca: Cornell University Press, 2004).

"What Gay Marriage Teaches About the History of Marriage," History News Network (<u>http://hnn.us/articles/4400.html</u>, April 2004).

"Interchange: http://www.historycooperative.org/journals/jah/90.2/interchange.html," <u>Journal of American History</u> (2003)

"Llewellyn, Divorce, and Description," in <u>American Public Life and the Historical Imagination</u>)

"Stone's Transitions," <u>University of Connecticut Law Review</u> (2002)

"Divorce and Separation," and "Marriage," in <u>Dictionary of American History</u> (2003)

"Rights Disputes in American History," in Leonard Levy, Kenneth Karst, and Adam Winkler, eds., <u>Encyclopedia of the American Constitution, Supplement II</u> (2003)

"Wives as Favorites," in <u>Law in Culture and Culture in Law</u>

"Lawyering, Husbands' Rights, and 'The Unwritten Law,' in Nineteenth-Century America," <u>Journal of American History</u> (1997)

"John Barry's Custodial Rights: Of Power, Justice, and Coverture," in Garth and Sarat, editors, <u>Justice and Power in Sociological Studies</u> (1997)

"Snakes in Ireland: A Conversation with Willard Hurst," <u>Law and History Review</u> (1994)

"Abigail Bailey's Coverture: Law in a Married Woman's Consciousness," in Sarat and Kearns, ed's., <u>Law in Everyday Life</u> (Ann Arbor: MI, 1993).

"Marital Exits and Marital Expectations in 19th Century America," <u>Georgetown Law Journal</u> (1991).

"Partial Readings," Focus (ABA) (1990); reprinted Canadian Newsletter of Law and Society (1990).

"Mrs. Packard on Dependency," Yale Journal of Law and Humanities (1988).

"The End(s) of Critical Empiricism," Law and Social Inquiry (1989).

"The Constitution of Aspirations and 'The Rights that Belong to Us All,'" Journal of American History (1987) reprinted in David Thelen, editor, The Constitution and American Life (1988).

"Imposing Constitutional Traditions," William and Mary Law Review (1987).

"Introduction: Legal Histories from Below," (with William Forbath and Martha Minow) Wisconsin Law Review (1985), 759-766.

"Pigs and Positivism," Wisconsin Law Review (1985), 899-935.

"The Conclusions of Urban History and Those of Lord Bryce," Reviews in American History (Jon C. Teaford, The Unheralded Triumph: City Government in America, 1870 - 1900) (1985). (review essay)

"The Politics of The Politics of Law," American Bar Foundation Journal (David Kairys, editor, The Politics of Law 1985. (review essay)

"The Significance of a Singular Legal Career," Wisconsin Law Review (Alfred S. Konefsky and Andrew J. King, editors, The Papers of Daniel Webster: Legal Papers, volume 1 and 2) (1984). (review essay)

"Property as Government in Eighteenth Century America: The Case of New York City," Journal of Legal Studies, 10 (1981), 305-348.

"Distancing Oneself From the Eighteenth Century: A Commentary on Changing Pictures of American Legal History," in Law in the American Revolution and the Revolution in the Law, 234-257.

"Because all the World was not New York City: Governance, Property Rights, and the State in the Changing Definition of a Corporation, 1730-1860," Buffalo Law Review, 29 (1979), 91-109.

"Losing the World of the Massachusetts Whig," Indiana Law Journal (1978-9). (reprinted in Law in the American Revolution and the Revolution in Law (review essay)

"The Public Law of a County Court: Judicial Government in Eighteenth Century Massachusetts," American Journal of Legal History, 20 (1976), 282-329.


Book Reviews:

JA1156

Book Review, Steven Mintz, The Prime of Life: A History of Modern Adulthood (2015), American Historical Review (2016)

Book Review, Francois Weil, Family Trees: A History of Genealogy in America (2013), in Journal of American History (2014).

Review Essay, "Landlocked: on Property, the secret history," The Nation (2012),

American Historical Review (Sylvia D. Hoffert, Jane Swisshelm (2006)

Journal of Southern History (Saul Cornell. The Other Founders: Anti-Federalism & the Dissenting Tradition in America, 1788-1828) (2001).

Journal of American History (Karen Halttunen, Murder Most Foul: The Killer and the American Gothic Imagination (1999).

American Historical Review (Joan Hoff, Law, Gender, and Inequality) (1992).

William and Mary Quarterly (Jack Greene, Peripheries and Center) (1988).

Science (David Tyack, Thomas James, and Aaron Benavot, Law and the Shaping of Public Education, 1785-1954 (1988).

Journal of the History of the Early Republic (Mary Lynn Salmon, Women and Property in Early America) (1986).

The Eighteenth Century (A.G. Roeber, Faithful Magistrates and Republican Lawyers: Creators of Virginia's Legal Culture 1680-1810) (1984).

Journal of American History (Ronald E. Seavoy, The Origins of the American Business Corporation, 1784-1855: Broadening the Concept of Public Service during Industrialization) (1984).

Journal of American History (Everett C. Goodwin, The Magistracy Rediscovered. Connecticut, 1636-1818), (1982).

Indiana Magazine of History (Mary K. Bonsteel Tachau, Federal Courts in the Early Republic: Kentucky, 1789-1816), (1980).


Other:

American Family Law and American Family History: A Bibliography," (with Kristin Oakley and Jeanne Bourguignon), published by the Institute for Legal Studies, University of Wisconsin – Madison, 1985.

EDUCATION:

Ph.D. Brandeis University, History of American Civilization (Waltham, Massachusetts), 1982.

M.A. Brandeis University (Waltham, Massachusetts), 1977.

J.D. New York University School of Law (New York, New York), 1973.

A.B. Carleton College (Northfield, Minnesota), 1970.

SELECTED HONORS, AWARDS, and OFFICES:

William Nelson Cromwell Foundation Fellowship, 2021-2022.

Vacketta Lecture, University of Illinois College of Law, Champaign, Illinois, October 2019

Jerome Hall Endowed Lecture, Indiana University School of Law (Maurer School), Bloomington Indiana, January 2019

Princeton University Award for Graduate Teaching and Advising, June 2018

One Day Conference on "the scholarship of Hendrik Hartog" at Herzliya Law School, Israel (with the participation of scholars from Tel Aviv and Haifa Law Schools), June 2018

Honorary Fellow, American Society for Legal History, October 2015

Fallon Lecturer, University of Oregon School of Law, April 2016

Inaugural Brian Simpson Lecturer, University of Michigan Law School, March 2015

President's Award for Distinguished Teaching, Princeton University, May 2011.

Ally Award, LGBT Center, Princeton University, May 2011

Plenary Speaker, American Society for Legal History, November 2010

Provost's Lecture, SUNY Stony Brook, February 2011

Stevens Lecture, University of Chicago Law School, May 2011

Edward J. Kelly Memorial Lecture in Elder Law, Notre Dame Law School, March 2013

Plenary Speaker, LSA 50th Anniversary Celebration, June 2014

Centennial Lecturer, Chicago-Kent Law School, IIT, Chicago, 2006.

Presidential Speaker, Annual meeting, Law and Society Association 2005: "On Child Labor and Our 'Discipline'"

Presidential nominee, Law and Society Association, 2002.

Delegate from the Law and Society Association to the American Council for Learned Societies, 2002-2005, 2014.

Secretary, Law and Society Association, 1999-2001

Co-Editor, Studies in Legal History: published by the University of North Carolina Press, sponsored by the American Society for Legal History, 1992-2002

Board of Directors, American Civil Liberties Union of New Jersey, 2000-

Guggenheim Fellow, 1990.

ACLS Fellow, 1989.

Harris Lecturer, Indiana University School of Law (Bloomington), 2003

Siben Lecturer, Hofstra University School of Law, 2002

Plesant Lecturer, Cardozo Law School, 2002

Benedum Lecturer, University of West Virginia, 1995.

Phillip Hart Memorial Lecture, Georgetown University Law School, 1991.

Mellon Lecture, Amherst College, 1990.

Daily Princetonian Prize, 2002.

Chair, Hurst Book Prize Committee, Law and Society Association, 1991-92.

Member, Hurst Book Prize Committee, Law and Society Association, 2008

Chair, Littleton-Griswold Book Prize Committee, American Historical Association, 2009

Member, Littleton-Griswold Book Prize Committee, American Historical Association, 2008, 2010, 2014-2015.

Chair, Committee on Research Awards, American Society for Legal History, 2006-2008

Member, Board of Directors, American Society for Legal History, 1988-1991.

Member, Board of Trustees, Law and Society Association, 1987-1990.

Director, Legal History Program, University of Wisconsin Law School, 1987-1992.

Acting Director, Institute for Legal Studies, University of Wisconsin Law School, 1986-87.

Co-Director, Legal History Program, University of Wisconsin Law School, 1984-87. (Chair of 1986 Program)(funded by NEH).

Member, Panel to plan a symposium issue of the Journal of American History for the Bicentennial of the U.S. Constitution, 1985-1987.

Chair, Nominations Committee, American Society for Legal History, 1986, 1987.

Chair, Programs and Proposals Committee, American Society for Legal History, 2013-2016.

Member, Program Committee, Law and Society Association annual meeting, 1985, 1987, 1990.

NEH Summer Fellowship, University of Wisconsin Graduate School Summer Support - 1984.

American Bar Foundation Fellowship in Legal History, 1981-82.

Crown Fellow in the History of American Civilization, Brandeis University, 1973-1977.

Fiorello H. LaGuardia Prize Winner in Urban Law, New York University School of Law, June 1973.

Director of the Hurst Summer Institute, Madison Wisconsin, June 2013 (sponsored by the ASLH)

Codirected a week long seminar (with Larry Kramer, the director of the Hewlett Foundation) on constitutional history at Stanford University. July 2013 (sponsored by the Institute for Constitutional History and by Stanford Law School.

Member, editorial board, Journal of Law, Culture, and the Humanities, 2003-

Member, editorial board, Law and History Review, 1987-1993.

Member, editorial board, American Journal of Legal History, 1978-

Member, editorial board, New York University School of Law, Series in Anglo-American Legal History, 1979-

JA1160

Member, executive committee, American Studies Program, Indiana University, 1981-1983.

**Completed Doctoral Dissertations Directed**:

Thomas Johnson, S.J.D., University of Wisconsin, 1986.

Yusuf Aboki, S.J.D., University of Wisconsin, 1986.

Michael Millender, Ph.D., Princeton University, 1996.

Felicia Kornbluh, Ph.D., Princeton University, 2000.

Jacob Katz Cogan, Ph.D., Princeton University, 2002

Todd Stevens, Ph.D., Princeton University, 2003

Risa Goluboff, Ph.D., Princeton University, 2003.

Donna Dennis, Ph.D., Princeton University, 2005

Kenneth Mack, Ph.D., Princeton University, 2005

Mitra Sharafi, Ph.D., Princeton University, 2006 (co-advisor)

Kunal Parker, Ph.D., Princeton University, 2007

Christina (Burnett) Ponsa, Ph.D., Princeton University, 2010

Laura Weinrib, Ph.D., Princeton University, 2011

Annie Twitty, Ph.D., Princeton University, 2012 (co-advisor)

Maribel Morey, Ph.D., Princeton University, 2013 (co-advisor)

Rohit De, Ph.D., Princeton University, 2013 (co-advisor)

Jessica Lowe, Ph.D., Princeton University, 2013

Farah Peterson, Ph.D., Princeton University, 2015

Catherine Evans, Ph.D., Princeton University, 2015

Matthew Axtell, Ph.D., Princeton University, 2016

Sarah Seo, Ph.D., Princeton University, 2016

Maeve Glass, Ph. D., Princeton University  2016

Alix  Lerner, Ph.D., Princeton University,  2016

Kellen  Funk, Ph.D., Princeton University,  2018

Jane Manners, Ph.D., Princeton University,  2018

Emily  Prifogle, Ph.D., Princeton University,  2019

Craig Green, Ph.D., Princeton University,  2019

Kalyani Ramnath, Ph.D., Princeton University,  2019 (Co-advisor)

Katharina  Schmidt, Ph.D., Princeton University,  2021 (Co-advisor)

Tara Suri,  Ph.D., Princeton University,  2022 (Co-advisor)

_____

A C T S passed by the General Af-
fembly of the Province of *New-*
*Jerfey,* at *Perth Amboy* in 1722, be-
ing the Eighth Year of His Ma-
jefty's Reign.

## C H A P. XXXIII.

*An* A C T *for the Security of His Ma-*
*jefty's Government of New-Jerfey.*

**Preamble.**  *Sect.* 1. **W**HEREAS fome Perfons in this Province,
difaffected to His Majefty's Perfon and Govern-
ment, propogate their pernicious Principles, to the great Hurt
of His Majefty's faithful and loyal Subjects inhabiting within
the fame. And by Reafon of their Intermeddling in publick
Affairs, in Contempt of His Majefty's legal and juft Au-
thority, obftruct the publick Adminiftration, and will, if
not prevented, prove Dangerous to the Government of
this Province.

**Two or more
Juftices, or any
Perfon fpecial-
ly appointed by**  BE IT THEREFORE ENACTED by the
Governor, Council and General Affembly, and it is here-
by

Digitized from Best Copy Available

JA1163

Case 1:23-cv-07464-BMC-TAM Document 94-6 Filed 07/18/24 Page 22 of 22 PageID #: 1287

# CHAP. XXXV.

## An ACT to prevent Killing of Deer out of Season, and against Carrying of Guns and Hunting by Persons not Qualified.

*Any Person killing Deer in the Time by this Act disallowed, to forfeit 30s. &c.*

Sect. 1. BE IT ENACTED by the Governor, Council and General Assembly, AND IT IS HEREBY ENACTED by the Authority of the same, That if any Person or Persons, after the Publication hereof, shall kill or destroy any wild Buck, Doe or Fawn, or any other Sort of Deer whatsoever, at any Time in the Months of *January, February, March, April, May* or *June*, every such Person shall, for every such Offence, forfeit and pay the Sum of *Thirty Shillings*, for every such Buck, Doe or Fawn, or other Deer, so killed or destroyed as aforesaid, contrary to the true Intent and Meaning of this Act; one half thereof to the Poor of the Township or Precinct where the Offence is committed, and the other half to him who shall Inform or Sue for the same before any Justice of the Peace of this Province, who is hereby impowered and authorized to hear and determine the same, and to convict the Offender by the Oath or Affirmation of one or more Witness. Provided, That such Conviction be made within two Months after the Offence committed.

*Sale of green Skins to amount to a Conviction, &c.*

2. AND for the better Convicting of Offenders against this Act, BE IT ENACTED by the Authority aforesaid, That every Person in whose Custody shall be found, or who shall expose to Sale, any green Deer Skins, fresh Venison or Deer's Flesh, at any Time in any of the Months of *January, February, March, April, May* or *June*, aforementioned, and shall be convicted thereof, as aforesaid, shall be deemed Guilty of the said Offence.

*Not to extend to hinder killing them in Corn Fields, or by Indians*

3. PROVIDED ALWAYS, That nothing contained in this Act, shall be deemed or construed to hinder any Person from killing any kind of Deer, within his Fields where Corn is growing, at any Time in the Month of *January*, nor to extend to any Free Native Indians carrying Guns, hunting, killing or having in their Custody any Skins or Deer's Flesh for their own Use; any Thing in this Act to the contrary notwithstanding.

4. And

JA1164

Digitized from Best Copy Available

4. And whereas divers abuses have been committed, and great Damages and Inconveniencies arisen by Persons carrying of Guns and presuming to hunt on other Peoples Land; for Remedy whereof for the future, BE IT ENACTED by the Authority aforesaid, That if any Person or Persons shall presume, at any Time after the Publication hereof, to carry any Gun, or hunt on the improved or inclosed Lands in any Plantation, other than his own, unless he have Licence or Permission from the Owner of such Lands or Plantation, and shall be thereof convicted, either upon the View of any Justice of the Peace within this Province, or by the Oath or Affirmation of any one or more Witnesses, before any Justice of the Peace, he shall, for every such Offence forfeit the Sum of *Fifteen Shillings*, with Costs attending such Conviction. And if any Person whatsoever, who is not Owner of one Hundred Acres of Land, or otherwise qualified, in the same Manner as Persons are or ought to be for electing Representatives to serve in General Assembly, shall at any Time after the Publication hereof, carry any Gun, or hunt in the Woods or uninclosed Lands, without Licence or Permission obtained from the Owner or Owners of such Lands, and shall be thereof convicted, in Manner aforesaid, such Offender shall forfeit and pay the Sum of *Ten Shillings*, with Costs as aforesaid, for every such Offence. All which Penalties and Forfeitures shall go one Moiety to the Informer, and the other to the Poor of the Township or Precinct where such Offence is committed; but if convicted upon View of a Justice of the Peace, the whole Forfeiture shall be to the Use of the Poor. And if the Offender refuse to pay the same, with Costs, as aforesaid, shall be levyed on by Distress and Sale of the Offender's Goods, by Warrant under the Hand and Seal of the Justice before whom such Offender shall be convicted, returning the over-plus, if any be, the Charge of Distraining being first deducted. And for want of Effects whereon to make such Distress, every Person so Offending, contrary to the true Intent and Meaning of this Act, shall be committed to Prison, when the Forfeiture is *Thirty Shillings*, for the Space of Fifteen Days; and when the Forfeiture is *Fifteen Shillings*, for the Space of Eight Days; and when the Forfeiture is *Ten Shillings*, for the Space of Five Days, without Bail or Mainprize.

5. AND BE IT ENACTED by the Authority aforesaid, That every Justice of the Peace, before whom any Person or Persons is convicted of having committed any of the Offences in and by this Act prohibited, is hereby directed and required to issue his Warrants for the bringing such Offender

*Marginal notes:*
No Person to carry a Gun or Hunt on Land inclosed but by assent of Owners &c.

Nor on Lands Unclosed, unless freeholders &c.

Forfeitures how to be applyed, and how to be levied &c.

Want of Effects to be committed to Gaol.

C c

before

Digitized from Best Copy Available

Case 1:22-cv-07464-RMB-AMD   Document 84-2   Filed 01/30/23   Page 3 of 4 PageID: 1288

Case 1:22-cv-07464-RMB-AMD Document 84 Filed 11/30/22 Page 4 of 4 PageID: 1289

before him, and in Cafe of the want of Effects whereon to make Diftrefs, to make out his Mittimus to commit fuch Offender to the Gaol of the County in which fuch Conviction is made; and the Sheriff, Under-Sheriff, or Gaol-keeper, is hereby directed and required to keep the faid Offender in clofe Gaol, according to the Direction of this Act, and Tenor of fuch Mittimus to fuch Sheriff, Under-Sheriff, or Gaoler directed. And every Juftice of the Peace neglecting or refufing to iffue fuch Warrant, or make fuch Mittimus, and every Sheriff, or Under-Sheriff or Gaol-keeper, who fhall not receive fuch Offender, and keep him in clofe Gaol, according to the true Intent and Meaning of this Act, fhall, for every fuch neglect or refufal, or undue difcharge of his Office in the Premifes, forfeit the Sum of *Six Pounds*, to be recovered in any Court of Record within this Province, in which there fhall be no Effoyn or Protection; the one half to fuch Perfon as fhall fue for and profecute the fame to Effect, the other half to the King's Majefty, His Heirs and Succeffors, for and towards the Support of the Government of this Province.

*Sheriff refufing &c. to receive the party, to forfeit 6l. &c.*

6. AND IT IS ALSO FURTHER ENACTED by the Authority aforefaid, That this Act, nor any Part thereof, fhall be conftrued to extend to Negro, Indian or Mulatto Slaves, fo as to commit them to Prifon, during the Time in this Act limitted, in Cafe they fhould be guilty of any of the Offences in this Act prohibited: but that then, and in fuch Cafe, fuch Indian, Negro or Mulatto Slave, killing and deftroying any Deer as aforefaid, or carrying or hunting with any Gun, without Licence from his Mafter, fhall, at the publick Whipping-Poft, on the bare back, be Whipp'd, not exceeding Twenty Lafhes, for every fuch Offence, for which Whipping the Mafter fhall pay to the Whipper the Sum of *Three Shillings*, and pay no greater or other Coft whatfoever; any Thing in this Act to the contrary hereof in any wife notwithftanding.

*Not to extend to Negros, &c. but they to be whipped if convicted, &c*

JA1166

Digitized from Best Copy Available

*New Jersey Archives* · THIRD SERIES

Volume IV

# Laws of the Royal Colony
# of New Jersey
## 1760·1769

COMPILED BY

BERNARD BUSH



NEW JERSEY STATE LIBRARY

BUREAU OF ARCHIVES AND HISTORY

TRENTON, N.J.

JA1167

*582* *COLONIAL LAWS*

## An **ACT** *for the more effectual Preservation of Deer in this Colony.*

BE IT ENACTED *by the Governor, Council, and General Assembly, and it is hereby Enacted by the Authority of the same,* That if any Person or Persons, shall presume, at any Time after the Publication hereof, to carry any Gun, or hunt or watch for Deer, or set in any Dog or Dogs to drive Deer or any other Game, on any Lands not his own, (and for which the Owners pay Taxes) or is in his lawful Possession, unless he have Licence or Permission in Writing from the Owner or Owners or legal Possessor; such Person or Persons so offending and convicted thereof, either upon the View of any Justice of the Peace within this Colony, or by the Oath or Affirmation of one or more Witness or Witnesses, before any Justice of the Peace, of either of the Counties, Cities, or Towns Corporate of this Colony, in which the Offender or Offenders may be taken or reside; he shall, for every Offence, forfeit and pay to the Owner of the Soil, or his Tenant in Possession, the Sum of *Forty Shillings;* with Costs of Suit. *Provided,* that Nothing herein contained, shall be construed to extend to prevent any Person carrying a Gun upon the King's Highways in this Colony.

AND BE IT FURTHER ENACTED *by the Authority aforesaid,* That if the Person or Persons offending against this Act, be Non-Residents of this Colony, he or they shall forfeit and pay for every such Offence *Five Pounds,* and shall forfeit his or their Gun or Guns to any Person or Persons, who shall inform and prosecute the same to Effect, before any Justice of the Peace, in any County of this Colony, wherein the Offender or Offenders may be taken or apprehended.

AND BE IT ENACTED *by the Authority aforesaid,* That if any Person or Persons, shall kill, destroy, hunt or take any Doe, Buck, Fawn, or any Sort of Deer whatsoever, at any other Time or Season, except only between the First Day of *September* and the First Day of *January,* yearly and every Year; he, she or they so offending, shall forfeit and pay the Sum of *Forty Shillings* for each and every Offence, to be sued for, recovered, and applied as aforesaid.

AND for the better and more effectual convicting of Offenders against this Act, BE IT ENACTED *by the Authority aforesaid,* That any and every Person or Persons, in whose Custody shall be found, or who shall expose to Sale any green Deer Skins or fresh Venison, killed at any Time after the First Day of *January,* and before the First Day of *September* aforesaid, and shall be thereof convicted by the Oath or Affirmation of one or more creditable Witnesses, shall be deemed guilty of offending against this Act, and be subjected to the Penalties of killing Deer out of Season.

AND *Whereas* the Practice of shooting at Deer with Shot, is not only prejudicial to the Skins, but also in too many Instances only occasions Wounds which do not bleed, and with which the Deer escape and pine away and die: Therefore, BE IT ENACTED, that from and after the First Day of

*September* next, no Person or Persons whatsoever, shall presume to shoot at any Deer with Shot of any Kind whatever, but with a single Slug, Bullet or Ball only. And that if any Person or Persons, shall presume to shoot at, wound, or kill any Deer, with any other Shot than a single Ball, Slug or Bullet, the Person or Persons so offending, shall forfeit and pay for every such Offence the Sum of *Twenty Shillings,* to be recovered and applied as is herein before directed, for any Person hunting on Lands not his own.

AND *Whereas* great Numbers of idle and disorderly Persons make a Practice of hunting for Deer on waste and unimproved Lands in this Colony, whereby their Families are neglected, and the Public is prejudiced by the Loss of their Labour, BE IT THEREFORE ENACTED *by the Authority aforesaid,* That from and after the first Day of *September* next, no Person or Persons whatsoever, (except such Persons as are by the Laws of this Colony qualified to vote for Representatives in General Assembly, and their Sons being of the Age of Eighteen Years or upwards, and living with their Parent or Parents, or being Freeholders) shall on any Pretence whatever, hunt or kill any Deer on the waste and unimproved Lands in this Colony; and if any Person or Persons, not qualified as aforesaid, shall presume to hunt Deer as aforesaid; he or they so offending, shall forfeit and pay for every such Offence, the Sum of *Twenty Shillings,* to be recovered by Action of Debt, with Costs, by any Person who shall sue for the same, to be applied one Half to the Prosecutor, and the other Half to the Use of the Poor of the Township or Precinct where the Fact was committed.

AND BE IT ENACTED *by the Authority aforesaid,* That if any Person or Persons within this Colony, shall set any Trap of Steel or Iron, larger than what is usually and commonly set for Foxes or Musk Rats, or which Trap when set shall exceed the Weight of *Five Pounds;* such Person setting such Trap, shall pay the Sum of *Five Pounds,* and forfeit the Trap, or (in Default of Payment for Twenty-four Hours after Conviction) shall suffer Three Months Imprisonment, and shall also be liable to make good all Damages any Person shall sustain by setting such Trap; and the Owner of such Trap, or Person to whom it was lent, shall be esteemed the Setter thereof, unless it shall be proved on Oath or Affirmation, what other Person set the same, or that such Trap was lost by said Owner or Person to whom it was lent, and absolutely out of his Power. And if the Setter of the Trap be a Slave, and it be his own voluntary Act, he shall (unless the Master or Mistress shall pay the Fine) in lieu of such Fine, be publickly whipt with Thirty Lashes, and committed till the Costs are paid; and that the said Traps shall be broken and entirely destroyed, in the View and Presence of the Justice of the Peace before whom they are brought, and shall be delivered to the Overseer of the Poor, to be by him sold for the Use of the Poor. And if any Person or Persons shall have Possession of, or there shall be found in his or their House, any Iron or Steel Trap or Traps, the Weight whereof shall exceed Five Pounds, or shall have in his Possession, any other Device for taking of Deer, such Person or Persons shall be subjected to the same Penalty as if he or they were convicted of setting such Trap or Traps, or other Device for taking of Deer.

AND BE IT FURTHER ENACTED *by the Authority aforesaid,* That every Smith or other Artificer, who shall hereafter make or mend any Steel or Iron Trap of greater Weight than Five Pounds, he shall forfeit and pay the Sum of *Forty Shillings;* and the Person carrying the said Trap to the Artificer aforesaid, shall forfeit and pay the Sum of *Twenty Shillings:* And every Person who shall bring into this Colony any new or repaired Trap above the Weight aforesaid, shall forfeit and pay the Sum of *Forty Shillings.* And if the Person who shall carry the same to the Smith or Artificer, shall be so poor, as that he shall not be able to pay the Forfeiture aforesaid, he shall be committed to the Common Gaol, until he shall prove who is Owner of said Trap, or delivered the same to him; and in such Case, the Forfeiture aforesaid shall be levied on the Goods, or in Failure of Goods, on the Body of the Owner of said Trap, or the Person who delivered the same to the Pauper, and the Trap shall be forfeited, worked up and intirely destroyed.

AND *Whereas* a most dangerous Method of setting Guns has too much prevailed in this Province; BE IT ENACTED *by the Authority aforesaid,* That if any Person or Persons within this Colony, shall presume to set any loaded Gun, in such Manner as that the same shall be intended to go off or discharge itself, or be discharged by any String, Rope or other Contrivance, such Person or Persons shall forfeit and pay the Sum of *Six Pounds;* and on Non-Payment thereof shall be committed to the Common Gaol of the County, for Six Months.

AND BE IT FURTHER ENACTED *by the Authority aforesaid,* That the Fines and Forfeitures in this Act expressed, and not particularly provided for, shall be paid, one Half to the Prosecutor, and the other Half to and for the Use of the Poor of the Town, Precinct or District where the Offence is committed; and that the Execution of this Act, and every Part thereof, shall be within the Cognizance and Jurisdiction of any one Magistrate or Justice of the Peace.

AND BE IT ENACTED *by the Authority aforesaid,* That Nothing in this Law shall be construed to extend to restrain the Owners of Parks, or of Tame Deer, from killing, hunting or driving their own Deer.

AND BE IT ALSO ENACTED *by the Authority aforesaid,* That if any Justice of the Peace or other Officer within this Province, coming to the Knowledge of any Offence against this Act, and shall not prosecute the same to Effect, within Two Months after such Knowledge, shall forfeit and pay the Sum or Sums to which the Offender against this Act would have been liable; and the Justices at every Sessions shall give the Substance of this Law in Charge to the Grand Jury, who shall make particular Inquiry thereof, and present all such Persons offending against this Act, against whom no Actions have been brought and Recoveries had for the Penalties in this Act contained; and on Conviction for any of the Offences herein mentioned, to set and impose the Fines and Penalties herein mentioned, with Costs of Suit.

AND BE IT ENACTED *by the Authority aforesaid,* That if any Person or Persons whatsoever, whether the Accused or Accuser, Plaintiff or Defendant, shall think themselves aggrieved, by any of the Judgments given by the said

Justices, or other Magistrates, for any Suit commenced by Virtue of this Act, then it shall and may be lawful for such Person or Persons, to appeal (on giving sufficient Security for the Forfeitures and Costs) to the next Court of General Quarter Sessions, held for such County, where such Judgment shall be given; which Court is hereby impowered to hear and determine all and every such Appeal or Appeals.

AND BE IT ENACTED *by the Authority aforesaid,* That if any Person or Persons within this Colony, shall, after the Publication of this Act, watch with a Gun, on any uninclosed Land, within two hundred Yards of any Road or Path, in the Night-time, whether the said Road is laid out by Law or not, or shall stand or station him or themselves upon or within two Hundred Yards of any Road as aforesaid, for shooting at Deer driven by Dogs, he or they so offending, shall on Conviction, forfeit and pay the Sum of *Five Pounds,* for every such Offence, to be recovered by Action of Debt, or Presentment of the Grand Jury, as aforesaid, and pay all Damages.

PROVIDED ALWAYS, That the Fifth, Seventh and Eighth Sections of this Law, shall not be construed to extend, or any Ways affect the Counties of *Essex, Bergen, Morris* or *Sussex. Provided also,* That the sixth Section of this Act, shall not be construed to affect any native Indian.

AND BE IT ENACTED *by the Authority aforesaid,* That all the Laws now in Force for the Preservation of Deer, and regulating the Size of Traps, shall be, and they are hereby repealed.

**Passed 6 Dec. 1769.**
**Parker (1769), pp. 96-100.**

### An ACT for the better preserving of Oysters, in the Colony of New-Jersey.

WHEREAS the Act passed in the First Year of the Reign of King GEORGE the First, hath not been sufficient to preserve the Oysters within the said Colony; and that Practices are made Use of, not provided against by the said Act, which, if permitted to continue, will in a short Time, destroy the Oysters in the Rivers and Bays of this Colony: Therefore,

BE IT ENACTED *by the Governor, Council and General Assembly of this*

JA1171

Case 1:23-cv-07464-GHW-OTW Document 216-4 Filed 10/02/24 Page 46 of 1295

# At a GENERAL ASSEMBLY held at

Burlington from the Twentieth Day of November to the Twenty-firft Day of December 1771, in the Twelfth Year of the Reign of King George the Third, the following Laws were paffed.

## SESSION THE FOURTH.

### CHAP. DXXXIX.

*An ACT to continue and amend an Act, entitled, An Act for better fettling and regulating the Militia of this Colony of New-Jerfey; for the repelling Invafions, and fuppreffing Infurrections and Rebellions.** 

Paffed Dec. 21, 1771.

WHEREAS the Act paffed in the Nineteenth Year of the Reign of our late Sovereign Lord King *George* the Second, entitled, *An Act for better fettling and regulating the Militia of this Colony of New-Jerfey; for the repelling Invafions, and fuppreffing Infurrections and Rebellions*, will expire at the End of this Seffion of Affembly;   *Preamble.*

Sect. 1. BE IT ENACTED by the Governor, Council and General Affembly, and it is hereby Enacted by the Authority of the fame, That the faid Act, entitled, *An Act for better fettling and regulating the Militia of this Colony of* New-Jerfey; *for the repelling Invafions, and fuppreffing Infurrections and Rebellions,** fhall be, and hereby is continued, and every Article and Claufe therein contained fhall be and remain in full Force, from the Publication hereof, to the firft Day of *May* which will be in the Year of our Lord One Thoufand Seven Hundred and Seventy-feven, and from thence to the End of the next Seffion of the General Affembly of this Colony, and no longer.   *Limitation.*

2. AND WHEREAS it has been a Cuftom of late, in fome of the Counties of this Colony, to choofe the Militia Officers Conftables; for preventing the fame for the Future, BE IT ENACTED *by the Authority aforefaid,* That, during the Continuance of this Act, it fhall not be lawful for any Court of General Quarter-Seffions of the Peace, or for any of the Inhabitants of this Colony, at their annual Town-meetings, to appoint or choofe any commiffioned Officer, while in Commiffion, to be a Conftable; any Law, Ufage or Cuftom to the contrary notwithftanding.   *Commiffioned Officers not to be chofen Conftables.*

### CHAP. DXL.

*An ACT for the Prefervation of Deer and other Game, and to prevent trefpaffing with Guns.*

Paffed Dec. 21, 1771.

WHEREAS the Laws heretofore paffed in this Colony for the Prefervation of Deer and other Game, and to prevent trefpaffing   *Preamble.*

\* Chap. CC.

Digitized from Best Copy Available

Case 1:24-cv-02264-BAH-AMS Document 20 Filed 12/09/21 Page 2 Page ID: 1296

ing with Guns, Traps and Dogs, have, by Experience, been found in-
sufficient to answer the salutary Purposes thereby intended ; Therefore,

**No Person to carry a Gun on Lands not his own, except, &c.**

Sect. 1. BE IT ENACTED *by the Governor, Council and General Af-sembly of this Colony of* New-Jersey, *and it is hereby Enacted by the Authority of the same,* That if any Person or Persons shall presume, at any Time after the Publication hereof, to carry any Gun on any Lands not his own, and for which the Owner pays Taxes, or is in his lawful Possession, unless he hath License or Permission in Writing from the Owner or Owners or legal Possessor, every such Person so offending, and convicted thereof, either upon the View of any Justice of the Peace within this Colony, or by the Oath or Affirmation of one or more Witnesses, before any Justice of the Peace of either of the Counties, Cities or Towns-corporate of this Colony, in which the Offender or Offenders may be taken or reside, he, she or they, shall, for every such Offence, for-feit and pay to the Owner of the Soil, or his Tenant in Possession, the Sum of *Forty Shillings*, with Costs of Suit ; which Forfeiture shall

**Penalty.**

and may be sued for and recovered by the Owner of the Soil, or Te-nant in Possession, before any Justice of the Peace in this Colony, for the Use of such Owner or Tenant in Possession.

**No Person to drive Deer or other Game, except, &c.**

2. AND BE IT ENACTED *by the Authority aforesaid,* That if any Person shall presume, at any Time after the Publication of this Act, to hunt or watch for Deer with a Gun, or set in any Dog or Dogs to drive Deer, or any other Game, on any Lands not his own, and for which the Owner or Possessor pays Taxes, or is in his lawful Possession, unless he hath License or Permission in Writing from such Owner or Owners or legal Possessor ; every such Person so offending, and being convicted thereof in Manner aforesaid, shall, for every such Offence, forfeit and pay to the Owner of the Soil, or Tenant in Possession, the

**Penalty.**

Sum of *Forty Shillings*, with Costs of Suit ; provided, that nothing herein contained shall be construed to extend to prevent any Person carrying a Gun upon the King's Highway in this Colony.

**Penalty on Non-Resi-dents.**

3. AND BE IT FURTHER ENACTED *by the Authority aforesaid,* That if the Person or Persons offending against this Act be Non-Residents of this Colony, he or they shall forfeit and pay for every such Offence *Five Pounds*, and shall forfeit his or their Gun or Guns to any Person or Persons who shall inform and prosecute the same to Effect, before any Justice of the Peace in any County of this Colony, wherein the Offender or Offenders may be taken or apprehended.

**Penalty for killing, &c. Deer out of Season.**

4. AND BE IT ENACTED *by the Authority aforesaid,* That if any Person or Persons shall kill, destroy, hunt or take any Doe, Buck, Fawn, or any Sort of Deer whatsoever, at any other Time or Season, except only between the first Day of *September* and the first Day of *January* yearly and every Year, he, she or they so offending, shall for-feit and pay the Sum of *Forty Shillings* for each and every Offence ; to be sued for, recovered and applied as hereafter is directed.

**What shall be Evidence of such Kill-ing, &c.**

5. AND, for the better and more effectual convicting of Offenders against this Act, BE IT ENACTED *by the Authority aforesaid,* That any and every Person or Persons in whose Custody shall be found, or who shall

Digitized from Best Copy Available

Case 1:22-cv-01204-RBW-BAH-CGB Document 18-2 Filed 07/18/22 Page 3 of 42 PageID: 1297

fhall expofe to Sale, any green Deerfkins, or frefh Venifon killed at any Time after the firft Day of *January*, and before the firft Day of *September* aforefaid, and fhall be thereof convicted by the Oath or Affirmation of one or more credible Witneffes, fhall be deemed guilty of offending againft this Act, and be fubjected to the Penalties of killing Deer out of Seafon.

6. AND WHEREAS great Numbers of idle and diforderly Perfons make a Practice of hunting on the wafte and unimproved Lands in this Colony, whereby their Families are neglected, and the Publick is prejudiced by the Lofs of their Labour, BE IT THEREFORE ENACTED *by the Authority aforefaid*, That, from and after the firft Day of *January* next, no Perfon or Perfons whatfoever (except fuch Perfons as are by the Laws of this Colony qualified to vote for Reprefentatives in General Affembly, in Right of their Freeholds, and their Sons being of the Age of eighteen Years or upwards, and living with their Parent or Parents, or being Freeholders) fhall, on any Pretence whatever, hunt on the wafte and unimproved Lands in this Colony ; and if any Perfon or Perfons, not qualified as aforefaid, fhall prefume to hunt as aforefaid, he or they fo offending fhall forfeit and pay, for every fuch Offence, the Sum of *Twenty Shillings ;* to be recovered by Action of Debt, with Cofts, by any Perfon who fhall fue for the fame ; to be applied one Half to the Profecutor, and the other Half to the Ufe of the Poor of the Townfhip or Precinct where the Fact was committed.

*Who may hunt on un-improved Lands.*

*Penalty on Offenders.*

7. AND BE IT ENACTED *by the Authority aforefaid*, That if any Perfon or Perfons within this Colony fhall fet any Trap or other Device whatfoever, larger than what is ufually and commonly fet for Foxes and Mufkrats, fuch Perfon, fetting fuch Trap or other Device, fhall pay the Sum of *Five Pounds*, and forfeit the Trap or other Device, fhall fuffer three Months Imprifonment, and fhall alfo be liable to make good all Damages any Perfon fhall fuftain by fetting fuch Trap or other Device, and the Owner of fuch Trap or other Device, or Perfon to whom it was lent, fhall be efteemed the Setter thereof, unlefs it fhall be proved, on Oath or Affirmation, what other Perfon fet the fame, or that fuch Trap or other Device was loft by faid Owner or Perfon to whom it was lent, and abfolutely out of his Power ; and if the Setter of the Trap or other Device be a Slave, and it be his own voluntary Act, he fhall (unlefs the Mafter or Miftrefs fhall pay the Fine) in Lieu of fuch Fine, be publickly whipped with thirty Lafhes, and committed till the Cofts are paid ; and that the faid Trap or other Device fhall be broken and deftroyed in the View and Prefence of the Juftice of the Peace before whom they are brought : And if any Perfon or Perfons fhall have Poffeffion of, or there fhall be found in his or their Houfe, any Trap or Traps, Device or Devices whatfoever, for taking of Deer, fuch Perfon or Perfons fhall be fubjected to the fame Penalty as if he or they were convicted of fetting fuch Trap or Traps, or other Device.

*Penalty on fetting Traps, &c.*

*Penalty on a Slave fetting fuch Trap, &c.*

*Penalty on keeping fuch Trap, &c.*

8. AND, for encouraging the Deftruction of fuch Traps and Devices, BE IT ENACTED *by the Authority aforefaid*, That if any Perfon fhall feize any Trap or other Device for the taking Deer, and fhall carry fuch Trap or other Device to any Magiftrate of the County where fuch Trap or Device was feized, fuch Perfon fhall be entitled to

*Reward for feizing a Trap, &c.*

an

Digitized from Best Copy Available

JA1174

Case 1:22-cv-02256-RDM Document 22-4 Filed 08/18/23 Page 4 Page ID: 1298

an Order from the said Magistrate to the Collector of such County, to pay him the Sum of *Ten Shillings*, out of any Money in his Hands raised for the Use of the County ; which Sums shall be allowed to such Collector on the Settlement of his Accounts.

**Penalty on a Smith making or mending such Trap, &c.**

9. AND BE IT FURTHER ENACTED *by the Authority aforesaid*, That every Smith or other Artificer, who shall hereafter make or mend any such Trap or other Device aforesaid, he shall forfeit and pay the Sum of *Forty Shillings* ; and the Person carrying such Trap or other Device to the Artificer aforesaid, shall forfeit and pay the Sum of *Twenty Shillings*. And every Person who shall bring into this Colony any such Trap or Device as aforesaid shall forfeit and pay the Sum of *Forty Shillings*. And if the Person who shall carry the same to the Smith or Artificer shall be so poor as that he shall not be able to pay the Forfeiture aforesaid, he shall be committed to the common Gaol, until he shall prove who is Owner of such Trap or Device, or who delivered the same to him ; and in such Case the Forfeiture aforesaid shall be levied on the Goods, or in Failure of Goods, on the Body of the Owner of such Trap or Device, or the Person who delivered the same to the Pauper, and the Trap or Device shall be forfeited and destroyed.

**Penalty on bringing such Trap, &c. into the Colony.**

**Penalty for setting loaded Guns.**

10. AND WHEREAS a most dangerous Method of setting Guns has too much prevailed in this Province, BE IT ENACTED *by the Authority aforesaid*, That if any Person or Persons within this Colony shall presume to set any loaded Gun in such Manner as that the same shall be intended to go off or discharge itself, or be discharged by any String, Rope, or other Contrivance, such Person or Persons shall forfeit and pay the Sum of *Six Pounds* ; and on Non-payment thereof shall be committed to the common Gaol of the County for six Months.

**Application of Penalties.**

11. AND BE IT FURTHER ENACTED *by the Authority aforesaid*, That the Fines and Forfeitures in this Act expressed, and not particularly appropriated, shall be paid, one Half to the Prosecutor, and the other Half to and for the Use of the Poor of the Town, Precinct or District, where the Offence is committed ; and that the Execution of this Act, and every Part thereof, shall be within the Cognizance and Jurisdiction of any one Magistrate or Justice of the Peace, without any Reference to the Act for Trial of small Causes in this Colony.

**Jurisdiction given to one Magistrate.**

**This Act not to affect Parks.**

12. AND BE IT ENACTED, That nothing in this Law shall be construed to extend to restrain the Owners of Parks, or of tame Deer, from killing, hunting or driving their own Deer.

**Penalty on Magistrate neglecting his Duty.**

13. AND BE IT ALSO ENACTED *by the Authority aforesaid*, That if any Justice of the Peace or other Magistrate, within this Province, shall have Information of any Persons offending against this Act, in killing Deer out of Season, setting and making Traps, Non-Residents killing Deer, and Persons setting of Guns, and shall not prosecute the same to Effect within two Months after such Information, he shall forfeit and pay the Sum or Sums to which the Offender against this Act would have been liable.

14. AND

Digitized from Best Copy Available

Case 1:23-cv-02424-CMB-AGIS-Document 34-4 Filed 02/16/08/Page 5 Page ID: 1299

14. And be it Enacted *by the Authority aforesaid*, That the Justices at every Quarter-Sessions of the Peace shall cause this Act to be publickly read; and give in Charge to the Grand-Jury to particularly inquire and present all Persons for killing Deer out of Season, setting or making Traps, and all Non-Residents killing, destroying, hunting and taking any Sort of Deer, and all Persons setting of Guns; and, upon Conviction for either of the said Offences, the said Justices shall set and impose the Fines and Penalties herein before-mentioned, with Costs of Suit. *This Act to be published and executed.*

15. And be it Enacted *by the Authority aforesaid*, That if any Person or Persons whatsoever, whether the Accused or Accuser, Plaintiff or Defendant, shall think themselves aggrieved by any of the Judgments given by the said Justices or other Magistrates, for any Suit commenced by Virtue of this Act; then it shall and may be lawful for such Person or Persons to appeal, on giving sufficient Security for the Forfeitures and Costs, to the next Court of General Quarter-Sessions, held for such County where such Judgment shall be given; which Court is hereby empowered to hear and determine all and every such Appeal or Appeals. *Appeal given to next Sessions.*

16. And be it Enacted *by the Authority aforesaid*, That if any Person or Persons, within this Colony, shall, after the Publication of this Act, watch with a Gun, on any uninclosed Land within two Hundred Yards of any Road or Path, in the Night Time, whether the said Road is laid out by Law or not, or shall stand or station him or themselves upon or within two Hundred Yards of any Road as aforesaid, for shooting at Deer driven by Dogs, he or they so offending, shall, on Conviction, forfeit and pay the Sum of *Five Pounds* for every such Offence; to be recovered by Action of Debt, or Presentment of the Grand-Jury as aforesaid, and pay all Damages. *Penalty for watching in the Night near a Road.*

17. Provided always, That the sixth Section of this Act shall not be construed to affect any Native *Indian*; and that nothing in this Act shall be construed to prevent the Inhabitants of *Essex, Bergen, Morris* and *Sussex*, from making, having in their Houses, or setting Traps of five Pounds Weight or more for Bears, Wolves, Foxes, or any other wild Beasts, Deer only excepted. *Not to affect Indians, nor Essex, Bergen, Morris or Sussex.*

18. And be it further Enacted *by the Authority aforesaid*, That all former Laws made in this Colony for the Preservation of Deer and other Game, and to prevent trespassing with Guns, and regulating the Size of Traps, shall be, and they are hereby repealed. *Repeal of Former Laws.*

## C H A P. DXLI.

*An* ACT *declaring the River* Delaware *a common* Highway, *and for improving the* Navigation *in the said River.*

Passed Dec. 21, 1771.

WHEREAS the improving the Navigation in Rivers is of great Importance to Trade and Commerce; And whereas the River *Delaware* *Preamble.*

Digitized from Best Copy Available

JA1176

Case 1:23-cv-07464-RMB-AMD   Document 84-11   Filed 02/16/24   Page 6 Page ID: 1300

*Delaware* may be rendered much more navigable than it now is; And whereas many Persons desirous to promote the publick Welfare have subscribed large Sums of Money for the Purpose aforesaid; and it is represented that others will subscribe considerable Sums, if Commissioners are appointed by Law to receive the Subscriptions, and apply the same; Therefore,

**Delaware a publick Highway.**

Sect. 1. Be it Enacted *by the Governor, Council and General Assembly, and it is hereby Enacted by Authority of the same,* That the River *Delaware* shall be, and it is hereby declared to be a common Highway, for the Purposes of Navigation up and down the same.

**Commissioners appointed.**

2. And be it further Enacted *by the Authority aforesaid,* That *Joseph Galloway, Joseph Fox, Michael Hillegas, Abel James, Samuel Rhoads, James Allen, Peter Knight,* Esquires, *Daniel Williams, Henry Drinker, Clement Biddle, Jeremiah Warder* the Younger, *Jacob Bright, John Baldwin, Richard Wells,* Gentlemen, *Thomas Yardley, Jacob Orndt, Peter Kechline, Henry Kooken,* Esquires, *William Ledley, Nicholas Depui,* Son of *Samuel, Jacob Stroud* and *John Arbo,* Gentlemen, the Honourable, *John Stevens, James Parker* and *Daniel Coxe,* Esquires, *Samuel Meredith* and *Robert Field,* Esquires, Doctor *William Bryant, Abraham Hunt, Timothy Smith, Thomas Lowry, Ashur Mott, John Emley* of *Kingwood, Andrew Melick, Robert Hoops* and *Matthew Lowry,* Gentlemen, be, and they are hereby appointed and constituted Commissioners for improving the Navigation in the said River *Delaware;* who, or any twelve of them, the Survivors, or any twelve of them, shall have full **To collect Subscriptions** Power and Authority, by Virtue hereof, to collect, recover and receive from any Person or Persons whatsoever, all such Sums of Money, which have been, or shall be given or subscribed for rendering the said River more navigable; and so much of the said Monies as may be necessary **and apply them.** for that Purpose, to lay out and apply for and towards improving the Navigation in the said River *Delaware,* from the lower Part of the Falls near *Trenton,* to the River *Lehigh* at *Easton;* and the Residue thereof to lay out and apply for and towards improving the Navigation in that Part of the said River above the said River *Lehigh.* Provided always, That such Sums of Money as have been or shall be given or subscribed for the improving the Navigation of the said River, above the *Lehigh* aforesaid, separately, shall be laid out and applied for and towards that Purpose, and no other.

**To clear, straighten, &c.**

3. And be it further Enacted *by the Authority aforesaid,* That the said Commissioners, or any twelve of them, their Survivors, or any twelve of them, shall have full Power and Authority, by themselves, their Agents, Servants and Workmen, to clear, scour, open, enlarge, straighten or deepen, the said River where-ever it shall to them appear useful for improving the Channels; and also to remove any Obstructions whatsoever, either natural or artificial, which may or can in any Manner hinder or impede the Navigation in the said River; and to make and set up in the said River any Dams, Pens for Water Locks, or any other Works whatsoever, and the same to alter or repair as they shall think fit; and also to appoint, set out, and make near the said River, Paths or Ways, which shall be free and open for all Persons having Occasion to use the same for towing, hauling or drawing any Vessels, Boats, small Craft and

Rafts

JA1177

Digitized from Best Copy Available

Case 1:22-cv-01621-CFC Document 20-4 Filed 06/12/23 Page 7 of 8 PageID #: 1301

Rafts, of any Kind whatfoever; and from Time to Time to do and execute every other Matter or Thing neceffary or convenient for improving the Navigation in the faid River. Provided always, That no Dam, Pen, Lock or other Work, made or fet up by the faid Commiffioners, fhall be appropriated to the private Ufe or Benefit of any Perfon or Perfons whatfoever, contrary to the true Intent and Meaning of this Act.

4. And be it further Enacted *by the Authority aforefaid*, That no Perfon or Perfons whatfoever fhall prefume to divert, lead or draw at any Time or Times, by any Race or other Device, any Water of the faid River out of or from the natural Courfe or Channel, for the Ufe of any Mill or Waterwork.

*Watercourfe not to be diverted.*

5. And be it further Enacted *by the Authority aforefaid*, That if any Perfon or Perfons fhall prefume to oppofe or hinder the faid Commiffioners, or any of them, their Agents, Servants and Workmen, or any of them, from doing any Act which they are hereby authorized and empowered to do, or fhall make, erect, fet up, repair or maintain, or fhall be aiding, affifting or abetting in making, erecting, fetting up, repairing or maintaining, any Dam or Obftruction which may or can in any Manner hinder or impede the Navigation in the faid River; or fhall remove, deftroy, throw down, alter, injure or impair, any Dam, Pen, Lock or other Work, made or fet up by the faid Commiffioners, or by Order of them, or any twelve of them, their Survivors, or any twelve of them; every Perfon fo offending, being legally convicted thereof by Verdict of a Jury, or by his own Confeffion, before the Juftices of the Peace in their Court of General Quarter-Seffions, fhall forfeit and pay *Fifty Pounds* Proclamation Money of this Colony, for every fuch Offence, or fhall fuffer Imprifonment for twelve Months without Bail or Mainprize; one Moiety of which Forfeiture fhall be paid to the Informer, and the other Moiety to the Commiffioners herein appointed, or the Survivors of them as aforefaid, to be applied for and towards improving the Navigation in the faid River.

*Penalty on hindering the Commiffioners, &c. or obftructing the Navigation.*

*Application.*

6. And Whereas Doubts may arife in what Counties Offences committed in the faid River *Delaware* againft this Act ought to be tried; for removing thereof, Be it Enacted *by the Authority aforefaid*, That every Offence committed in or on the faid River, againft this Act, fhall be laid to be committed, and may be tried and determined as aforefaid, in any of the Counties within this Colony oppofite to or joining on that Part of the faid River in which fuch Offence fhall be committed.

*Offences where triable.*

7. Provided always, and be it further Enacted *by the Authority aforefaid*, That Nothing herein contained fhall give any Power or Authority to the Commiffioners herein appointed, or any of them, to remove, throw down, lower, impair, or in any Manner to alter a Mill-Dam erected by *Adam Hoops*, Efquire, late deceafed, in the faid River *Delaware*, between his Plantation and an Ifland in the faid River nearly oppofite to *Trenton*, or any Mill-Dam erected by any other Perfon or Perfons in the faid River, before the Paffing of this Act; nor to obftruct, or in any Manner to hinder the Heirs or Executors

*Not to injure Mill-Dams already erected.*

4 R                                                                        of

Digitized from Best Copy Available

Case 1:22-cv-01464-RMB-AMD-CV Document 84-11 Filed 02/16/2008 Page 8 Page ID: 1302

of the said *Adam Hoops*, or such other Person or Persons, his or their Heirs and Assigns, from maintaining, raising or repairing, the said Dams respectively, or from taking Water out of the said River, for the Use of the said Mills and Waterworks, erected as aforesaid, and none other.

**Commissioners to keep Minutes and report.**

8. AND BE IT FURTHER ENACTED *by the Authority aforesaid*, That the said Commissioners shall keep Minutes of their Proceedings, in Pursuance of the Power hereby given to them, fairly entered in a Book; and shall once in every Year make Report of their Transactions in improving the Navigation in the said River to the Council and Assembly of this Colony for the Time being, and shall lay before them a just and faithful Account of all Sums of Money by them received for the aforesaid Purposes, and in what Manner they shall be expended, that the same may be adjusted and settled.

C H A P. DXLII.

*An ACT for the more effectual maintaining, and keeping above the Flow of the Tide, that Part of the Road or Causeway between the Toll-Bridge over* Newton *Creek and the fast Land of* Keziah Tonkin.*

Passed Dec. 21. 1771.

**Preamble.**

WHEREAS *Thomas Attmore, Isaac Burrough, Benjamin Thackray, Jacob Stokes, Hannah Cooper, Keziah Tonkin, Elizabeth Thackray* and *Job Haines*, Owners and Proprietors of the Meadows lying on the easterly Side of *Newton* Creek, in the County of *Gloucester*, have, by their Petition, set forth, That they have suffered, and are daily exposed to very considerable Damage by Reason of the Causeway and Road between the Toll-Bridge, called *William Gerrard*'s, and the fast Land of *Keziah Tonkin*, not being raised above the Flowing of the Tides;

**Possessors of the Toll-Bridge neglecting three Months.**

Sect. 1. BE IT THEREFORE ENACTED *by the Governor, Council and General Assembly*, That if the Owner or Owners, Possessor or Possessors, of the Toll-Bridge erected over *Newton* Creek, shall neglect or refuse, for three Months after Publication hereof, to repair and raise, above the Flowing of the Tides, such Part of the Causeway and Road, leading from the Town of *Gloucester* to the *Coopers* Ferries, as lays on the East Side of *Newton* Creek aforesaid, from the End of said Toll-Bridge to the fast Land of *Keziah Tonkin*; then, and in such Case, it shall and may be lawful for the Managers, or the Survivors of them already appointed, or that shall be hereafter appointed, in Pursuance of an Act passed in the third Year of His present Majesty's Reign, entitled, *An Act to enable the Owners and Possessors of the Meadows lying on a Branch of* Newton *Creek, in the County of* Gloucester, *commonly called the* Back Creek, *to erect and maintain a Bank, Dam, and other Waterworks across the said Creek, in order to prevent the Tide from overflowing the same, and to keep the former Watercourse of said Creek open and clear,†* to repair, amend and raise the said Causeway and Road, from the Bridge aforesaid,

**Managers of Back Creek Meadows to repair and raise the Causeway.**

* This Act, though strictly private, being of a very publick Import, is admitted in this Collection.
† Chap. CCCLV.

Digitized from Best Copy Available




DATE DOWNLOADED: Fri Jan 27 11:46:38 2023
SOURCE: Content Downloaded from *HeinOnline*

Citations:

Bluebook 21st ed.
Lucius Q.C.; Nixon Elmer, John T. Digest of the Laws of New Jersey (4).

ALWD 7th ed.
Elmer, Lucius Q.C.; Nixon, John T. Digest of the Ls of New Jersey (4).

APA 7th ed.
Elmer, L. (4). Digest of the Laws of New Jersey. Newark, N.J., Martin R. Dennis & Co.

Chicago 17th ed.
Elmer Lucius Q.C.; Nixon, John T. Digest of the Laws of New Jersey. Newark, N.J.,
Martin R. Dennis & Co.

McGill Guide 9th ed.
Lucius Q.C.; Nixon Elmer, John T., Digest of the Ls of New Jersey (Newark, N.J.:
Martin R. Dennis & Co., 4)


AGLC 4th ed.
Lucius Q.C.; Nixon Elmer, John T., Digest of the Laws of New Jersey (Martin R. Dennis
& Co., 4

MLA 9th ed.
Elmer, Lucius Q.C., and John T. Nixon. Digest of the Laws of New Jersey. Newark,
N.J., Martin R. Dennis & Co. HeinOnline.

OSCOLA 4th ed.
Elmer, Lucius Q.C.; Nixon, John T. Digest of the Laws of New Jersey. Newark, N.J.,
Martin R. Dennis & Co.

-- Your use of this HeinOnline PDF indicates your acceptance of HeinOnline's Terms and
  Conditions of the license agreement available at
  *https://heinonline.org/HOL/License*
-- The search text of this PDF is generated from uncorrected OCR text.

Case 1:22-cv-07464-RMB-AMD   Document 84-5   Filed 02/13/23   Page 2 of 6 PageID: 1304

least ten days before the returning thereof, or left at his residence ; and that any of the members of the said society may appear and defend the said suit : and if in the course of the said proceedings, it should become expedient to ascertain the number of members of the said society, connected with the said parties respectively, any member thereof shall be under the age of twenty-one years, such infant shall be counted with the party to which his or her father belongs, if he is living, and if not, to that which his or her mother, if living, belongs, and if she also be dead, with the party to which his or her guardian belongs.

---

# GAME.

| | | | |
|---|---|---|---|
| Decoys for ducks, &c., | 12 | Non-residents, remedy against, | 11 |
| Deer hunting, how prohibited, | 2 to 9 | Sabbath, hunting on | 24 |
| Ducks and geese, killing of, | 12-14 | —— penalty for hunting or fishing, | 24, 28 |
| Fishing on Sabbath, | 28 | Season for killing, | 9, 10, 20 |
| Game, season for killing, | 9, 10, 20 to 23 | Traps, how not to be set, | 5 |
| Guns, loaded, not to be set, | 6, 8 | Trespassing with guns, penalty, | 1 |
| —— when not to be carried, | 1 | | |

[See *Animals.*]

An Act for the preservation of deer and other game, and to prevent trespassing with guns.
Approved April 16, 1846.   (R. S. 12.)

1. If any person or persons shall carry any gun on any land not his own, and for which the owner pays taxes, or is in his lawful possession, unless he hath license or permission in writing from the owner or owners or legal possessor, every such person so offending, and convicted thereof, either upon the view of any justice of the peace within this state, or by the oath or affirmation of one or more witnesses, before any justice of the peace of either of the counties, cities, or towns corporate of this state, in which the offender or offenders may be taken or reside, he or they shall, for every such offence, forfeit and pay to the owner of the soil or his tenant in possession the sum of five dollars, with costs of suit ; which forfeiture shall and may be sued for and recovered by the owner of the soil or tenant in possession before any justice of the peace in this state, for the use of such owner or tenant in possession.   (See 18.)

2. If any person shall hunt or watch for deer with a gun, or set in any dog or dogs to drive deer or any other game, on any lands not his own, and for which the owner or possessor pays taxes, or is in his lawful possession, unless he hath license or permission in writing from such owner or owners, or legal possessor, every such person so offending, and being convicted thereof in manner aforesaid, shall for every such offence forfeit and pay to the owner of the soil or tenant in *311] possession *the sum of five dollars, with costs of suit : *Provided,* that nothing herein contained shall be construed to prevent any person carrying a gun upon the highway in this state.

3. If the person or persons offending against this act be non-residents of this state, he or they shall forfeit and pay for every such offence fifteen dollars, and shall forfeit his or their gun or guns to any person or persons who shall inform and prosecute the same to effect, before any justice of the peace in any county of this state, wherein the offender or offenders may be taken or apprehended.

4. *And,* for the better and more effectual conviction of offenders against this act, *be it enacted,* That any and every person or persons in whose custody shall be found, or who shall expose to sale, any green deer skins or fresh venison killed at any time after the first day of January, and before the first day of September aforesaid, and shall be thereof convicted by the oath or affirmation of one or more credible witnesses, shall be deemed guilty of offending against this act, and be subjected to the penalties of killing deer out of season.

5. If any person or persons within this state shall set any trap, or other device whatsoever, larger than what is usually and commonly set for foxes and muskrats,

such person setting such trap or other device shall pay the sum of fifteen dollars, and forfeit the trap or other device, and shall also be liable to make good all damages any person shall sustain by setting such trap or other device; and the owner of such trap or other device, or person to whom it was lent, shall be esteemed the setter thereof, unless it shall be proved on oath or affirmation what other person set the same, or that such trap or other device was lost by said owner or person to whom it was lent, and absolutely out of his power; and that the said trap or other device shall be broken and destroyed in the view and presence of the justice of the peace before whom they are brought.

6. If any person or persons within this state shall set any loaded gun in such manner as that the same shall be intended to go off or discharge itself, or be discharged by any string, rope, or other contrivance, such person or persons shall forfeit and pay the sum of twenty dollars, to be recovered by action of debt by any person who shall sue for the same, and on non-payment thereof, shall be committed to the common jail of the county for six months.

7. Nothing in this law shall be construed to extend to restrain the owners of parks or of tame deer from killing, hunting, or driving their own deer.

8. If any person or persons within this state shall watch on a gun on any unenclosed land within two hundred yards of any road or path, in the night-time, whether the said road is laid out by law or not, or shall stand or station him or themselves upon or within two hundred yards of any road as aforesaid, for shooting at deer driven by dogs, he or they so offending shall on conviction forfeit and pay the sum of fifteen dollars for every such offence, to be recovered by action of debt as aforesaid, and pay all damages.

9. If any person or persons shall kill, destroy, hunt, or take any doe, buck, fawn, or any sort of deer whatsoever, at any other time or season, except only between the [last day of August and the second day of January] yearly and every year, he, she, or they so offending shall forfeit and pay the sum of twenty dollars for each and every such offence, to be sued for and recovered with costs of suit, in an action of debt, by any person, before any justice of the peace of the county wherein such offence shall have been committed; one half of the forfeit money shall be for the benefit of the person prosecuting for the same, and the remainder paid to the collector of the township wherein the offence shall have been committed, for the use of the township. (Altered to last day of September, and second day of December, by supplement of 1848, Pam. 145.)

10. If any person or persons shall kill, destroy, or take any partridge, moorfowl, grouse, quail, or rabbit, except only between the first day of November and the tenth day of January, yearly and every year, or any wood-cock, except only between the fifth day of July and the first day of January, yearly and every year, he, she, or they so offending shall forfeit and pay, for every part-ridge, moorfowl, grouse, quail, rabbit, or woodcock, one dollar for each and every offence, to be *sued for and recovered in an action of debt, with costs [*312 of suit, by any person who shall sue for the same; and any person in whose hands or custody any partridge, moorfowl, grouse, quail, rabbit, or wood-cock shall be found that shall have been killed contrary to the provisions of this act, shall be deemed, taken, and adjudged to be the killer and destroyer of such game, and liable to the penalties aforesaid: *Provided nevertheless*, that no such person or persons shall be prohibited from gunning on his or their own land. (See 15.)

11. If any person or persons not resident in this state shall offend against any of the provisions of the first section of this act, it shall and may be lawful for the owner or owners of the said lands, or the possessor or possessors thereof, to apprehend any and every such person or persons so offending, and take him or them before a magistrate as soon as conveniently may be, in order that he or they may be dealt with according to law; and every such person who may perform this service shall be entitled to the same assistance and protection, and subject

364                                    GAME.

to the same restrictions and liabilities, as a constable would be on the same occasion.

### Supplement.   February 14, 1852.   (Pam. 38.)

12. SEC. 1. It shall not be lawful for any person, hunting or gunning after geese, ducks, brant, and for that purpose using stools or decoy geese, ducks, or brant, to place the boat, sneak-box, or other floating vessel in which he lies in wait to kill the said geese, ducks, and brant, at a distance more than three rods from ice, or from marsh, or meadow bank, or heaped sea-weed, or sand-bar not covered with water at ordinary high tide.

13. SEC. 2. It shall not be lawful for any person, with intent to capture or kill geese, ducks, or brant, in and about the waters aforesaid, to hunt after or pursue them with a light at night.

14. SEC. 3. Every person offending against the provisions of this act shall, for each offence, forfeit and pay the sum of fifteen dollars, to be sued for and recovered, with costs, in an action of debt before any justice of the peace in this state, by any person who shall sue for the same.

### A Supplement.   Approved March 16, 1859.   (Pam. 465.)

15. Hereafter if any person or persons shall kill, destroy, or take any partridge, moorfowl, grouse, quail or rabbit, except only between the first day of November and the first day of January yearly and every year, or any woodcock, except only between the first day of September and the first day of January, yearly and every year, he, she, or they, so offending, shall forfeit and pay for every partridge, moorfowl, grouse, quail, rabbit, or woodcock, the sum of five dollars, for each and every offence, to be sued for and recovered in an action of debt, with costs of suit, by any person who shall sue for the same, and on non-payment thereof shall be committed to the common jail of the county, for any period not exceeding sixty days, and until the fine and costs are paid; and any person in whose hands or custody any partridge, moorfowl, grouse, quail, rabbit, or woodcock shall be found, that shall have been killed contrary to the provisions of this act, shall be deemed, taken and adjudged to be the killer and destroyer of said game, and liable to the penalties aforesaid.   (See 17.)

### A Supplement.   Approved March 23, 1859.   (Pam. 636.)

16. From and after the passage of this act, it shall not be lawful for any person or persons to kill, capture or hunt in or about the waters of Barnegat bay, or Manasquan river, any geese, brant, or ducks at night, that is to say, after sunset or before daylight, nor shall it be lawful at any time to kill, capture or hunt any geese, brant, or ducks in or about the waters aforesaid, except only between the fifteenth day of October and the fifteenth day of April, yearly and every year hereafter.

### A Supplement.   Approved February 28, 1861.

17. Hereafter if any person or persons shall kill, destroy or take any woodcock, except only between the fifth day of July and the first day of January, yearly and every year, he, she, or they so offending shall forfeit and pay for every woodcock, the sum of five dollars for each and every offence, to be sued for and recovered in an action of debt, with costs of suit, by any person who shall sue for the same, and on non-payment thereof, shall be committed to the common jail of the county for any period not exceeding sixty days, and until the fine and costs are paid, and any person in whose hands or custody any woodcock shall be found, that shall have been killed contrary to the provisions of this act shall be deemed, taken and adjudged to be the killer and destroyer of said game, and liable to the penalties aforesaid.

2. All acts and parts of acts inconsistent with the provisions of this act, be and the same are hereby repealed.

## GAME. 365

An Act to prevent wilful trespasses upon lands.  Approved February 17, 1857.  (Pam. 16.)

18. If any person or persons shall unlawfully enter upon any lands not his own, after having been forbidden so to do by the owner or legal possessor of such lands, he shall forfeit and pay for each offence to the owner of said lands or his or her tenant in possession, the sum of three dollars, to be sued for and recovered, with costs, in an action of debt, before any justice of the peace in this state.

19. By act approved March 22, 1867, Pam. 324, partridge, moorfowl, grouse, quail, or rabbit, are not to be killed or taken in the county of Middlesex, at any time except between the first day of December and the first day of February; the act not to prevent any owner of real property from killing game on his own premises.

Supplement to the act entitled "An act for the preservation of deer and other game, and to prevent trespassing with guns," approved April sixteenth, eighteen hundred and forty-six. Approved March 26, 1866.  (Pam. 681.)

20. SEC. 1. Hereafter no person shall at any time within five years from the passage of this act, kill, or take, or destroy any pinnated grouse, commonly called prairie fowl, within this state, under a penalty of fifty dollars for each and every pinnated grouse so killed, taken or destroyed.

21. SEC. 2. Hereafter no person shall, within this state, kill or have in his or her possession, or expose for sale any woodcock killed in this state between the first day of January and the fourth day of July, in each year, or any ruffled grouse, commonly called partridge, or any quail, sometimes called Virginia partridge, or any rabbit killed in this state between the first day of January and the first day of November in each year, under a penalty of fifteen dollars for each and every woodcock, partridge, quail or rabbit so killed or had in possession, or exposed for sale.

22. SEC. 3. No person shall at any time, or in any place within this state, take with any trap or snare any quail or ruffled grouse, or partridge, or rabbit, under a penalty of ten dollars for each and every ruffled grouse, or partridge, or quail so trapped or snared, except the same be so taken with the intent to be kept alive, and be so kept alive and set at liberty, in the month of April following the taking thereof.

23. SEC. 4. No person hereafter shall at any time, with intent so to do, catch any speckled brook trout, or speckled river trout, with any device, save only with a hook and line, and no person shall in any way catch any such trout, or have any such trout in his or her possession, save only during the months of March, April, May, June, July and August, under a penalty of five dollars for each and every trout so caught or had in his or her possession; but in any prosecution under this section it shall be deemed a defence, that the trout so taken was for the purpose of stocking other waters therewith within this state.

24. SEC. 5. Hereafter any person who shall hunt with a gun, or with a dog and gun, or with any kind of fire-arm or weapon, or shall in any way kill, take or destroy with any trap, snare, or other device whatsoever, any bird or animal whatever, on the Sabbath day, commonly called Sunday, except those who observe the seventh day of the week as the Sabbath gunning upon their own lands, shall be liable to a penalty of twenty-five dollars for each and every offence, one-half of said penalty to be paid to the complainant, and the remainder to be paid to the overseer of the poor of the township where the offence was committed, for the use of the poor of said township.  (See 29.)

25. SEC. 6. All penalties imposed under the provisions of this act may be recovered in an action of debt, with costs of suit, by any person or persons in his or their own names, before any justice of the peace in the county where the offence was committed, or where the defendant resides, or is found, and any justice of the peace is hereby authorized and directed, upon receiving sufficient proof, by affidavit, of the violation of any of the provisions of this act, by any person being temporarily within his jurisdiction, but not residing therein, or who is likely

366                                    GAME.

to evade judgment by removal therefrom, or by any person whose name and residence are unknown, to issue his warrant and have such offender arrested and tried within twenty-four hours for such offence, or committed, or held to bail to answer the charge against him, in case such offender shall require or demand a reasonable delay for such trial ; and any justice of the peace shall, upon proof of probable cause to believe in the concealment of any game or fish mentioned in this act, during any of the prohibited period, issue his warrant and cause search to be made at any hour, in any house, market, store, shop, boat, car, or other place or building, or any person, and for that end may cause any apartment, chest, box, locker, barrel, crate, or other place of concealment to be broken open and the contents examined, and if any quail, grouse or partridge, or rabbit, trout or woodcock be found, to take the body of the person in whose custody they shall be found, before the justice of the peace who issued the warrant, to be held to answer to the penalties aforesaid ; and in all prosecutions and proceeding under this act, it shall not be necessary to file any state of demand, or to comply with the formalities required in penal actions, and in all such actions both parties may be sworn.

26. SEC. 7. Any person proving that the birds, fish or animals found in his or her possession during the prohibited periods, were killed, or taken in any place outside the limits of this state, and that the laws of such place did not prohibit such killing or taking, shall be exempt from the penalties of this act.

27. SEC. 8. Any penalty recovered under this act, when collected, shall be paid to the complainant (when not otherwise directed by this act), and on the non-payment of any penalty, the defendant shall be committed to the common jail of the county for a period of not less than ten days ; and at the rate of one day in addition for each dollar of the judgment over ten dollars in amount, and it shall be lawful for any freeholder, upon view of any violation of any of the provisions of this act, to arrest any person or persons guilty thereof, without warrant, and take the offender or offenders before some justice of the peace, to be dealt with as law and justice may require, and shall be clothed with the same power, and may exact the same assistance as if he was constable.

SEC. 9. All acts and parts of acts inconsistent with the provisions of this act be, and the same are hereby repealed.

A further Supplement.   Approved March 27, 1867.

28. SEC. 1. That the provisions of the fifth section of the supplement to the act approved March twenty-sixth, anno domini, eighteen hundred and sixty-six, to which this is a further supplement, be, and they are hereby extended so as to include all persons who shall fish, with hook and line, for any kind of fish whatsoever, on the Sabbath day, except those mentioned in the said section of said supplement, and that all persons so fishing on the Sabbath day shall be subject to the same fines and penalties, and shall be recovered in the same manner as in said supplement stated.

---

,NOTE.

A justice has no right to arrest a person for carrying a gun on another's land ; the owner or possessor may, if he is not resident in the state, and take him before a magistrate, but he has no right to tie him merely to prevent his escape.   2 Vroom, 45.

A

# DIGEST

OF THE

# LAWS OF NEW JERSEY.

## BY LUCIUS Q. C. ELMER.

———

### FOURTH EDITION,

CONTAINING ALL THE LAWS OF GENERAL APPLICATION, NOW IN FORCE,

FROM 1709 TO 1868 INCLUSIVE,

WITH THE RULES AND DECISIONS OF THE COURTS.

### BY JOHN T. NIXON.

———

Published by Authority of the Legislature.



NEWARK, N. J.:

MARTIN R. DENNIS & CO.

1868.

Digitized by Google

JA1186

*An Act relative to publishing the Statute Laws. Approved April 16, 1868.*

1. It may be set forth on the title page of Nixon's Digest of the Laws of New Jersey, that the Statute Laws of this State are published therein under the authority of the Legislature.

---

Entered according to the Act of Congress, in the year one thousand
eight hundred and sixty-eight, by

JOHN T. NIXON,

In the Clerk's Office of the District Court of the District of New Jersey.

---

Collins, Printer.

Digitized by Google

JA1187

362                                    GAME.

least ten days before the returning thereof, or left at his residence ; and that any
of the members of the said society may appear and defend the said suit : and if
in the course of the said proceedings, it should become expedient to ascertain
the number of members of the said society, connected with the said parties
respectively, any member thereof shall be under the age of twenty-one years,
such infant shall be counted with the party to which his or her father belongs, if
he is living, and if not, to that which his or her mother, if living, belongs, and if
she also be dead, with the party to which his or her guardian belongs.

## GAME.

| | | | |
|---|---|---|---|
| Decoys for ducks, &c., | 12 | Non-residents, remedy against, | 11 |
| Deer hunting, how prohibited, | 2 to 9 | Sabbath, hunting on | 24 |
| Ducks and geese, killing of, | 12-14 | —— penalty for hunting or fishing, | 24, 28 |
| Fishing on Sabbath, | 28 | Season for killing, | 9, 10, 20 |
| Game, season for killing, | 9, 10, 20 to 23 | Traps, how not to be set, | 5 |
| Guns, loaded, not to be set, | 6, 8 | Trespassing with guns, penalty, | 1 |
| —— when not to be carried, | 1 | | |

[See *Animals.*]

An Act for the preservation of deer and other game, and to prevent trespassing with guns.
Approved April 16, 1846.   (R. S. 12.)

1. If any person or persons shall carry any gun on any land not his own, and
for which the owner pays taxes, or is in his lawful possession, unless he hath
license or permission in writing from the owner or owners or legal possessor,
every such person so offending, and convicted thereof, either upon the view of
any justice of the peace within this state, or by the oath or affirmation of one or
more witnesses, before any justice of the peace of either of the counties, cities, or
towns corporate of this state, in which the offender or offenders may be taken or
reside, he or they shall, for every such offence, forfeit and pay to the owner of
the soil or his tenant in possession the sum of five dollars, with costs of suit ;
which forfeiture shall and may be sued for and recovered by the owner of the
soil or tenant in possession before any justice of the peace in this state, for the
use of such owner or tenant in possession.   (See 18.)

2. If any person shall hunt or watch for deer with a gun, or set in any dog or
dogs to drive deer or any other game, on any lands not his own, and for which
the owner or possessor pays taxes, or is in his lawful possession, unless he hath
license or permission in writing from such owner or owners, or legal possessor,
every such person so offending, and being convicted thereof in manner aforesaid,
shall for every such offence forfeit and pay to the owner of the soil or tenant in
*311]   possession *the sum of five dollars, with costs of suit : *Provided*, that
nothing herein contained shall be construed to prevent any person carry-
ing a gun upon the highway in this state.

3. If the person or persons offending against this act be non-residents of this
state, he or they shall forfeit and pay for every such offence fifteen dollars, and
shall forfeit his or their gun or guns to any person or persons who shall inform
and prosecute the same to effect, before any justice of the peace in any county of
this state, wherein the offender or offenders may be taken or apprehended.

4. *And*, for the better and more effectual conviction of offenders against this
act, *be it enacted*, That any and every person or persons in whose custody shall
be found, or who shall expose to sale, any green deer skins or fresh venison killed
at any time after the first day of January, and before the first day of September
aforesaid, and shall be thereof convicted by the oath or affirmation of one or more
credible witnesses, shall be deemed guilty of offending against this act, and be
subjected to the penalties of killing deer out of season.

5. If any person or persons within this state shall set any trap, or other device
whatsoever, larger than what is usually and commonly set for foxes and muskrats,

Digitized by Google

such person setting such trap or other device shall pay the sum of fifteen dollars, and forfeit the trap or other device, and shall also be liable to make good all damages any person shall sustain by setting such trap or other device; and the owner of such trap or other device, or person to whom it was lent, shall be esteemed the setter thereof, unless it shall be proved on oath or affirmation what other person set the same, or that such trap or other device was lost by said owner or person to whom it was lent, and absolutely out of his power; and that the said trap or other device shall be broken and destroyed in the view and presence of the justice of the peace before whom they are brought.

6. If any person or persons within this state shall set any loaded gun in such manner as that the same shall be intended to go off or discharge itself, or be discharged by any string, rope, or other contrivance, such person or persons shall forfeit and pay the sum of twenty dollars, to be recovered by action of debt by any person who shall sue for the same, and on non-payment thereof, shall be committed to the common jail of the county for six months.

7. Nothing in this law shall be construed to extend to restrain the owners of parks or of tame deer from killing, hunting, or driving their own deer.

8. If any person or persons within this state shall watch with a gun on any unenclosed land within two hundred yards of any road or path, in the night-time, whether the said road is laid out by law or not, or shall stand or station him or themselves upon or within two hundred yards of any road as aforesaid, for shooting at deer driven by dogs, he or they so offending shall on conviction forfeit and pay the sum of fifteen dollars for every such offence, to be recovered by action of debt as aforesaid, and pay all damages.

9. If any person or persons shall kill, destroy, hunt, or take any doe, buck, fawn, or any sort of deer whatsoever, at any other time or season, except only between the [last day of August and the second day of January] yearly and every year, he, she, or they so offending shall forfeit and pay the sum of twenty dollars for each and every such offence, to be sued for and recovered with costs of suit, in an action of debt, by any person, before any justice of the peace of the county wherein such offence shall have been committed; one half of the forfeit money shall be for the benefit of the person prosecuting for the same, and the remainder paid to the collector of the township wherein the offence shall have been committed, for the use of the township. (Altered to last day of September, and second day of December, by supplement of 1848, Pam. 145.)

10. If any person or persons shall kill, destroy, or take any partridge, moorfowl, grouse, quail, or rabbit, except only between the first day of November and the tenth day of January, yearly and every year, or any wood-cock, except only between the fifth day of July and the first of January, yearly and every year, he, she, or they so offending shall forfeit and pay, for every part-ridge, moorfowl, grouse, quail, rabbit, or woodcock, one dollar for each and every offence, to be *sued for and recovered in an action of debt, with costs [*312 of suit, by any person who shall sue for the same; and any person in whose hands or custody any partridge, moorfowl, grouse, quail, rabbit, or wood-cock shall be found that shall have been killed contrary to the provisions of this act, shall be deemed, taken, and adjudged to be the killer and destroyer of such game, and liable to the penalties aforesaid: *Provided nevertheless*, that no such person or persons shall be prohibited from gunning on his or their own land. (See 15.)

11. If any person or persons not resident in this state shall offend against any of the provisions of the first section of this act, it shall and may be lawful for the owner or owners of the said lands, or the possessor or possessors thereof, to apprehend any and every such person or persons so offending, and take him or them before a magistrate as soon as conveniently may be, in order that he or they may be dealt with according to law; and every such person who may perform this service shall be entitled to the same assistance and protection, and subject

Digitized by Google

to the same restrictions and liabilities, as a constable would be on the same occasion.

### Supplement. February 14, 1852. (Pam. 38.)

12. Sec. 1. It shall not be lawful for any person, hunting or gunning after geese, ducks, brant, and for that purpose using stools or decoy geese, ducks, or brant, to place the boat, sneak-box, or other floating vessel in which he lies in wait to kill the said geese, ducks, and brant, at a distance more than three rods from ice, or from marsh, or meadow bank, or heaped sea-weed, or sand-bar not covered with water at ordinary high tide.

13. Sec. 2. It shall not be lawful for any person, with intent to capture or kill geese, ducks, or brant, in and about the waters aforesaid, to hunt after or pursue them with a light at night.

14. Sec. 3. Every person offending against the provisions of this act shall, for each offence, forfeit and pay the sum of fifteen dollars, to be sued for and recovered, with costs, in an action of debt before any justice of the peace in this state, by any person who shall sue for the same.

### A Supplement. Approved March 16, 1859. (Pam. 465.)

15. Hereafter if any person or persons shall kill, destroy, or take any partridge, moorfowl, grouse, quail or rabbit, except only between the first day of November and the first day of January yearly and every year, or any woodcock, except only between the first day of September and the first day of January, yearly and every year, he, she, or they, so offending, shall forfeit and pay for every partridge, moorfowl, grouse, quail, rabbit, or woodcock, the sum of five dollars, for each and every offence, to be sued for and recovered in an action of debt, with costs of suit, by any person who shall sue for the same, and on non-payment thereof shall be committed to the common jail of the county, for any period not exceeding sixty days, and until the fine and costs are paid; and any person in whose hands or custody any partridge, moorfowl, grouse, quail, rabbit, or woodcock shall be found, that shall have been killed contrary to the provisions of this act, shall be deemed, taken and adjudged to be the killer and destroyer of said game, and liable to the penalties aforesaid.   (See 17.)

### A Supplement. Approved March 23, 1859. (Pam. 636.)

16. From and after the passage of this act, it shall not be lawful for any person or persons to kill, capture or hunt in or about the waters of Barnegat bay, or Manasquan river, any geese, brant, or ducks at night, that is to say, after sunset or before daylight, nor shall it be lawful at any time to kill, capture or hunt any geese, brant, or ducks in or about the waters aforesaid, except only between the fifteenth day of October and the fifteenth day of April, yearly and every year hereafter.

### A Supplement. Approved February 28, 1861.

17. Hereafter if any person or persons shall kill, destroy or take any woodcock, except only between the fifth day of July and the first day of January, yearly and every year, he, she, or they so offending shall forfeit and pay for every woodcock, the sum of five dollars for each and every offence, to be sued for and recovered in an action of debt, with costs of suit, by any person who shall sue for the same, and on non-payment thereof, shall be committed to the common jail of the county for any period not exceeding sixty days, and until the fine and costs are paid, and any person in whose hands or custody any woodcock shall be found, that shall have been killed contrary to the provisions of this act shall be deemed, taken and adjudged to be the killer and destroyer of said game, and liable to the penalties aforesaid.

2. All acts and parts of acts inconsistent with the provisions of this act, be and the same are hereby repealed.

An Act to prevent wilful trespasses upon lands. Approved February 17, 1857. (Pam. 16.)

18. If any person or persons shall unlawfully enter upon any lands not his own, after having been forbidden so to do by the owner or legal possessor of such lands, he shall forfeit and pay for each offence to the owner of said lands or his or her tenant in possession, the sum of three dollars, to be sued for and recovered, with costs, in an action of debt, before any justice of the peace in this state.

19. By act approved March 22, 1867, Pam. 324, partridge, moorfowl, grouse, quail, or rabbit, are not to be killed or taken in the county of Middlesex, at any time except between the first day of December and the first day of February; the act not to prevent any owner of real property from killing game on his own premises.

Supplement to the act entitled "An act for the preservation of deer and other game, and to prevent trespassing with guns," approved April sixteenth, eighteen hundred and forty-six. Approved March 26, 1866. (Pam. 681.)

20. Sec. 1. Hereafter no person shall at any time within five years from the passage of this act, kill, or take, or destroy any pinnated grouse, commonly called prairie fowl, within this state, under a penalty of fifty dollars for each and every pinnated grouse so killed, taken or destroyed.

21. Sec. 2. Hereafter no person shall, within this state, kill or have in his or her possession, or expose for sale any woodcock killed in this state between the first day of January and the fourth day of July, in each year, or any ruffled grouse, commonly called partridge, or any quail, sometimes called Virginia partridge, or any rabbit killed in this state between the first day of January and the first day of November in each year, under a penalty of fifteen dollars for each and every woodcock, partridge, quail or rabbit so killed or had in possession, or exposed for sale.

22. Sec. 3. No person shall at any time, or in any place within this state, take with any trap or snare any quail or ruffled grouse, or partridge, or rabbit, under a penalty of ten dollars for each and every ruffled grouse, or partridge, or quail so trapped or snared, except the same be so taken with the intent to be kept alive, and be so kept alive and set at liberty, in the month of April following the taking thereof.

23. Sec. 4. No person hereafter shall at any time, with intent so to do, catch any speckled brook trout, or speckled river trout, with any device, save only with a hook and line, and no person shall in any way catch any such trout, or have any such trout in his or her possession, save only during the months of March, April, May, June, July and August, under a penalty of five dollars for each and every trout so caught or had in his or her possession; but in any prosecution under this section it shall be deemed a defence, that the trout so taken was for the purpose of stocking other waters therewith within this state.

24. Sec. 5. Hereafter any person who shall hunt with a gun, or with a dog and gun, or with any kind of fire-arm or weapon, or shall in any way kill, take or destroy with any trap, snare, or other device whatsoever, any bird or animal whatever, on the Sabbath day, commonly called Sunday, except those who observe the seventh day of the week as the Sabbath gunning upon their own lands, shall be liable to a penalty of twenty-five dollars for each and every offence, one-half of said penalty to be paid to the complainant, and the remainder to be paid to the overseer of the poor of the township where the offence was committed, for the use of the poor of said township. (See 29.)

25. Sec. 6. All penalties imposed under the provisions of this act may be recovered in an action of debt, with costs of suit, by any person or persons in his or their own names, before any justice of the peace in the county where the offence was committed, or where the defendant resides, or is found, and any justice of the peace is hereby authorized and directed, upon receiving sufficient proof, by affidavit, of the violation of any of the provisions of this act, by any person being temporarily within his jurisdiction, but not residing therein, or who is likely

to evade judgment by removal therefrom, or by any person whose name and residence are unknown, to issue his warrant and have such offender arrested and tried within twenty-four hours for such offence, or committed, or held to bail to answer the charge against him, in case such offender shall require or demand a reasonable delay for such trial ; and any justice of the peace shall, upon proof of probable cause to believe in the concealment of any game or fish mentioned in this act, during any of the prohibited period, issue his warrant and cause search to be made at any hour, in any house, market, store, shop, boat, car, or other place or building, or any person, and for that end may cause any apartment, chest, box, locker, barrel, crate, or other place of concealment to be broken open and the contents examined, and if any quail, grouse or partridge, or rabbit, trout or woodcock be found, to take the body of the person in whose custody they shall be found, before the justice of the peace who issued the warrant, to be held to answer to the penalties aforesaid ; and in all prosecutions and proceeding under this act, it shall not be necessary to file any state of demand, or to comply with the formalities required in penal actions, and in all such actions both parties may be sworn.

26. SEC. 7. Any person proving that the birds, fish or animals found in his or her possession during the prohibited periods, were killed, or taken in any place outside the limits of this state, and that the laws of such place did not prohibit such killing or taking, shall be exempt from the penalties of this act.

27. SEC. 8. Any penalty recovered under this act, when collected, shall be paid to the complainant (when not otherwise directed by this act), and on the non-payment of any penalty, the defendant shall be committed to the common jail of the county for a period of not less than ten days ; and at the rate of one day in addition for each dollar of the judgment over ten dollars in amount, and it shall be lawful for any freeholder, upon view of any violation of any of the provisions of this act, to arrest any person or persons guilty thereof, without warrant, and take the offender or offenders before some justice of the peace, to be dealt with as law and justice may require, and shall be clothed with the same power, and may exact the same assistance as if he was constable.

SEC. 9. All acts and parts of acts inconsistent with the provisions of this act be, and the same are hereby repealed.

**A further Supplement.  Approved March 27, 1867.**

28. SEC. 1. That the provisions of the fifth section of the supplement to the act approved March twenty-sixth, anno domini, eighteen hundred and sixty-six, to which this is a further supplement, be, and they are hereby extended so as to include all persons who shall fish, with hook and line, for any kind of fish whatsoever, on the Sabbath day, except those mentioned in the said section of said supplement, and that all persons so fishing on the Sabbath day shall be subject to the same fines and penalties, and shall be recovered in the same manner as in said supplement stated.

----

**NOTE.**

A justice has no right to arrest a person for carrying a gun on another's land ; the owner or possessor may, if he is not resident in the state, and take him before a magistrate, but he has no right to tie him merely to prevent his escape.  2 Vroom, 45.

Digitized by Google

4. *And be it enacted,* That this act shall take effect immediately.

Approved March 14, 1895.

---

## CHAPTER CXLVIII.

### An Act to prevent trespassing with guns.

1. BE IT ENACTED *by the Senate and General Assem-* Damages may be awarded *bly of the State of New Jersey,* That any person tres- against trespass-passing on any lands, carrying a gun, after public posted. notice on the part of the owner, occupant, lessee or licensee thereof, forbidding such trespassing, such notice being posted conspicuously adjacent to the highway binding on said lands, or adjacent to any usual entrance-way to said lands, shall be deemed guilty of trespass at the suit of such owner, occupant, lessee or licensee, and in an action of trespass or tort (which action shall be conducted in all respects as actions of trespass or tort are usually conducted) the damages awarded for any such trespass shall be not less than ten dollars.

2. *And be it enacted,* That any person trespassing And after being forbidden. on any lands, carrying a gun, after being forbidden so to trespass by the owner, occupant, lessee or licensee thereof, shall be deemed guilty of trespass at the suit of such owner, occupant, lessee or licensee, and in an action of trespass or tort (which action shall be conducted in all respects as actions of trespass or tort are usually conducted) the damages awarded for any such trespass shall not be less than ten dollars.

3. *And be it enacted,* That any person or persons May be treated as disorderly found trespassing, as provided in the first and second persons and arrested without sections of this act, shall be deemed and adjudged to be warrant. disorderly, and in addition to the remedies therein provided for it shall be lawful for the owner or owners of the said lands, or the occupant or occupants, lessee or lessees or licensees thereof, or any constable or constables, to apprehend, without warrant or process, any

308        GENERAL PUBLIC LAWS.

such disorderly person or persons, and to take him or them before any justice of the peace of the county where apprehended; and it shall be the duty of the said justice, in a summary manner, to hear and determine the guilt or innocence of such person or persons, and upon conviction, to impose upon the offender or offenders, and each of them so convicted, a fine of five dollars, besides the costs of prosecution; and if any person or persons so convicted shall fail to pay such fines and costs, the said justice shall commit such offender or offenders to the common jail of the county for a period of not less than five nor more than ten days.

*Case shall be heard summarily.*

*Penalty.*

4. *And be it enacted,* That any person or persons who shall wilfully or maliciously remove, deface or alter any notice posted, as contemplated in the first section of this act, with the intent to destroy such notice, shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding twenty dollars or imprisonment in the county jail not exceeding thirty days, or both.

*A misdemeanor to remove, deface or alter notices posted.*

*Penalty.*

5. *And be it enacted,* That this act shall take effect immediately.

Approved March 14, 1895.

———

CHAPTER CXLIX.

An Act relative to the construction of school buildings in cities of the first class in this state.

1. BE IT ENACTED *by the Senate and General Assembly of the State of New Jersey,* That it shall and may be lawful for the board having charge and control of the finances in any city of the first class of this state, upon the request of the board thereof charged with the erection and construction of school building therein, to issue bonds of such city in an amount not exceeding two hundred and fifty thousand dollars; said bonds to

*Board of finance may issue bonds.*

*Amount and rate of interest limited.*

JA1195